**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| **ROBERT J. SPENLINHAUER,** | ) ) | Chapter 11 |
| | ) | Case No. 13-17191-JNF |
| DEBTOR | ) ) | |
| | ) | |
| **ROBERT J. SPENLINHAUER,** | ) ) | |
| MOVANT | ) ) | |
| v. | ) ) | Contested Matter: #1113 |
| **MASSACHUSETTS DEPARTMENT OF REVENUE,** | ) ) ) ) | |
| RESPONDENT | ) ) | |

**MEMORANDUM OF LAW BY COMMISSIONER OF MASSACHUSETTS DEPARTMENT OF REVENUE IN OPPOSITION TO THE MOTION BY MOVANT FOR SUMMARY JUDGMENT RELATIVE TO ESTATE TAX CLAIM OF THE MASSACHUSETTS DEPARTMENT OF REVENUE**

TO THE HONORABLE JOAN N. FEENEY, UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Michael J. Heffernan, as he is Commissioner of the Massachusetts Department of Revenue (hereinafter, "MDOR"), and submits this Memorandum of Law in opposition to the *Motion by Movant For Summary Judgment Relative To Estate Tax Claim of the Massachusetts Department of Revenue* (the "Motion") filed by the Debtor, Robert J. Spenlinhauer (the "Debtor").

**NARRATIVE**

On Friday February 4, 2005, a ninety-five year old woman by the name of Georgia M. Spenlinhauer ("Georgia") died. Except for a handful of bequests, under her will and the testamentary provisions of a declaration of trust she left her entire estate to just one of her children – Robert J. Spenlinhauer (the "Debtor"). The Debtor engaged Robert Galvin, Esquire ("Galvin") of the firm Galvin & Galvin, who was the lawyer that had drafted Georgia's, to handle the probate of her estate, which he did. Georgia's will was allowed, and The Debtor was appointed as the executor of her estate.[1] The Debtor also engaged David A. Erb, CPA ("Erb"), of the firm Berry, Dunn, McNeil & Parker, as the accountant for Georgia's estate.

The last Massachusetts income tax return for or by Georgia that MDOR has received was for the year ending December 31, **2004** – the tax year before her death. It appears that The Debtor as executor of Georgia's estate applied for and received form the IRS a tax identification number that ends with the digits "4015". MDOR, however, has no record of that identification number, and it has never received a tax return or tax payment using that number, and no person has ever registered for a Massachusetts tax using that number.

Under the law in effect at the time of her death, as Georgia was a resident of Massachusetts, her estate was subject to the de-coupled Massachusetts sponge tax. *G.L. c. 65C, § 2A et seq*. If Georgia's gross estate was more than $950,000 (and regardless of whether any estate tax might be owed), The Debtor would then be required to file a M-706 Massachusetts estate tax return within nine months of her death and to pay any estate

---

[1] No final decree was ever entered in Georgia's probate case. Rather, as the Probate Court did with many cases, when it moved its case management systems to a new computer system, the case was closed administratively.

tax that might be due on or before that filing deadline. *DOR Directive 03-2*. The equivalent Federal filing threshold at the time was $1,500,000.

On or about November 1, 2005, Erb filed with MDOR for an extension of time to file a Massachusetts estate tax return for Georgia's estate, which was routinely granted. However, The Debtor has never filed a M-706 Massachusetts estate tax return for Georgia's estate (nor has anyone else filed the return), and no estate taxes have been paid or estimated tax payments have been made. Not until about four months ago, and then only in the context of the litigation in this case, did the Debtor file a Federal Form 706 estate tax return. We do not know whether the accountant Erb eventually concluded that Georgia's gross tax estate (which would or should have included a certain property in Hingham, Massachusetts) did not meet the Massachusetts filing threshold of $950,000 in effect at the time, or he did conclude that a return was required, which raises other questions, including why was the return not filed, and why the Debtor as the executor of the estate and responsible for the filing and payment of the estate's taxes should not be held responsible for those delinquencies?

Under M.G.L. c. 65C, § 14, Georgia's death automatically created a statutory ten-year lien encumbering her entire Massachusetts gross estate for the payment of her Massachusetts estate taxes. The tenth anniversary of her death was February 4, 2015. That lien is imposed for all deaths, but if a decedent's estate is not required to file a return, the lien is released when:

> For dates on or after January 1, 1997, an affidavit of the executor, subscribed to under the pains and penalties of perjury, recorded in the appropriate registry of deeds and stating that the gross estate of the decedent does not necessitate a federal estate tax filing, shall release the gross estate of the lien imposed by this section.
> M.G.L. c. 65C, § 14(a).

That lien release by affidavit mechanism was enacted by the General Court on June 11, 1998.

The Debtor has never filed such an affidavit, nor has anyone else filed a like affidavit for Georgia's estate. If, however, a gross tax estate included real property and the total value of the estate was less than $1.5 million, a failure to advise a client about filing and to prepare (or offer to prepare) such an affidavit should be expected to meet the standard of care that an attorney owes to his client.

On December 16, 2013, before the tenth anniversary of Georgia's death and before the expiration of the statutory tax lien that arose upon her death, The Debtor filed a voluntary Chapter 11 petition. In the beginning and even well pass the chapter 11 bar date order that was entered in the case, there was nothing in this Chapter 11 case to indicate that it was anything other than an ordinary individual-real estate case. While the case had its issues, those problems were ordinary to the perhaps thousands of those types of cases that the Court has seen. Based upon the seeming ordinariness of this case at that time, the Court entered an order setting the bar date for the filing of claims May 2, 2014.

In the original schedules that The Debtor filed in the case, he did not list MDOR as a creditor, although in his amended schedules he did list MDOR as a creditor – for Massachusetts personal income taxes for the years prior to the petition.

Eventually, those problems in The Debtor's Chapter 11 accumulated to a point where the U.S. Trustee filed a motion to convert the case to Chapter 7 or to appoint a Chapter 11 trustee, although those problems had yet to morph to anything unique. In considering that motion, the Court ordered the appointment of a Chapter 11 trustee on

December 15, 2015, soon thereafter, Lynn F. Riley was appointed as the Chapter 11 trustee (the "Trustee").

As one consequence of her appointment, the Trustee became responsible for the filing of the bankruptcy estate's 2015 Federal and Massachusetts income taxes. The 2015 tax year included several estate events that required tax analysis, and the most notable one was the sale of the property located at 90 and 90A Industrial Park Road, Hingham, Massachusetts (the "Hingham Property") for $5,666,000. Based upon the information that the Trustee and her professionals had research and obtained, the Trustee's accountant and tax preparer determined through their analysis that the estate would owe 2015 Federal income taxes of $745,000 and 2015 Massachusetts income taxes of $165,500 for a combined tax due of $910,500. Based upon those determinations, the Trustee filed Federal and Massachusetts extensions, and made estimated tax payments in those amounts on April 12, 2016 before the 2015 tax filing deadline.

Also on April 12, 2016, the Trustee filed the *Trustee's Motion to Convert Case to Chapter 7* [Docket No. 892], on the grounds, *inter alia*, that a reorganization was not in reasonable prospect, due in part to the $910,500 in 2015 income taxes. The Debtor strenuously opposed that motion, and the Court held several evidentiary and other hearings. A central contention in The Debtor's opposition was that he acquired the Hingham Property through inheritance from his mother in 2005 rather than the several purchases over many decades tracked by the Trustee. By inheriting the property, The Debtor obtained a stepped up basis for the Hingham Property in the amount of its market value at the time of her death (February 4, 2005), which was greater than the property's 2015 sale price and the result would be a capital loss instead of a taxable gain.

It appears that it may have been in the course of the May 4, 2016 evidentiary hearing that the Court and the parties accepted The Debtor's position that the Hingham Property had a stepped up basis from The Debtor's inheritance from his mother when she died in 2005, and that as a result, the bankruptcy estate had no Federal or Massachusetts income taxes for the tax year 2015. On the issue of the bankruptcy estate's 2015 Federal and Massachusetts income taxes then, The Debtor had prevailed.

However, the focus in the case then shifted to questions about Georgia's estate taxes and, as it was soon determined, the failure by The Debtor to file estate tax returns with the IRS and MDOR, and the issues that arose from those derelictions. That was the core topic of the evidentiary hearings held on July 26, 2016 and August 19, 2016, and numerous pleadings filed by The Debtor and the Trustee during that period, including an amended motion to convert by the Trustee.

At the end of the August 19th hearing, the Court issued an order directing the IRS and MDOR to file statements regarding The Debtor's personal liability for the failure to file estate tax returns or to pay estate taxes as executor of Georgia's estate.

For MDOR (and, upon information and belief, the IRS), the Court's August 19th directive was the first indication that an estate tax return (a M-706) may have been required for Georgia's estate to be filed.[2] In their responses to the Court (which MDOR incorporates herein by reference), MDOR and the IRS both answered yes to the Court's question of The Debtor's personal liability, and provided analysis of the legal consequences of the facts as presented in the Trustee's amended motion to convert.

---

[2] And, as best as it can be ascertained, the first indication to MDOR that there existed at least a probate of Georgia and that The Debtor was her executor. Until then, the date of February 4, 2005 was probably most notable for being the Friday before Super Bowl XXXIX in which the New England Patriots beat the Philadelphia Eagles 24-21.

At the hearing on October 13, 2016, the Court denied the Trustee's motion and her amended motion to convert. As noted by the Court, the estate taxes raised many questions, although it was unclear as what their amounts would be and what then their impacts could be. As at least broadly outlined that day, the taxing authorities (and notably, the IRS) would proceed to determine what the taxes would be as best they could, and The Debtor would still proceed with his case, including an amended plan, and those issues would be deferred to another day.

On December 12, 2016, The Debtor filed his Seventh Amended Plan, which did not treat any IRS or MDOR estate taxes, or potential taxes. The confirmation hearing on that plan was scheduled and then held on March 22, 2017.

On March 17, 2017, MDOR as did several other creditors on various dates filed an objection to the confirmation of The Debtor's Seventh Amended Plan. The United States/IRS also filed a motion for the determination of the estate taxes under Section 505, and a motion to convert the case to Chapter 7. The Debtor had filed a Federal estate tax return for Georgia's estate, to which the IRS responded with an audit examination, and the IRS filed an amended claim based upon those audit results.

The Debtor has still not filed a Form M-706 Massachusetts estate tax return for his mother's estate, despite the fact that her gross estate met the Massachusetts filing threshold of $950,000 for the year of her death. On March 20, 2017, MDOR filed a proof of claim for the estate taxes at issue that MDOR was required to use its best knowledge and information, which in this instance was the IRS Report of income.

Even though The Debtor claimed in his testimony at the August 19th hearing (at p. 31) that he only learned of his responsibility to file the estate tax return earlier that year

(2016), he has still not filed an estate tax return with MDOR and he has not updated his schedules to disclose an actual or potential Massachusetts estate tax liability. Although he has filed a Federal return, that return was based upon the 2005 Internal Revenue Code. However, the Massachusetts return would be based in significant part upon the Internal Revenue Code in effect on December 31, 2000, and the Massachusetts return may differ in its results from the Federal return that he filed. *G.L. c. 65C, § 2A*.

Meanwhile, we still have the unanswered Erb questions. If Erb, a CPA who was the account for Georgia's estate, had concluded that the value of Georgia's gross tax estate was less than $950,000, then The Debtor could not have obtained the stepped up basis in the Hingham Property that resulted in no income taxes for the bankruptcy estate for the year 2015. If, however, Erb had concluded that at least a Massachusetts estate tax return was required, what were the contents of that return and what happened to the return? The person who was required to file it, The Debtor, has never done so to this day.

## ARGUMENT

*Cause exists to extend the bar date, including materially changed circumstances that have arisen since the entry of its order*

The bar date for the filing of claims in a chapter 7 case, in a chapter 12 case, and in a chapter 13 case is automatically set once the Section 341(a) is first scheduled. *Federal Rules of Bankruptcy Procedure* Rule 3002(c). Once that one variable is entered into the formula (basically, 90 days from the section 341 meeting for most creditors), the bar date in those chapters are set by Rule 3002(c) and, as a policy decision by the rule makers, almost absolute once the date has passed because of the necessity to determine confirmation of a chapter 12 or chapter 13 plan than what exists in chapter 11 cases.

In contrast, for chapter 9 and chapter 11 cases, *FRBP* Rule 3003, leaves it to the Court the question of the bar date, and she is expressly given the power to extend the bar date. Indeed, and although presumably rare, there can be chapter 11 cases that have no bar dates when the Debtor or other appropriate party fails to request the court to enter one. Rather than a deadline set under the Bankruptcy Rules, the bar date is an interlocutory order, which like any other interlocutory order can by the court's inherent powers be re-visited and revised by the court. The Court has not confirmed a plan in this case, so this is no issue of prejudice, but instead at most the avoidance of an unwarranted windfall based upon the Debtor's inadequate information provided to the Court and creditors prior to the entry of the bar date order. Unlike Rule 3002, Rule 3003 does not limit the court's power to extend the bar date after its passing.

Prior to the bar date, MDOR had no knowledge of and it had no reason to believe or even suspect that it might have a claim against The Debtor for Georgia's estate taxes. Indeed, if we are now to believe The Debtor even he had no knowledge that as executor of Georgia's estate until almost two years after the bar date had passed, although depending upon what information Erb would provide and the inferences that reasonably be made by the lack of a lien release affidavit by The Debtor as executor of Georgia's estate, that may be suspect.
The circumstances, including the Court's knowledge and understanding of this case, have radically and substantially change since the day the Court entered its interlocutory bar date order. In the Debtor's version of events, it was his newly discovered evidence two years or more after the bar date that the value of the Hingham Property was high enough to avoid the 2015 income taxes, but also high enough to at least require the filing of a

2005 Massachusetts estate tax return, which he did not file and has not filed, that has now triggered a MDOR claim for that liability, albeit, an assessment based upon the best available information. As an interlocutory order, the Court itself has the power to rescind or revise the bar date order *sua sponte*, at least until what constitute the final order in this case.

*The Debtor must be estopped from obtaining a material benefit from inheriting the Hingham Property while avoiding the burden of that inheritance*

In 2016, the Debtor was able to satisfactorily show that the stepped up basis for the Hingham Property he obtained when he inherited from his mother was sufficient to obviate any income taxes that he or the bankruptcy estate might otherwise have for the year of the sale of the Hingham Property. In order to have that effect, the Debtor's inheritance of that property alone would have at least required that the Debtor as the executor of his mother's estate to file a Massachusetts estate tax return, and possibly and quite likely incur a Massachusetts estate tax. However, the Debtor never filed the return and never paid a tax. Although the Debtor was the only party in the case who prior to 2016 would have known the value Georgia's estate was at least sufficient to require a return and possibly a tax, he is now attempting to use the bar date for the filing of claims that he sought and obtained from the Court in March 2014 in order to prevent any claim from the transactions that he used to avoid other taxes.

The Seventh Circuit, in the case of *FCC v. Airadigm Communs., Inc. (In re Airadigm Communs., Inc.)*, discussed the doctrine of judicial estoppel. 616 F.3d 642, 661-662 (7th Cir. 2010). In a far better way than MDOR can offer, the Court described the doctrine and its substance thusly:

Judicial estoppel is an equitable concept that prevents parties from playing "fast and loose" with the courts by prevailing twice on opposing theories. *Butler v. Vill. of Round Lake Police Dep't*, 585 F.3d 1020, 1022 (7th Cir. 2009). The doctrine is "invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The doctrine's purpose is to protect the integrity of the judicial process. *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). Put a bit colorfully, judicial estoppel "protect[s] the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). Without judicial estoppel, parties' inconsistent litigating positions could undermine the integrity of the judiciary by "creat[ing] the perception that either the first or the second court was misled * * *." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 792 (D.C. Cir. 2010) (quoting *Maine*, 532 U.S. at 750).

Although the Supreme Court has emphasized that there is no formula for judicial estoppel, it has identified at least three pertinent factors for courts to examine: (1) whether the party's later position was "clearly inconsistent" with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party "seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Maine*, 532 U.S. at 750-51 (collecting cases and repeating that no rigid formula applies to the analysis); see also *Thore v. Howe*, 466 F.3d 173, 181 (1st Cir. 2006) ("The contours of the judicial estoppel doctrine are not sharply defined * * *."); *Moses*, 606 F.3d at 792 (party may not change positions "simply because his interests have changed").

Judicial estoppel does not come into play only when a party attempts to retreat in a second case from an argument on which it prevailed in a separate earlier case. It also "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605 (9th Cir. 1996)); see also *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 728 (7th Cir. 2010) (reasoning that, even with regard to two separate suits, success at an early stage of the earlier litigation would be no bar to the application of the doctrine in subsequent litigation); *Cont'l Ill. Corp. v. Comm'r*, 998 F.2d 513, 518 (7th Cir. 1993) (although the doctrine is normally raised in successive suits "it is not so limited"); Charles Alan Wright et al., 18B FEDERAL PRACTICE AND PROCEDURE § 4477, at 552 (2d ed. 2002) (theories of judicial estoppel draw from the fact of inconsistency rather than the fact of adjudication). Likewise, there is no requirement that the parties be the same for judicial estoppel to apply. What matters for purposes of judicial estoppel is whether, in reaching its earlier decision, the court relied on the representation of the one against whom estoppel is asserted. *Rederford v. U.S. Airways, Inc.*, 589

F.3d 30, 38 (1st Cir. 2009); *Lowery v. Stovall,* 92 F.3d 219, 223 n.3 (4th Cir. 1996) (judicial estoppel does not have a mutuality requirement because the doctrine "is designed to protect the integrity of the courts rather than any interest of the litigants").

After the Debtor prevailed in using the existence of his inheritances from his mother to avoid paying any 2015 taxes, but now in order to avoid any responsibility for unlawfully failing to file and, if necessary, pay any Massachusetts estate taxes based upon his inheritances, and to do so based upon a bar date order the Debtor sought from the Court based upon inadequate information to the Court and creditors, is a situation that smacks of "playing 'fast and loose'".

*MDOR must granted relief from the Bar Bate Order*

Federal Rules of Bankruptcy Procedure Rule 9006(b)(1) clause (2) provides in pertinent part that, "the court for cause shown may at any time in its discretion … on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

The question of "excusable neglect" usually begins with the Supreme Court decision *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). In *Pioneer*, the Court rejected what it termed a "narrow view of 'excusable neglect,'" under which failing to meet a deadline had to be "caused by circumstances beyond the movant's control," in favor of "a more flexible analysis." 507 U.S. at 387 n. 3. "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, carelessness, as well as by intervening circumstances beyond the party's control." 507 U.S. at 388. The Court then identified factors to be weighed in evaluating a claim of excusable neglect:

> we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include… the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. at 395.

In *Graphic Commc'ns Int'l Union, Local 12_N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1 (1st Cir. 2001), the First Circuit recognized that *Pioneer* marked a shift in the approach to excusable neglect towards a more forgiving standard, but added that:

> [T]here still must be a satisfactory explanation for the late filing. We have observed that "[t]he four Pioneer factors do not carry equal weight; the excuse given for late filing must have the greatest import. While prejudice, length of delay, and good faith might have relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry…." *Hosp. del Maestro,* 263 F.3d at 175 (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)).

270 F. 3d at 5-6.

One of the unusual aspects of this case is that, in substantial part, the neglect at issue was the Debtor's, who is opposing any relief to the bar date order. The Debtor's neglect begins with first failing and then continuing to fail up to the present the required Massachusetts estate tax return, and never disclosing until long after the bar date and only after obtaining a benefit the existence of any estate or estate tax issues. It was not until the Court issued its directive to MDOR on August 19, 2016 to provide the Court with information about the Massachusetts estate tax that MDOR had even inquiry notice that it might possibly have a claim for estate taxes – which was more than two years after the bar date.

The cause for granting MDOR relief from the bar date is compelling. See, e.g. *In re PT-1 Communications, Inc.*, 292 B.R. 482 (Bankr. E.D.N.Y. 2003) and *In re Collier*, 307 B.R. 20 (Bankr. D. Mass. 2004).

In *Collier,* The court found for the claimants, based upon an estoppel analysis, which was as follows:

> Estoppel is based upon notions of fair dealing and good faith. Specifically, estoppel is employed to prevent the inequitable assertion of rights which would otherwise exist to the detriment of an opposing party who has bene misled. Estoppel requires that the Court find existence of: 1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; 2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and 3) detriment to such person as a consequence of the act or omission. "Conduct" may include spoken words, written words, positive acts, silence, and negative omissions to do something. To find estoppel, there need not be an actual intent to defraud or mislead. The estoped party need only have intended or expected that another would act upon his representations. [Citations omitted.]

*Collier*, 307 B.R. at 27-28.

On multiple occasions in this brief, MDOR has recited the critical facts in this case, and just in *Collier*, "The facts here lend themselves well to this analysis." *Id.* at 28.

*As a secured creditor, MDOR was not required to file a proof of claim*

On the Petition Date, the estate tax lien was still in existence and encumbered, *inter alia*, the Hingham Property. On the day after the tenth anniversary of her death, the Hingham Property would have been cleared of the automatic estate tax lien, but for the Debtor's bankruptcy case. However, that anniversary date was a post-petition date in the Debtor's bankruptcy, and the expiration of the Massachusetts (and Federal) automatic estate tax lien may have been tolled as of the Petition Date under Section 108(c) of the Bankruptcy Code, which provides that:

> If applicable nonbankruptcy law… fixes a period for commencing or continuing a civil action… on a claim against the debtor… and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of… the end of such period … or 30 days after notice of the termination of the stay under section 362….

If tolled, the Federal and Massachusetts automatic estate tax liens may be among the "valid liens" that has attached to the proceeds from the sale of the Hingham Property. In her tax memorandum, the Trustee identified as the only case that she could find in her research that clearly addressed the question of whether the automatic estate tax lien is or is not tolled by Section 108 was the Ninth Circuit B.A.P. decision in *In re Decker*. See *IRS v. Valley National Bank (In re Decker)*, 199 B.R. 684, 687-88 (9th Cir. B.A.P. 1996). In *Decker*, the court held that the Federal estate tax lien that otherwise would have expired but for the bankruptcy petition was tolled by Section 108(c), and the lien attached to the proceeds from the sale of the property the debtor inherited. *Decker*, 199 B.R. at 688.

# CONCLUSION

For the reasons described above, the Court must deny the *Motion by Movant for Summary Judgment Relative to Estate Tax Claim of the Massachusetts Department of Revenue,* and the relief requested therein.

                                                  **Respectfully submitted,**

**Dated: June 12, 2017**                  **MICHAEL J. HEFFERNAN,
COMMISSIONER
MASSACHUSETTS DEPARTMENT OF
REVENUE**

**By his attorneys,**

**MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS**

**Kevin W. Brown, General Counsel
Special Assistant Attorney General**

    *//s//   Stephen G. Murphy*
**Stephen G. Murphy (BBO # 542427)
Counsel to the Commissioner
Massachusetts Department of Revenue
Litigation Bureau
100 Cambridge Street, P. O. Box 9565
Boston, MA 02114
Tel. No.: (617) 626-3305
Fax No.: (617) 660-3945
Email: murphys@dor.state.ma.us**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) ) ) | |
| **ROBERT J. SPENLINHAUER,** | ) ) | **Chapter 11** |
| | ) | **Case No. 13-17191-JNF** |
| **DEBTOR** | ) ) | |
| | ) ) | |
| **ROBERT J. SPENLINHAUER,** | ) ) | |
| **MOVANT** | ) ) | |
| v. | ) ) | **Contested Matter: #1113** |
| **MASSACHUSETTS DEPARTMENTOF** | ) | |
| **REVENUE,** | ) ) | |
| **RESPONDENT** | ) ) | |

**CERTIFICATE OF SERVICE**

I, Stephen G. Murphy, hereby certify that I have this day served a copy of the within *Memorandum Of Law By Commissioner Of Massachusetts Department Of Revenue In Opposition To The Motion By Movant For Summary Judgment Relative To Estate Tax Claim Of The Massachusetts Department Of Revenue*, electronically upon filing upon the parties or persons appearing on the accompanying SERVICE LIST as indicated.

*// s // Stephen G. Murphy*
Dated: June 12, 2017

**SERVICE LIST**

**In re ROBERT J. SPENLINHAUER**,
<u>Chapter 11, Case No. 13-17191-JNF</u>

Electronic List:

- Paula R.C. Bachtell    paula.bachtell@usdoj.gov
- David M. Baker    bankruptcy@dbakerlawgroup.com
- Philip Bednar    philip.l.bednar@usdoj.gov, northern.taxcivil@usdoj.gov
- Richard L. Blumenthal    RBLUMENTHAL@SILVERMANKUDISCH.COM, peterzim10@gmail.com,ecfrlb@gmail.com,richardlblumenthal@gmail.com
- Steven Boyajian    sboyajian@rc.com
- Eric K. Bradford    Eric.K.Bradford@USDOJ.gov
- Gary W. Cruickshank    gwc@cruickshank-law.com
- Joseph Dolben    jdolben@mlg-defaultlaw.com, yfrails@mlg-defaultlaw.com;rdesrosiers@mlg-defaultlaw.com
- Rayford Farquhar    Rayford.farquhar@usdoj.gov, nicole.dapcic@usdoj.gov
- John Fitzgerald    USTPRegion01.BO.ECF@USDOJ.GOV
- David C. Fixler    dfixler@rubinrudman.com
- Mark Foss    mfoss@ftwlaw.com, ftwbankruptcy@ftwlaw.com
- Jeffrey D. Ganz    JGanz@riemerlaw.com, ndailey@riemerlaw.com
- David Koha    koha@casneredwards.com, luo@casneredwards.com
- Michael Lushan    lushan@lushlaw.com
- Brendan T. Mockler    brendan.mockler@usdoj.gov, USAMA.bankruptcy@usdoj.gov
- Martin A. Mooney    tshariff@schillerknapp.com, tshariff@ecf.courtdrive.com;ahight@schillerknapp.com
- John T. Morrier    morrier@casneredwards.com
- Stephen G. Murphy    murphys@dor.state.ma.us
- John J. O'Connor    joconnor@peabodyarnold.com
- Adam Ponte    Aponte@fletchertilton.com
- Alexander G. Rheaume    arheaume@riemerlaw.com
- Lynne F. Riley    riley@casneredwards.com, ma14@ecfcbis.com;luo@casneredwards.com
- Lynne F. Riley    rileytrustee@casneredwards.com, MA14@ecfcbis.com;luo@casneredwards.com
- Alex M. Rodolakis    arodolakis@fletchertilton.com, arodolakis@fletchertilton.com
- Seth Roman    sgr@carterdeyoung.com
- Ryan C. Siden    rsiden@sidenlaw.com
- Paul F. Vozella    pfvoz@aol.com