# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT J. SPENLINHAUER,**                          Chapter 11
          Debtor                          Case No. 13-17191-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion by Respondent, Robert J. Spenlinhauer

(the "Debtor"), for Summary Judgment Relative to Estate Tax Claim of the United States

of America.   The Debtor's Motion for Summary Judgment arises in the context of a

contested matter initiated by the filing of "Creditor United States of America's Motion to

Determine Tax Liability Pursuant to § 505(a)." Pursuant to that motion, the United States

seeks a determination that the Debtor is personally liable for an estate tax obligation as a

transferee of the estate of Georgia M. Spenlinhauer, the Debtor's deceased mother,[1] as he

was the executor and beneficiary of his mother's estate and did not file a Form 706 estate

tax return for her estate until February 8, 2017, more than 12 years after his mother passed

away.

Through his summary judgment motion, the Debtor seeks entry of an order

finding that the the proof of claim bar date of May 2, 2014 (the "Bar Date"), established

---

[1] It is undisputed that the Debtor's mother died on February 4, 2005.

1

by this Court pursuant to its bar order entered on March 24, 2014, prevents the filling by the United States Department of the Treasury, Internal Revenue Service (the "IRS"), of an amended or new proof of claim asserting an estate tax claim for which the Debtor may be liable as executor and beneficiary of his deceased mother's estate.[2]  In support of his motion, the Debtor filed a Concise Statement of Material Facts, an Affidavit, and a "Memorandum of Law in Support of Motion for Summary Judgment Regarding the Objection to Estate Tax Portion of Amended Claim Number 10 filed by the Internal Revenue Service."

The IRS filed an Opposition to the Debtor's summary judgment motion.   In addition, it filed a Cross-Motion for Partial Summary Judgment, as well as a Concise Statement of Material Facts in Support of its Opposition and Cross-Motion for Partial Summary Judgment, a Brief in Opposition to the Motion for Summary Judgment and in Support of its Cross-Motion for Partial Summary Judgment, and the Declaration of Nicholas R. Ernick in Support of its Opposition and Cross-Motion for Partial Summary Judgment.  It seeks an order "granting partial summary judgment [in] its favor finding that the claims bar date in this case does not prevent the Internal Revenue Service from amending its proof of claim, post-claims bar date, to assert estate tax-related claims against the Debtor, and to assert income tax claims against the Debtor regarding tax year 2005."

---

[2] As the court noted in United States v. Laughlin, 210 B.R. 659 (B.A.P. 1st Cir. 1997), "in cases involving the IRS, the real party in interest is the United States of America."  Id. at 660.  The Court shall refer to the United States as the IRS for convenience.

The Court heard the Motion for Summary Judgment and the Cross-Motion for Partial Summary Judgment on June 13, 2017 and afforded the parties additional time to file further submissions in this contested matter.  Both the Debtor and the IRS filed supplemental documents.  In particular, the IRS filed the Declaration of Scott E. Irick in Support of its submissions, as well as a Motion to Permit Late-Filed Tax Claim in which it reiterated arguments made in support of its Cross-Motion for Partial Summary Judgment.  The Debtor filed an Objection to the Motion to Permit Late Filed Tax Claim, as well as a Response to the Further Submissions of the IRS and a Memorandum of Law.

The issues presented include whether the IRS had adequate notice that it had a claim against the Debtor in his capacity as executor and beneficiary of his deceased mother's estate in addition to its claim for income taxes owed by the Debtor and whether it demonstrated "cause, " *see* Fed. R. Bankr. P. 3003(c)(3), or excusable neglect, *see* <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993), warranting an extension of the Bar Date for filing a proof of claim for the Debtor's personal liability as a transferee of the estate of Georgia Spenlinhauer for her estate's federal estate tax liability. For the reasons set forth below, the Court finds that the IRS has sustained its burden of establishing both cause and excusable neglect warranting an extension of the Bar Date for filing claims relating to Georgia Spenlinhauer's estate.

## II. BACKGROUND

The Debtor filed a Chapter 11 petition on December 16, 2013.[3] He listed the IRS on his original matrix filed pursuant to MLBR 1007-1 at the following address:

> Internal Revenue Service
> JFK Federal Building
> 15 New Sudbury Street
> Boston, MA 02203-0292

The Bankruptcy Noticing Center, on December 21, 2013, sent a copy of the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines" to the following: "UNITED STATES ATTORNEY, JOHN JOSEPH MOAKLEY, UNITED STATES FEDERAL COURTHOUSE, 1 COURTHOUSE WAY, SUITE 9200, BOSTON, MA 02210-3011," "EDI: IRS.COM Dec 19 2013 23:38:00 INTERNAL REVENUE SERVICE, P.O. Box 7346, Philadelphia, PA 19101-7346," and "EDI: IRS.COM Dec 19 2013 23:38:00 [sic] INTERNAL REVENUE SERVICE, INSOLVENCY GROUPS-STOP 20800, PO BOX 9112, 25 NEW SUDBURY STREET, Boston, MA 02203." The meeting of creditors did not take place as initially scheduled. The Debtor, through counsel, on December 31, 2013, sent a Notice of Rescheduled 341 Meeting of Creditors to the IRS at the following address:

> Internal Revenue Service
> SPS JFK Bldg.
> PO Box 9112
> Stop 20800
> Boston MA 02203

---

[3] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

The Debtor did not serve the IRS at any other address, including, as will be discussed below, the address set forth in MLBR Appendix 4 and the identical address set forth in the Roster of Government Units and Tax Liability Addresses maintained by the United States Bankruptcy Court for the District of Massachusetts pursuant to Fed. R. Bankr. P. 5003(e).

On January 10, 2014, the Debtor filed, among other things, his schedules of assets and liabilities and Statement of Financial Affairs. On Schedule D-Creditors Holding Secured Claims, he listed the IRS as the holder of a claim, identified as 2006-2010 Tax Lien, in the sum of $294,000 secured by property located at 13 Industrial Drive, Mashpee, Massachusetts valued at $474,000. On February 14, 2014, the Debtor filed amended Schedules A, B, C, D, E, and F and an amended Statement of Financial Affairs, but did not list the IRS as the holder of any claims other than the one previously listed on Schedule D. On his original and amended Schedule D, he listed the IRS at the address used for the rescheduled meeting of creditors. On March 27, 2014, the Debtor amended his schedules again but did not alter the way he listed the IRS's claim. On April 11, 2014, the Debtor filed an amended Schedule E, adding the IRS as the holder of an unsecured priority claim for 2011 income taxes in the sum of $40,299.00, using the SPS JFK Bldg. address.

Approximately 20 months after the Debtor commenced his Chapter 11 case, on September 3, 2015, the Court entered an order authorizing the Debtor to sell real property located at 90-90A Industrial Park Road in Hingham, Massachusetts ("the Hingham Property"). On September 14, 2015, the sale of the Hingham Property closed, generating,

according to the Debtor in a Status Report filed on September 17, 2015, net proceeds of

$1,029,459.29 for the bankruptcy estate.

On December 8, 2015, the United States Trustee filed a Motion to Convert Debtor's

Chapter 11 case to Chapter 7, or, in the Alternative, to Appoint a Chapter 11 Trustee

asserting numerous grounds, including the Debtor's failure to timely file his federal and

state tax returns.  On December 15, 2015, this Court granted the United States Trustee's

alternative Motion to Appoint a Chapter 11 Trustee in lieu of converting the Debtor's

Chapter 11 case to a Case under Chapter 7 and subsequently entered an order authorizing

the appointment of Lynne F. Riley as Chapter 11 Trustee (the "Trustee") in this case.  Four

months after her appointment, on April 12, 2016, the Trustee filed a Motion to Convert

Case to Chapter 7.[4]

The Court conducted evidentiary hearings on the Motion to Convert on May 4,

2016, July 26, 2016, and August 19, 2016.  Following the May 4, 2016 hearing, the Court

directed the filing of memoranda regarding the Debtor's tax liabilities, including any

---

[4] In her Motion, the Trustee asserted, *Inter alia,* the following:

> The estate faces significant tax liability resulting from the Debtor's disposition of assets during these Chapter 11 proceedings. The Debtor belatedly filed income tax returns for 2013 and 2014, but the analysis of these returns by the Trustee and her accountant reveals that these returns and his 2012 return miscalculate the income taxes due from the Debtor. The Debtor has failed to fully account for the capital gain taxes on the sale of properties during this case or the taxable cancellation of debt owed to his late mother's estate (of which he was the administrator), and the Trustee believes that amended returns will need to be filed for these periods. This will result in further administrative and priority taxes owing, removing any notion of a solvent estate.

potential tax liability arising from his failure to file an estate tax return in 2005 as executor of his deceased mother's estate.

On July 26, 2016, the Trustee filed a "Memorandum of Law Regarding the Debtor's Tax Liabilities in Support of the Trustee's Motion to Convert These Proceedings to Chapter 7."   In her Memorandum, the Trustee argued that "because the Hingham Property was included in Georgia Spenlinhauer's taxable estate, but the required estate tax return was not filed and the estate tax due has never been paid, Robert Spenlinhauer, as his mother's executor and beneficiary, remains liable for the estate tax due."   The Trustee estimated that the Debtor's personal liability for estate tax arising from his late mother's estate exceeds $11 million, given that the Hingham Property alone was worth between $9.8 million and $9.65 million at the time of Georgia Spenlinhauer's death in 2005.[5]   Thereafter, on August 5, 2016, the Trustee filed an Amended Motion to Convert

---

[5] The Debtor in his Statement averred the following:

> An issue has been raised in this proceeding about the Massachusetts estate tax liability on the estate of Georgia M. Spenlinhauer.  The Massachusetts estate tax, Chapter 65C of its General Laws, includes a ten year statute for assessment of tax, running from the decedent's death.  § 14(a) of Chapter 65C reads:
>
> > "Unless the tax imposed by this Chapter is sooner paid in full, it shall be a lien for ten years from the date of death upon the Massachusetts gross estate of the decedent . . . ."
>
> Georgia Spenlinhauer died in 2005.  Consequently, the statute had run out in 2015 and there was then no enforceable liability for Massachusetts estate tax on the Georgia M. Spenlinhauer estate.

Case to Chapter 7 for the purposes of incorporating "as grounds for conversion substantial new information disclosed by the Debtor and his advisors and other witnesses, in testimony and otherwise, since the filing of her Initial Motion to Convert."[6]

At the conclusion of the August 19, 2016 evidentiary hearing, and upon consideration of the Trustee's Amended Motion to Convert, the Court directed the IRS and the Massachusetts Department of Revenue (the "MDOR") to file statements with respect to the amended motion within 30 days. The IRS filed its Statement on September

---

[6] The Trustee represented in her amended motion the following:

> The Debtor has recently come forward with information which fundamentally changes the record of his acquisition and ownership of the real estate at 90 Industrial Park Road in Hingham, Massachusetts (the "Hingham Property"). Although the Debtor asserts that this information reduces the income tax due for calendar year 2015, this information also reveals that the Debtor is liable on a significant tax debt in connection with his ownership and sale of the Hingham Property. Information from the Debtor regarding the [sic] his acquisition of the Hingham Property has completely changed since April of 2016, when both the Initial Motion to Convert was filed with this Court and the automatic extension of the 2015 tax return deadline was filed with the tax authorities. As detailed in the Tax Memorandum, the Debtor has now substantiated that he acquired the Hingham Property as an inheritance from his late mother, Georgia Spenlinhauer; and admitted that as administrator of his mother's estate, he failed to file an estate tax return and failed to pay estate tax due in connection with the transfer to himself of taxable estate property including the Hingham Property. Since the required estate tax return has never been filed, under applicable law, the Debtor – as estate administrator and as beneficiary – remains liable to the state and federal taxing authorities for the unpaid estate tax, plus penalties and interest, with no statute of limitations.

Trustee's Amended Motion to Convert Case to Chapter 7, at p. 2.

19, 2016 acknowledging that its proof of claim "does not contain any estate or income tax claims related to his late mother's estate. "

Until such time as the Trustee addressed the Debtor's tax obligations as part of her fiduciary duties in 2016 following the sale of the Hingham Property and the Court conducted an evidentiary hearing with respect to her Motion to Convert, neither the IRS nor the MDOR were aware of issues relating to the Debtor's failure to file an estate tax return for his late mother's estate or any potential liability for estate taxes.  Owing to that newly discovered circumstance on the part of the parties in interest, the Court itself directed the IRS and MDOR to address the issue at the conclusion of the evidentiary hearing by filing the statements referenced above.

## III. THE PARTIES' STATEMENTS OF MATERIAL FACTS

A. <u>The Debtor</u>

As noted above, the Debtor filed a Concise Statement of Material Facts in support of his motion for summary judgment pursuant to which he seeks a determination that the IRS is barred from filing any claims relating to his deceased mother's estate.  The Court paraphrases those facts as follows.

On March 15, 2017, the IRS filed a Motion to Determine Tax Liability Pursuant to 11 U.S.C. § 505(a)(1) (Doc. No. 1098).  Less than one week later, on March 21, 2017, the Debtor filed an "Objection of Debtor to Amended Claim Number 10 filed by the Internal Revenue Service" (Doc. No. 1110), seeking disallowance of that claim.

On March 22, 2017, this Court entered an order consolidating the Motion to Determine Tax Liability with the Debtor's objection to the proof of claim of the IRS, which proof of claim also was filed on March 15, 2017.[7]

Through its original proof of claim, filed on February 3, 2014, the IRS sought payment of the Debtor's personal income taxes for tax years 2010, 2011 and 2012.[8]

The Debtor stated that he unaware that an estate tax return had to be filed for the estate of his mother, Georgia Spenlinhauer, an assertion he made in his Affidavit dated May 31, 2017.

On March 24, 2014, this Court entered a bar order for filing proofs of claim. The bar order established the Bar Date of May 2, 2014 for filing proofs of claim. Consistent with MLBR Official Local Form 5, it provided in pertinent part:

> Any claim against the Debtor for which a proof of claim is required, but is not timely filed under the terms of this Order, shall be forever disallowed and barred as a claim against the Debtor whether for the purposes of voting,

---

[7] The proof of claim filed by the IRS on March 15, 2017 was in the amount of $8,267,167.44. The IRS indicated that of that amount $3,601,842.50 was secured and $4,666,324.94 was unsecured. It attached to the proof of claim an "Explanation of ESTATE tax and Secured Amount." The IRS further amended that proof of claim after the Debtor filed his Objection to it on May 17, 2017, increasing the total claim amount to $8,524,541.73.

[8] The IRS filed its original proof of claim on February 3, 2014. It asserted a secured claim in the amount of $331,742.87 relating to income taxes for the tax periods ending on December 31, 2006, 2007, 2008, 2009 and 2010. The taxes were assessed in 2009, 2010 and 2011. The bulk of the secured claim ($243,897.68) related to penalties. The tax liens for those claims were all filed on February 7, 2012 in Barnstable County. The IRS also included in its proof of claim a claim for $68,481.76 as an unsecured priority claim relating to income taxes for 2011 and 2012. The IRS amended its proof of claim on May 16, 2014, reducing its secured claim to $31,575.88 and its unsecured priority claim to $62,550.85 and adding an unsecured claim for "[p]enalty to date of petition on unsecured priority claims (including interest thereon)" of $20,414.71.

sharing in any distribution, or in any way participating as a party in interest in this proceeding.

The Debtor, through counsel, served a copy of the Bar Order on the IRS on March 27, 2014 at the following address:

> SPS JFK Bldg.
> P.O. Box 9112
> Stop 20800
> Boston MA 02203[9]

The IRS issued an estate tax identification number to the estate of Georgia Spenlinhauer on June 9, 2005.  The notice was sent from Department of Treasury, Internal Revenue Service, Philadelphia PA 19255-0023,[10] and was addressed as follows:

> Georgia M Spenlinhauer Estate
> Spenlinhauer Robert J Ex [sic]
> 828 Sea View Ave
> Osterville MA 02655

The notice provided in pertinent part the following:

> Thank you for applying for an EIN [Employer Identification Number].  We assigned you EIN 43-6924015.  This EIN will identify your estate and trust.

***

---

[9] The Bankruptcy Noticing Center served notice of the Bar Date on March 27, 2014, but served neither the IRS nor the Massachusetts Department of Revenue.  Neither the Debtor nor the Bankruptcy Noticing Center served the IRS at P.O. Box 7346, which is the address listed in MLBR Appendix 4 to be used for notice to the IRS and the address used to notify the IRS of the commencement of the Debtor's Chapter 11 case.  As discussed more fully below, the Bankruptcy Court's website lists this address on its "Roster of Government Units and Tax Liability Address," which provides "addresses for governmental units who receive notices as well as those units responsible for the collection of taxes within the District of Massachusetts pursuant to 11 U.S. Code § 505(b) and Federal Bankruptcy Rule 5003(e)."

[10] The Debtor never served the IRS at this address with any notices, including the notice of the Bar Date.

Based on the information from you or your representative, you must file the following form(s) by the date shown next to it.

Form 1041                    04/15/2006

***

We assigned you a tax classification . . . based on information obtained from you or your representative.  It is not a legal determination of your tax classification, and is not binding on the IRS. . . .

B. The IRS

The IRS, referring to attachments to its Motion to Determine Tax Liability pursuant to § 505(a)(1), also filed a Concise Statement of Material Facts in which it referenced the Debtor's Memorandum of Law Regarding Tax Effects of Sale of Hingham Property filed on July 25, 2016 in conjunction with the Chapter 11 Trustee's Motion to Convert Case to Chapter 7. In addition, it outlined the contents of proofs of claims it filed on February 3, 2014 and May 16, 2014 and set forth the following facts which this Court paraphrases.

The Debtor's mother, Georgia Spenlinhauer, died on February 4, 2005.  The Debtor was appointed the executor, and he is a beneficiary of his late mother's estate pursuant to her Last Will and Testament.  The Debtor did not file a Form 706 estate tax return for the estate of Georgia Spenlinhauer until February 8, 2017.  The Form 706 estate tax return for the estate of Georgia Spenlinhauer that he filed, which sets forth the last four digits of Georgia Spenlinhauer's social security number, shows an estate tax liability of $0. On the Form 706 estate tax return for the estate of Georgia Spenlinhauer, the Debtor reported a value of $3,900,000 for the Hingham Property.

The Hingham Property was held, prior to the death of Georgia Spenlinhauer, in the G.M.S. Realty Trust, a revocable trust (until her death) of which she was the beneficiary during her lifetime. According to the trust as amended prior to Georgia Spenlinhauer's death, the Debtor became the successor beneficiary upon his mother's death and a successor trustee as well.  He was supposed to transfer title to himself, which he ultimately did on July 21, 2006 (after which he further transferred title to the RJS Realty Trust – a trust of which he was the beneficiary during his lifetime).

In 2016, the Debtor provided the Chapter 11 Trustee with an appraisal of the Hingham Property as of May 16, 2006 (approximately 15 months after his mother's death), which sets forth a market value "as is" in fee simple of $9,480,000 and a market value "as is" in "leased fee" of $9,650,000.[11]

Following the February 2017 filing of the Form 706 return, the IRS conducted an examination of the return, and, on March 6, 2017, it issued an examination report to the Debtor concluding that the estate tax liability was $3,984,344, to which it added penalties of $1,520,606, and accrued interest.  The IRS's examination report based the tax in part on a valuation of the Hingham Property of $9,480,000 at the time of Georgia Spenlinhauer's

---

[11] The Appraisal Report, which was prepared by Robert W.I. Kingan, SRPA for Rockland Trust Company, contained the following description of the Hingham Property:  "a one story with part finished basement and part finished mezzanine building currently used as a school containing a total gross floor area of 61,748 sq. ft. +/- on a site comprising two parcels of land totaling 8.56 acres +/-" located at 90 Industrial Park Road, Hingham, Massachusetts, 02043."

death, not $3,900,000 as set forth in the return.  Other substantial adjustments included

the following:

> (1) difference in value of decedent's 1% stock interest in Spencer Press, Inc.,
> which passed to the Debtor and was part of a 100% stock acquisition shortly
> after the decedent's death in which the Debtor as executor received $375,000
> instead of the $150,000 reported on the estate tax return;
> (2) difference in amount of taxable gifts made during decedent's lifetime;
> (3) inclusion of mortgage note from Parsonfield Group, LLC, to the
> decedent that passed to the Debtor;
> (4) inclusion of jewelry and personal effects;
> (5) disallowance of attorney's fees for litigation related to the 1% interest in
> Spencer Press;
> (6) disallowance of bequests to grandchildren as alleged "charitable
> deductions";
> (7) disallowance of a "qualified conservation easement" deduction related
> to the Hingham Property, due to failure to comply with strict statutory
> requirements for claiming qualified conservation easement deductions; and
> (8) inclusion of Milton Property allegedly conveyed to the Debtor by the
> decedent in 1998.[12]

On March 15, 2017, the IRS filed an amended proof of claim in this case, containing

an estate tax-related secured claim in the amount of $3,570,266.62 and an estate tax related

general unsecured claim in the amount of $414,077.38, plus penalties and interest, in

addition to federal income tax claims for years 2010, 2011, and 2012.[13]

---

[12] The Debtor disputes the facts set forth in this paragraph which mirror paragraphs 11-
13 of the IRS's Concise Statement of Material Facts, which in turn, were supported by
exhibits.  The Debtor stated no grounds for his objection. While the Debtor may disagree
with the conclusion of the IRS as to the *amount* of tax owed and whether the Bar Date
precludes the estate tax claim, it cannot be disputed that the IRS conducted an
examination of the Form 706 that the Debtor submitted to it and that it recomputed the
amount of tax owed.  In any event, the amount of any estate tax owed is not now before
the Court.

[13] The Debtor disputed this fact without stating any basis for the dispute.  The Court takes
judicial notice that the IRS filed an amended proof of claim on that date and the IRS
accurately summarized its contents.

In conjunction with the Rule 2004 examination conducted by the United States in this case, the Debtor produced an unsigned Form 1041 tax return for year 2005 for the G.M.S. Realty Trust – the entity that held title to the Hingham Property before his mother's death and which continued to hold title for the remainder of that year after her death. The unsigned Form 1041 was prepared by David A. Erb ("Erb") of Berry Dunn McNeil & Parker, LLC – the same accountant who prepared the Debtor's tax return for year 2005 filed in 2011 as noted below.  The unsigned Form 1041 for the G.M.S. Realty Trust for year 2005, which set forth an Employer Identification Number of **-***3136,[14] set forth over $1 million in rents received and $296,171 in net income after deduction of various expenses, including a $300,000 "management fee" to the Debtor. The Debtor reported only $200,000 in management fees from the Hingham Property on Schedule C, "Profit or Loss from Business (Sole Proprietorship)," to his personal federal income tax return for 2005.  The Debtor filed his Form 1040, which was prepared by Erb, for 2005 with the IRS on or about August 31, 2011.

Nicholas R. Ernick ("Ernick"), an estate tax attorney in the Small Business/Self-employed Division of the IRS located at the JFK Federal Building, 15 New Sudbury Street, Boston, Massachusetts, executed a declaration under penalty of perjury regarding his search of IRS records which the IRS included with its partial summary judgment submissions.  Ernick indicated that 1) no Form 706 estate tax return for the estate of

---

[14] This EIN number is different than the number assigned to Georgia Spenlinhauer's estate, i.e., EIN 3-6924015.

Georgia Spenlinauer was filed before February 8, 2017, 2) no Form 1041 for the G.M.S. Realty Trust for year 2005 has been filed with the IRS, 3) no Form 1040 for any part of the year 2005 on behalf of Georgia Spenlinhauer has been filed with the IRS, and 4) no Form 1041 has been filed for the estate of Georgia Spenlinhauer for year 2005, or for any other year, with the IRS.  Ernick also declared that the IRS is unaware of any person or entity through which the 2005 net income from the Hingham Property was reported.[15]

On May 17, 2017, the IRS filed an amended proof of claim which, in addition to the income tax and estate tax-related claims set forth above, also contains an unsecured priority claim in the amount of $177,970.78 ($122,796 in tax plus $55,174.98 in prepetition interest) pertaining to the Debtor's income taxes for tax year 2005. Penalties for this liability are also included on the claim form under the general unsecured part of the claim, including a 20% accuracy penalty under 26 U.S.C. § 6662 and a 25% late-filing penalty under 26 U.S.C § 6651(a)(1).

## IV. ADDITIONAL EVIDENTIARY MATERIALS

The IRS submitted the Declaration of Scott E. Irick ("Irick") who identified himself as the Director, Headquarters Examination, in the IRS Small Business/Self-Employed Division.[16]  He indicated that a Form 706 is filed using the decedent's Social Security

---

[15] The Debtor contends that all of Ernick's representations are irrelevant.

[16] Irick indicated that he provides "executive leadership and oversight for the policy, quality/technical support, and workload selection operations for Examination - Field, Campus and Specialty."  He stated: "[a]s part of my responsibilities, I oversee the Internal Revenue Service's Estate Tax Program, including Forms 706, United States Estate (and Generation Skipping Transfer) Tax Returns, and Forms 1041, U.S. Income Tax Returns for Estates and Trusts."

number, adding that the personal representative of a decedent's estate may apply for an

EIN on Form SS-4, if the personal representative believes the decedent's estate may

realize sufficient gross income to require it to file a Form 1041 (Fiduciary Income Tax

Return) for the estate.   According to Irick, a decedent's estate is required to file a Form

1041 if the gross income (i.e., rents, interest, etc.) of the estate is equal to or in excess of

the filing requirement amount.   Irick explained:

> While the IRS's letter assigning an EIN to a decedent's estate may specify a
> date for filing a Form 1041 based on the end date of the estate's fiscal year,
> whether a return will actually be due will depend upon whether the gross
> income earned by the decedent's estate equals or exceeds the filing
> requirement amount. The personal representative of the decedent's estate
> is responsible for determining whether a Form 1041 must be filed.

Irick also stated:

> Whether a decedent's estate must file a Form 706 is based on the amount of
> the gross estate, plus taxable gifts and specific exemptions. Based on the
> amount of the gross estate, plus taxable gifts and specific exemptions, the
> vast majority of decedent's estates are not required to file a Form 706.
> However, *the personal representative of the estate is responsible for determining
> whether a Form 706 must be filed.  . . . The IRS does not routinely investigate
> whether there was a requirement for filing a Form 1041 or Form 706 based solely
> on the issuance of an EIN to a decedent's estate.* The personal representative of
> the decedent's estate is responsible for determining if there is a Form 706
> and/or Form 1041 return filing requirement.

(emphasis supplied).   Irick concluded:  "Absent some specific indication that a Form 706

and/or Form 1041 is required to be filed, the IRS relies on the personal representative of

the decedent's estate to determine whether a return must be filed."

In his Memorandum of Law filed in response to the IRS's submissions, the Debtor

referenced the Erb's Affidavit.   Erb, in turn, referenced for the first time Form M-4768,

"Application for Extension of Time to File Massachusetts Estate Tax Return" which he

filed with the Commonwealth of Massachusetts on November 3, 2005 because

"additional time is necessary to gather the information required to file a complete and

accurate return" (capitalization omitted).  Erb, while admitting he no longer had a copy

of the Massachusetts Application, stated:

> As a procedural matter, if an extension form was filed in a state
> jurisdiction, our firm would generally file a federal extension form for the
> related federal return with the Internal Revenue Service.  It would be a
> rare and unusual circumstance that would result in a state extension form
> filed without a corresponding federal extension form being filed.

## V. ARGUMENTS OF THE PARTIES

### A. The Debtor

The Debtor emphasizes that he was unaware that an estate tax return had to be

filed and maintains that the IRS's claim for the estate tax is barred by the Bar Date issued

by this Court.   He adds that the IRS was notified of this case evidenced by its filing of a

timely proof of claim.  Moreover, he relies on the issuance of an EIN number, stating that

"the IRS should have notified him after 9 months of the issuance of the tax identification

number that an estate tax return was due" because the EIN notice set forth a due date of

April 15, 2006 for the filing of a Form 1041.  The Debtor further states that "[s]ince Mr.

Spenlinhauer was depreciating 90 Industrial Park Road, Hingham, Massachusetts . . . the

acquisition of same from his mother, the I.R.S. [sic] was on notice of the transfer of the

Hingham Property to him."  He adds that, because the EIN number was applicable to

both the estate of Georgia Spenlinhauer and the trust, which he asserts is the RJS Realty

Trust, the IRS had "notice of the possibility that an estate tax claim existed but apparently

did not conduct an investigation to determine if there was a liability." Thus, in his view, the IRS is barred from filing a claim for the estate tax.

In his Memorandum of Law filed in response to the IRS's submissions, the Debtor reiterates his contention that the IRS was aware that an estate existed for Georgia Spenlinhauer when it assigned a federal tax identification number, adding that "[i]f the IRS does not have a mechanism to review the lack of an estate tax return filing for an estate that has been issued a federal tax id number, that system failure should not harm this Chapter 11 estate." He also references Erb's Affidavit and the possible filing with the IRS of an application for an extension of time to file a Form 706 to establish that it had notice of the claim.

B. The IRS

The IRS argues that the Debtor's summary judgment motion should be denied and its cross-motion for partial summary judgment should be granted, maintaining that 1) pursuant to Fed. R. Bankr. P. 3003(c)(3), "cause" exists to permit it to amend its proof of claim after the Bar Date to include a claim for estate tax liability and/or to include a claim for 2005 income tax; 2) pursuant to the U.S. Supreme Court's ruling in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993), excusable neglect exists to permit it to file a proof of claim after the Bar Date to include a claim for estate tax liability and/or to include a claim for 2005 income tax; and 3) as a secured creditor, it is not required to file a proof of claim to preserve its estate tax lien against the bankruptcy

estate's assets.[17]  In addition, the IRS asserts that "[t]o whatever extent the claim might

otherwise be held untimely, the United States maintains that equitable tolling of the bar

date applies."

The IRS contends that the only disputed fact as to the Debtor's liability as executor

of his deceased mother's estate is whether he was unaware that an estate tax return

needed to be filed, adding that that fact is not material if this Court were to agree with its

contention that the claim should be considered timely even if the Debtor was "completely

in the dark" as to the need to file an estate tax return.  The IRS maintains that "cause"

exists under Fed. R. Bankr. P. 3003(c)(3) to permit it to amend its claim after the Bar Date

because:

> (1) the federal tax system is largely a self-reporting system, and the IRS did
> not know until February 2017, when the Debtor filed the Form 706 probate
> return of his mother's estate, that it had an estate tax claim against the
> Debtor, (2) the IRS's issuance of an employer identification number ("EIN")
> for Georgia Spenlinhauer's probate estate in June 2005 did not require an
> investigation or otherwise put the IRS on notice that it had an estate tax
> claim against the Debtor, and if those two facts alone do not justify
> extending the bar date then, in addition, (3) the Debtor's conduct regarding
> the Hingham Property, including his inconsistent position with respect to
> the value of the Property, justifies a post-bar date amendment to the IRS's
> proof of claim.

---

[17] The IRS, in its May 17, 2017 Proof of Claim, set forth a secured claim in the sum of
$3,570,266.62 calculated as follows:

|  |  |
|---|---|
| $1,029,459.29 | = Hingham property net sale proceeds |
| $  240,807.33 | = Milton property net sale proceeds |
| $2,300,000.00 | = mortgage increase after death of decedent |
| $3,570,266.62 | |

The IRS elaborates that cause exists because the estate tax return was only recently filed.

It also asserts that cause exists for an amendment to add a claim for the 2005 estate income

tax as the Debtor did not file a return for that year until 2011 and did not include a

Schedule E for rental income from the Hingham Property as successor beneficiary of the

G.M.S. Realty Trust until it actually transferred the property to him in 2006. The IRS adds:

> In essence, there was no return for the Hingham rental income even though
> the Debtor was the successor trustee of the trust and also the executor of his
> mother's estate who was responsible for reporting the income if he were to
> take the position that it was income off the decedent's estate (which we
> maintain would not be correct anyway and for which the Debtor would be
> liable in any event as a transferee). Additionally, because no Form 1041 income
> tax return was filed for the G.M.S. Realty Trust, that also means that no Form
> K-1 was provided to the IRS that might have triggered an investigation of the
> beneficiary for not reporting the income.

The IRS highlights that the federal tax system is largely self-reporting and that it

lacks the resources to investigate everyone's tax liability, citing Justice v. United States

(In re Justice), 817 F.3d 738, 745 (11th Cir. 2016), *cert. denied,* __ U.S. __, 137 S.Ct. 1375

(2017).[18]   It argues that it lacks the resources to review its records for each EIN to

---

[18] The Eleventh Circuit stated:

> While it is true that accuracy is one of the benefits of self-reporting (so long
> as it is honest), the *primary* rationale of the self-reporting system is that the
> IRS, as a practical matter, does not have the resources to investigate
> everyone's tax liability. Again, a taxpayer who fails to timely self-report and
> instead waits until the IRS has determined his liability defeats the primary
> purpose of self-reporting and self-assessment. Thus a belated return filed
> only after the IRS has produced an SFR [Substitute for Return] and issued
> a notice of deficiency is evidence that the taxpayer did not make a
> reasonable attempt to comply with the tax law.

817 F.3d at 745 (citation omitted).

determine whether a particular tax return was filed, specifically the resources to review each EIN issued to a probate estate to determine whether a Form 706 tax return was filed. It adds the statute of limitations remains open for assessment under 26 U.S.C. § 6501(c)(3).

In that vein, the IRS contends the issuance of an EIN in June of 2005 did not put the IRS on notice that it had an estate tax claim against the Debtor.  The EIN letter was issued to the estate of Georgia Spenlinhauer, provided an EIN number for the probate estate, and advised of a deadline for filing a form 1041 by April 15, 2006.  The IRS notes that it contained no reference to a Form 706, adding

> [A] probate estate which generates income may not necessarily have enough assets which would require the filing of a Form 706 federal estate tax return. Indeed, there are likely many EINs generated for probate estates which generate income but which never reach the assets-threshold filing level to trigger an estate tax. Furthermore, the Form 706 is filed under the decedent's Social Security number, and not the probate estate's EIN.

The IRS points out that the Form 706 estate tax return the Debtor eventually filed was filed using his deceased mother's social security number.

The IRS also points to the significant value ascribed to the Hingham Property in 2006, namely $9,480,000.  Given that value, it contends that the Debtor cannot argue that he was unaware that an estate tax return needed to be filed and his use of inconsistent values should not be countenanced, stating "the notion that the value suddenly rocketed from $3.9 million to $9.5 million in 15 months defies credulity."

The IRS also contends the Debtor's conduct justifies "equitable tolling" of the bar date, citing <u>Young v. United States</u>, 535 U.S. 43, 54 (2002) ("the lookback period of 11 U.S.C. § 507(a)(8)(A)(i) is tolled during the pendency of a prior bankruptcy petition").  It

argues that "[i]n this case, the IRS was disabled from protecting its claim for the estate

tax because the Debtor, as executor, never filed an estate tax return and the IRS could not

find the liability by checking for liabilities under his own Social Security number."

The IRS also contends that factors considered in determining excusable neglect

compel allowing its late claim.  It states that the <u>Pioneer</u> factors, such as "the danger of

prejudice to the debtor, the length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was within the reasonable

control of the movant, and whether the movant acted in good faith" weigh in favor of

allowing a late filed claim.  *See* <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>,

507 U.S. 380, 395 (1993). The IRS, in particular, argues that there is no prejudice to the

Debtor because the claim is nondischargeable under 11 U.S.C. § 523(a)(1)(B)(ii).

## VI. DISCUSSION

A. <u>Summary Judgment Standard</u>

According to the United States Bankruptcy Appellate Panel of the First Circuit in

<u>Raso v. Fahey (In re Fahey)</u>, 482 B.R. 678 (B.A.P. 1st Cir. 2012),

> "In bankruptcy, summary judgment is governed in the first instance by
> Bankruptcy Rule 7056." <u>Desmond v. Varrasso (In re Varrasso)</u>, 37 F.3d 760,
> 762 (1st Cir. 1994); *see also* <u>Soto–Rios v. Banco Popular de Puerto Rico</u>, 662
> F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into
> bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil
> Procedure." <u>In re Varrasso</u>, 37 F.3d at 762 (citations omitted); *see also* <u>Soto–
> Rios v. Banco Popular de Puerto Rico</u>, 662 F.3d at 115; Fed. R. Bankr. P. 7056;
> Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be
> bestowed only when no genuine issue of material fact exists and the movant
> has successfully demonstrated an entitlement to judgment as a matter of
> law." <u>In re Varrasso</u>, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues
> on which the nonmovant has the burden of proof, the movant need do no
> more than aver an absence of evidence to support the nonmoving party's

case." Id. at 763, n.1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." Id. (citations and internal quotations omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In re Fahey, 482 B.R. at 686–87.

Based upon the facts set forth above as set forth in the parties' submissions, the Court concludes that the IRS is entitled to partial summary judgment and the Debtor's Motion for Summary Judgment must be denied as a matter of law.  Even if the Court were to conclude that a dispute of fact exists as to the Debtor's knowledge that he was required to file an estate tax return as executor and beneficiary of his deceased mother's estate, that fact is immaterial.  Any liability that the Debtor may have to the IRS as executor and transferee of the assets of his mother's estate is not dependent upon whether he knew, or did not know, that he had to file an estate tax return.  The Court further notes that for purposes of this decision, determination of the amount of any claim held by the IRS, whether that claim is secured, or whether it is nondischargeable, does not affect whether the Debtor or the IRS is entitled to judgment as a matter of law with respect to their summary judgment motions.

B. Applicable Law

1. Due Process and Debtor's Duties

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections."
Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94
L.Ed. 865 (1950). Courts ask "whether the state acted reasonably in selecting
means likely to inform persons affected, not whether each property owner
actually received notice." Weigner v. City of New York, 852 F.2d 646, 649
(2d Cir. 1988). Notice is adequate if "[t]he means employed [are] such as
one desirous of actually informing the absentee might reasonably adopt to
accomplish it." Mullane, 339 U.S. at 315, 70 S.Ct. 652.

Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135, 158–59 (2d Cir.

2016), *cert. denied*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017).  Thus, notice is "a basic principle

of justice."  City of New York v. New York, N.H & H.R. Co., 344 U.S. 293, 297 (1953).

"[E]ven creditors who have knowledge of a reorganization have a right to assume that

the statutory 'reasonable notice' will be given them before their claims are forever

barred."  Id.  In a Chapter 11 case, notice must be provided to creditors who are required

to file a proof of claim, i.e., those creditors whose claims are "not scheduled or scheduled

as disputed, contingent, or unliquidated."  *See* Fed. R. Bankr. P. 3003(c)(2) and MLBR

Official Local Form 5, Order and Notice Fixing Deadline for Filing Proof of Claim in

Chapter 11 Cases.  The notice provided to them must be adequate to support an order

extinguishing a claim.  Accordingly, in a Chapter 11 case, notice of a proof of claim bar

date should be sent to a known creditor that is a governmental unit at its designated

address.  *See* Fed. R. Bankr. P. 2002(a)(7) and Fed. R. Bankr. P. 5003(e).

Section 521(a)(1) of the Bankruptcy Code requires a debtor to file a "list of

creditors."  11 U.S.C. § 521(a)(1).  As stated above, if a creditor's claim is not scheduled or

is scheduled as disputed, contingent or unliquidated, Rule 3003(c)(2) requires a creditor

in a Chapter 11 case who wishes to be paid from the bankruptcy estate to file a proof of

25

claim before the bar date.  If the creditor fails to file a proof of claim, it "shall not be treated

as a creditor with respect to such claim for the purposes of voting and distribution"

subject to certain exceptions not applicable here.  *See* Fed. R. Bankr. P. 3003(c)(2).[19]

2. Bar Dates and Applicable Law

Courts recognize the importance of bar dates in Chapter 11 cases.

> A bar date order is "an integral step in the reorganization process." In re
> Best Prods. Co., Inc., 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992). It enables "the
> parties in interest to ascertain with reasonable promptness the identity of
> those making claims against the estate and the general amount of the
> claims, a necessary step in achieving the goal of successful reorganization."
> Id. "If individual creditors were permitted to postpone indefinitely the
> effect of a bar order . . . the institutional means of ensuring the sound
> administration of the bankruptcy estate would be undermined." Fidelity
> Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),
> 937 F.2d 833, 840 (2d Cir. 1991).

In re AMR Corp., 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013).  *See also* Grynberg v. U.S. (In

re Grynberg), 986 F.2d 367, 370 (10th Cir. 1993), *cert. denied,* 510 U.S. 812 (1993), *reh'g*

*denied*, 510 U.S. 984 (1993) ("The purpose of this deadline is to 'enable a debtor and his

creditors to know, reasonably promptly, what parties are making claims against the

estate and in what general amounts.'"). "[I]f a creditor is not given reasonable notice of

the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally

---

[19] In In re Shefa, LLC, 524 B.R. 717, 733 (Bankr. E.D. Mich.), *aff'd*, 535 B.R. 165 (E.D. Mich.
2015), *appeal dismissed* (Apr. 15, 2016), the court observed:  "It is well established that
'[m]any rights under the Bankruptcy Code are keyed to 'allowed' claims. . . . For instance,
only holders of allowed claims receive distributions from the bankruptcy estate' and
disallowance means a claim holder is not entitled to receive any distribution." Id.
(quoting Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 920
(B.A.P. 9th Cir. 2009) (although discussing allowance and disallowance in the context of
Chapter 7, the same concepts apply in Chapter 11).

discharged." In re AMR Corp., 492 B.R. at 663 (citing Grant v. U.S. Home Corp. (In re U.S. Home Corp.), 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)).  Thus, in Chapter 11 cases, known creditors must receive proper, adequate notice before their claims can be forever barred. In re AMR Corp., 492 B.R. at 663 (citing Best Prods. Co., Inc., 140 B.R. at 357).  *See also* In re Dartmoor Homes, Inc., 175 B.R. 659, 664 (Bankr. N.D. Ill. 1994) ("If a scheduled creditor does not file a timely proof of claim when it is required to do so, that creditor is in the worst of all worlds: it cannot participate in plan voting, will receive no distributions under the plan, and will have its claim discharged, should the debtor receive a discharge. Fed. R. Bankr. P. 3003(c)(2).").

Actual knowledge of a bankruptcy case does not presume knowledge of a bar date. Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76 (1st Cir. 2008) (citing City of New York, 344 U.S. at 299).  In Arch Wireless, the United States Court of Appeals for the First Circuit recognized that "bankruptcy law distinguishes between 'known creditors,' who are entitled to receive direct notice of each stage in the reorganization proceedings, and 'unknown creditors,' for whom publication notice is sufficient." Id. at 80 (citing City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953), and Chemetron Corp. v. Jones, 72 F.3d 341, 345–46 (3d Cir. 1995), *cert. denied,* 517 U.S. 1137 (1996)).  The First Circuit observed:

> An "unknown creditor" is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also* In re XO Commc'ns, Inc., 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (describing an "unknown creditor" as one whose claims are "merely conceivable, conjectural or speculative" (internal quotation marks

27

omitted)). A "known creditor," by contrast, is one whose claims and identity are actually known or "reasonably ascertainable" by the debtor. Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). A creditor is "reasonably ascertainable" if its claim can be discovered through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). These efforts generally include "a careful search of the debtor's own records." In re Crystal Oil Co., 158 F.3d 291, 297 (5th Cir. 1998). Thus, *"in order for a claim to be reasonably ascertainable, the debtor must have in his possession . . . some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."* Id. On the other hand, there is no requirement that the debtor have information suggesting the financial magnitude of the claim. *See* 11 U.S.C. § 101(5)(A) (defining "claim" to include both liquidated and unliquidated liabilities).

In re Arch Wireless, Inc., 534 F.3d at 80–81 (emphasis supplied).[20]

Contingent claims are not unknown claims.  If a debtor knows of a claim, the claim holder is entitled to adequate notice where the contingency is wholly within the debtor's control, regardless if the claim is concealed.  Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135, 160 (2d Cir. 2016), *cert. denied*, __ U.S. __, 137 S.Ct. 1813 (2017).[21]  In Motors Liquidation, the Second Circuit observed: "[t]o avoid any practical

---

[20] The First Circuit also observed: "The Bankruptcy Rules specify that known creditors must receive: (1) notice of deadlines for filing proofs of claims (bar date), Fed. R. Bankr. 2002(a)(7); (2) a copy of the reorganization plan, Fed. R. Bankr. 3017(d); (3) notice of the confirmation hearing, Fed. R. Bankr. 3017(d); and (5) [sic] the confirmation order, Fed. R. Bankr. 2002(f)." In re Arch Wireless, Inc., 534 F.3d at 82.  The Debtor's initial Chapter 11 Plan of Reorganization, whose implementation was predicated upon the sale of property, including the Hingham Property, provided that "[a]ny allowed, priority, pre-Filing Date claims due to the D.O.R., and the I.R.S., for unpaid priority taxes will be paid in full from the net proceeds of the sale of the Hingham Real Estate."  The Debtor served the Plan on the IRS at "SPS JFK Bldg., PO Box 9112, Stop 20800, Boston MA 02203."

[21] In Motors Liquidation, the Second Circuit noted that "Old GM" knew that an ignition switch defect existed and impacted consumers.  Indeed, the ignition switch never passed its own technical specifications. Although it knew that the switch was defective, it approved the switch for millions of cars anyway.  829 F.3d at 159.  An issue in the Motors

and constitutional problems, courts require some minimum "contact," or "relationship,"

that makes identifiable the individual with whom the claim does or would rest." Id. at

156.

A request for a bar date is not a contested matter. *See* In re GST Telecom, Inc., No.

00-1082 GMS, 2002 WL 1737445, at *5 (D. Del. July 29, 2002).[22]  Accordingly, the plain

language of Rule 2002(f)(3) applies.  It provides:  "Except as provided in subdivision (l)

of this rule, the clerk, or some other person as the court may direct, shall give the debtor,

all creditors, and indenture trustees notice by mail of: . . . (3) the time allowed for filing

claims pursuant to Rule 3002."[23]  Fed. R. Bankr. P. 2002(f)(3).  Rule 2002(g)(1) provides:

"Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity

security holder shall be addressed as such entity or an authorized agent has directed in

its last request filed in the particular case."  Fed. R. Bankr. P. 2002(g)(1).  Rule 2002(g)(2)

provides:  "Except as provided in § 342(f) of the Code, if a creditor or indenture trustee

has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule

---

Liquidation case was whether the plaintiffs, who had vehicles with switch defects and
who received notice by publication, received adequate notice and were entitled to more
notice than what had been provided.  The Second Circuit rejected the position of "New
GM" that direct mail notice was not required because such contingent claims were
"unknown" and notice by publication was sufficient.  Id. at 160.

[22] Were the request for a bar date considered to be a contested matter, different service
requirements would have to be satisfied.  *See generally* United States v. Lauglin, 210 B.R.
659 (B.A.P. 1st Cir. 1997)(discussing service requirements under Rules 9014 and 7004(b)).

[23] Rule 3002(a) provides:  "**(a) Necessity for Filing.** An unsecured creditor or an equity
security holder must file a proof of claim or interest for the claim or interest to be allowed,
except as provided in Rules 1019(3), 3003, 3004, and 3005."  Fed. R. Bankr. P. 3002(a).

5003(e), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later." Fed. R. Bankr. P. 2002(g)(2). Rule 5003(e), captioned "Register of mailing addresses of federal and state governmental units and certain taxing authorities," provides:

> The United States or the state or territory in which the court is located may file a statement designating its mailing address. The United States, state, territory, or local governmental unit responsible for collecting taxes within the district in which the case is pending may also file a statement designating an address for service of requests under § 505(b) of the Code, and the designation shall describe where further information concerning additional requirements for filing such requests may be found. The clerk shall keep, in the form and manner as the Director of the Administrative Office of the United States Courts may prescribe, a register that includes the mailing addresses designated under the first sentence of this subdivision, and a separate register of the addresses designated for the service of requests under § 505(b) of the Code. The clerk is not required to include in any single register more than one mailing address for each department, agency, or instrumentality of the United States or the state or territory. If more than one address for a department, agency, or instrumentality is included in the register, the clerk shall also include information that would enable a user of the register to determine the circumstances when each address is applicable, and mailing notice to only one applicable address is sufficient to provide effective notice. The clerk shall update the register annually, effective January 2 of each year. The mailing address in the register is conclusively presumed to be a proper address for the governmental unit, but the failure to use that mailing address does not invalidate any notice that is otherwise effective under applicable law.

Fed. R. Bankr. P. 5003(e). Moreover, Fed. R. Bankr. P. 2002(j) governs notices to the United States. It provides that notice "in a chapter 11 case, [should be sent] to the Internal Revenue Service at its address set out in the register maintained under Rule 5003(e) for the district in which the case is pending."

Massachusetts Local Bankruptcy Rule 2002-2, captioned "Notices to the United States of America and the Commonwealth of Massachusetts," provides guidance.

30

Specifically, it provides: "The addresses for service upon federal and state governmental agencies are set forth in MLBR Appendix 4."

This Court maintains a Roster of Government Units and Tax Liability Address, which is available on the Court's website.   It contains a "list of addresses for governmental units who receive notice as well as those units responsible for the collection of taxes within the District of Massachusetts pursuant to 11 U.S.C. § 505(b) and Federal Bankruptcy Rule 5003(e)."  The address listed for the Internal Revenue Service is "P.O. Box 7346, Philadelphia, PA 19101-7346."  This and other addresses are set forth in MLBR Appendix 4.  As noted above, the Debtor used only the following address for sending notices to the IRS:

> Internal Revenue Service
> JFK Federal Building
> 15 New Sudbury Street
> Boston, MA 02203-0292

According to the court in In re The Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997),

> [I]nadequate notice of the claims bar date is a defect which precludes discharge of a claim in bankruptcy. *See* Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995). A claimant, who is not apprised with reasonable notice of the bar date, is not bound by the legal effects of the confirmation of the plan and should be allowed to file a late proof of claim. *See* Greyhound Lines, Inc. v. Rogers (Eagle Bus. Mfg., Inc.), 62 F.3d 730, 735 (5th Cir. 1995); Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.), 863 F.2d 832, 834–35 (11th Cir.1989). *See also* Atlantic Richfield Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 110 B.R. 205, 207–08 (Bankr.W.D.Pa.1990) (holding that courts have traditionally allowed creditors to file late proofs of claims notwithstanding their failure to timely file the claims where they were not provided with reasonable notice of bar date).

Whether a creditor received adequate notice of a bar date "depends upon the facts and circumstances of a given case." *See* Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.), 863 F.2d 393, 396 (5th Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). In general, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In other words, the notice must be such that it would reasonably inform the interested parties that the matter is pending and would reasonably allow the parties to "choose for [themselves] whether to appear or default, acquiesce or contest." *See* Mullane, 339 U.S. at 314, 70 S.Ct. at 657.

In re The Grand Union Co., 204 B.R. at 871 (footnote omitted).

### 3. Law Applicable to Extensions of the Bar Date

The IRS relies upon Fed. R. Bankr. P. 3003(c)(3), applicable in Chapter 11 cases, which provides: "The court shall fix and *for cause* shown may extend the time within which proofs of claim or interest may be filed." (emphasis supplied). It also references Bankruptcy Rule 9006(b), which subject to certain exceptions not relevant here, provides:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect*.

Fed. R. Bankr. P. 9006(b) (emphasis supplied). The law is unclear whether the "for cause" standard set forth in Rule 3003(c)(3) is limited to instances of excusable neglect. For example in Agribank v. Green, 188 B.R. 982 (C.D. Ill. 1995), the court stated:

In Pioneer, the Supreme Court explicitly held that "Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter 11

bankruptcies." 507 U.S. at __, 113 S.Ct. at 1495 n.4. The Supreme Court
reasoned that Rule 9006(b) expressly excepts Chapter 7 cases from the
"excusable neglect" standard; however, it makes no such exception for
cases falling under Rule 3003(c). Thus, those cases must be subject to the
"excusable neglect" standard.  Id. In other words, the Supreme Court found
that "excusable neglect" in Rule 9006(b)(1) defines the "for cause shown"
language in Rule 3003(c)(3).

Agribank v. Green, 188 B.R. at 986.[24] *Contra* Alan N. Resnick and Henry J. Sommer, eds.,

*Collier on Bankruptcy* ¶ 3003.03[4][b] , at 3003-11 (16th ed. 2016)  (In Pioneer, 507 U.S. at

395, the Supreme Court "adopted the excusable neglect standard without considering

whether Rule 3003(c)(3) provides for a test different from Rule 9006(b).").   As a

consequence of the lack of clarity, courts frequently equate "cause" and "excusable

neglect." In re O'Shaughnessy, 252 B.R. 722, 731 (Bankr. N.D. Ill. 2000) ("The meaning of

'cause' in Bankruptcy Rule 3003(c)(3) is elaborated in Bankruptcy Rule 9006(b)(1)."). *See*

---

[24] In Pioneer, the Supreme Court observed:

> The time-computation and time-extension provisions of Rule 9006, like
> those of Federal Rule of Civil Procedure 6, are generally applicable to any
> time requirement found elsewhere in the rules unless expressly excepted.
> Subsections (b)(2) and (b)(3) of Rule 9006 enumerate those time
> requirements excluded from the operation of the "excusable neglect"
> standard. One of the time requirements listed as excepted in Rule 9006(b)(3)
> is that governing the filing of proofs of claim in Chapter 7 cases. Such filings
> are governed exclusively by Rule 3002(c). *See* Rule 9006(b)(3); In re Coastal
> Alaska Lines, Inc., 920 F.2d 1428, 1432 (CA9 1990). By contrast, Rule 9006(b)
> does not make a similar exception for Rule 3003(c), which, as noted earlier,
> establishes the time requirements for proofs of claim in Chapter 11 cases.
> Consequently, Rule 9006(b)(1) must be construed to govern the
> permissibility of late filings in Chapter 11 bankruptcies. *See* Advisory
> Committee's Note accompanying Rule 9006(b)(1).

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 389, 113 S. Ct. at 1495
n.4. Notably, Rule 3002(c) governs the time for filing proofs of claim in Chapter 7, 12 and
13 cases only.

*also* <u>Omni Mfg., Inc. v. Smith (In re Smith)</u>, 21 F.3d 660 (5th Cir. 1994) (intimating that the

for cause standard applies to requests for extensions before the expiration of the bar date

and the excusable neglect standard applies to claims filed after the deadline and stating:

"Rule 3003(c)(3), read together with Rule 9006(b)(1), asks first whether the request for

enlargement of time was made before the deadline expired.").

> In <u>Pioneer</u>, the Supreme Court prefaced its decision by observing:

> First, the Rule grants a reprieve to out-of-time filings that were delayed by
> "neglect." The ordinary meaning of "neglect" is "to give little attention or
> respect" to a matter, or, closer to the point for our purposes, "to leave
> undone or unattended to *esp[ecially] through carelessness.*" Webster's  Ninth
> New Collegiate Dictionary 791 (1983) (emphasis added). The word
> therefore encompasses both simple, faultless omissions to act and, more
> commonly, omissions caused by carelessness. Courts properly assume,
> absent sufficient indication to the contrary, that Congress intends the words
> in its enactments to carry "their ordinary, contemporary, common
> meaning." <u>Perrin v. United States</u>, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62
> L.Ed.2d 199 (1979). Hence, by empowering the courts to accept late filings
> "where the failure to act was the result of excusable neglect," Rule
> 9006(b)(1), Congress plainly contemplated that the courts would be
> permitted, where appropriate, to accept late filings caused by inadvertence,
> mistake, or carelessness, as well as by intervening circumstances beyond
> the party's control.

<u>Pioneer</u>, 507 U.S. at 388, 113 S. Ct. at 1494–95.  The Supreme Court affirmed the Sixth

Circuit's decision reversing the lower court's disallowance of a late filed claim  The claim

at issue was filed twenty days after the bar date imposed by the bankruptcy court.  The

Supreme Court recognized that the notice of the bar date consisted of a single,

"inconspicuous" sentence in a document entitled "Notice for Meeting of Creditors." <u>Id.</u>

at 386, 398, 113 S.Ct. at 1494.  The Court emphasized the ambiguity in the notification,"

<u>id.</u> at 398, 113 S.Ct. at 1500 and observed that it "consider[ed] significant that the notice

of the bar date . . . was outside the ordinary course in bankruptcy cases," in which

"ordinarily the bar date . . . should be prominently announced and accompanied by an

explanation of its significance." Id. at 398, 113 S.Ct. at 1499-1500.

The Supreme Court, while noting the "determination is at bottom an equitable

one, taking account of all relevant circumstances surrounding the party's omission," 507

U.S. at 396, 113 S.Ct. at 1498, adopted a balancing test for determining whether excusable

neglect exists under Rule 9006(b).  Pertinent factors, as the IRS recognized, are: (1) the

danger of prejudice to the debtor; (2) the length of delay and its potential impact on

judicial proceedings; (3) the reason for the delay, including whether it was within the

reasonable control of the movant; and (4) whether the claimant's conduct was in good

faith.  *See* In re Gordian Med., Inc., 499 B.R. 793, 798 (Bankr. C.D. Ca. 2013) (citing ZiLOG,

Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1003 (9th Cir. 2006); Forward Progress

Mgmt. Real Estate, Inc. v. The Yucca Group, LLC (In re The Yucca Group, LLC), 2012 WL

2086485 (B.A.P. 9th Cir. June 8, 2012)).  No single circumstance in isolation compels a

particular result regardless of the other factors.  In re Gordian Med., Inc., 499 B.R. at 797–

98 (citing Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 n.2 (9th Cir. 1997)).

In Pioneer, the Court gave "little weight," 507 U.S. at 398, 113 S.Ct. at 1489, to the

the late-claimants' attorney's excuse that he was "unaware" of the bar date because he

had left his former law firm and lacked access to necessary files.  Id. at 384, 113 S.Ct. 1489.

The Court, however, emphasized that "were there any evidence of prejudice to [the

debtor] or to judicial administration in this case, or any indication at all of bad faith," it

35

would be unable to rule that the bankruptcy court abused its discretion in refusing to find

excusable neglect. Id. at 398, 113 S.Ct. 1489.

Some courts suggest that prejudice to the debtor is the most important factor in

determining the existence of excusable neglect. *See* In re Papp Int'l, Inc., 189 B.R. 939, 944

(Bankr. D. Neb. 1995).  While noting that the Supreme Court in Pioneer provided little

guidance to the determination of "what prejudice actually is," the United States Court of

Appeals for the Third Circuit observed that "the determination of prejudice involved 'a

certain amount of crystal ball gazing.'"  In re O'Brien Envtl. Energy, Inc., 188 F.3d 116,

126 (3d Cir. 1999) (citing In re Keene Corp., 188 B.R. 903, 912–13 (Bankr. S.D.N.Y. 1995)).

It listed several factors to consider such as

> the size of the claim with respect to the rest of the estate; whether allowing
> the late claim would have an adverse impact on the judicial administration
> of the case; whether the plan was filed or confirmed with knowledge of the
> existence of the claim; the disruptive effect that the late filing would have
> on the plan or upon the economic model upon which the plan was based;
> and whether allowing the claim would open the floodgates to other similar
> claims.

188 F.3d at 126.

In  In re Papp Int'l, Inc., the court determined that "[t]he length of time after the

bar date that a creditor files a proof of claim is not determinative of excusable neglect, but

such tardiness must be considered in the context of the other Pioneer factors."  189 B.R.

at 946.  The Court added:  "the length of the delay is significant, but only if it impacts the

case, was intentional or was in bad faith can it be the factor that tips the balance against

a finding of excusable neglect."  Id.

36

The Supreme Court in <u>Pioneer</u> determined that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," 507 U.S. at 392, 113 S.Ct. 1496, although it recognized that excusable neglect is "a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." <u>Id.</u> (footnotes omitted). In sum, "[e]xcusable neglect is at least "the failure to timely perform a duty due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." <u>Smith v. Southside Cafe</u>, No. 09-4673A3, 2010 WL 1037978, at *2 (E.D. La. Mar. 18, 2010) (citing <u>In re Smith</u>, 21 F.3d at 666).

C. <u>Analysis</u>

The controversy between the Debtor and the IRS is unique in that the taxing authority held two types of claims against the Debtor: priority and general unsecured claims for his unpaid income taxes and claims arising out of his failure, as executor of his deceased mother's estate, to file either an estate tax return (Form 706) or an income tax return for the estate (Form 1041) and to pay estate tax obligations. The Debtor listed the IRS as the holder of priority and unsecured claims relating to his *personal* income taxes, but did not list the IRS as the holder of a contingent, unliquidated or disputed claim with respect to any estate taxes owed. Accordingly, the IRS can be viewed as being in the position of being both a "known" and an "unknown" creditor, if the Debtor's Affidavit is accepted at face value with respect to the estate tax claims. The issue in this case is whether, with respect to the estate tax claims, the IRS received:

Notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Mullane, 339 U.S. at 314, 70 S.Ct. 652 (citations omitted).  In other words, did the IRS receive effective notice of the estate tax claims when it did not receive the notice at the address which is conclusively presumed to be a proper address, *see* Fed. R. Bankr. P. 5003(e), and only received notice at an address in Massachusetts?

There can be no dispute that the IRS received notice of the Bar Date in this case with respect to income tax claims against the Debtor because it timely filed a proof of claim on February 3, 2014, which it later amended on May 16, 2014.  Both of those proofs of claim contain an address where notices should be sent, namely "P.O. Box 7346, Philadelphia, PA 19101-7346," the same address mandated by MLBR 2002-2 and appearing in MLBR Appendix 4 and on the Rule 5003(e) Roster.

Although the IRS was aware of the proof of claim Bar Date, there also can be no dispute that the Debtor did not serve the IRS with notice of the Bar Date at the address listed set forth in MLBR Appendix 4, the address set forth on the Roster maintained by this Court, the address for notices set forth on its proofs of claim, or the address employed by the IRS when it issued an EIN number to the estate of Georgia Spenlinhauer. Moreover, on his schedules of liabilities, the Debtor, as noted, did not list the IRS as the holder of a contingent claim against him in his capacity as executor and beneficiary of his mother's estate, did not identify a debt for any estate tax claims, and did not include either her social security number or the EIN number anywhere in his petition.

38

As noted by Irick, an IRS Director in the Small Business/Self-Employed Division, if the Debtor were to have filed a Form 706, he would have had to have used his deceased mother's social security number. Similarly, if the Debtor were to have filed a Form 1041 for income earned by the decedent's estate, he would have had to use the EIN number issued to her estate by the IRS. The Debtor did not disclose any of that information until well after the Bar Date when the Debtor's potential liability for estate tax claims became germane to the conversion of his Chapter 11 case to a case under Chapter 7. In view of the IRS's policy not to routinely investigate whether there is a requirement to file either a Form 706 or Form 1041, as well as its reliance upon the personal representative of the decedent's estate to file statutorily required returns, this Court concludes that the IRS would have had inadequate notice and no reason to investigate the Debtor's potential liability as a transferee and beneficiary of his mother's estate when he filed his bankruptcy petition on December 16, 2013, over eight years after Georgia Spenlinhauer passed away, listing only his liabilities for his personal income taxes and serving the IRS only in Massachusetts. *See* Justice v. United States (In re Justice), 817 F.3d 738, 745 (11th Cir. 2016), *cert. denied*, __ U.S. __, 137 S.Ct. 1375 (2017) ("the IRS, as a practical matter, does not have the resources to investigate everyone's tax liability"). Indeed, the failure to timely file a proof of claim for estate taxes unquestionably would appear to be "due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." *See* Smith v. Southside Cafe, No. 09-4673A3, 2010 WL 1037978, at *2 (E.D. La. Mar. 18, 2010).

When this Court weighs the factors enunciated by the Supreme Court in Pioneer, namely 1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the claimant's conduct was in good faith, the Court concludes that those factors weigh heavily in favor of the IRS and the undisputed material facts establish excusable neglect.

In the first place, any prejudice to the Debtor is the result of his own conduct in failing to identify the estate tax claims and to properly serve the IRS. Moreover, there is no prejudice to the Debtor if the debt for estate taxes is determined to be nondischargeable under 11 U.S.C. § 523(a)(1)(B), because that circumstance is independent of the filing of a proof of claim. *See* Grynberg v. U.S. (In re Grynberg), 986 F.2d 367 (10th Cir. 1993), *cert. denied,* 510 U.S. 812 (1993), *reh'g denied,* 510 U.S. 984 (1993) (in absence of the filing of a proof of claim, the bar order did not preclude IRS from collecting nondischargeable gift taxes outside bankruptcy after confirmation of plan). The Court finds the Debtor's attempts to distinguish Grynberg are unpersuasive, particularly where in that case the IRS had notice of the existence of estate tax claims at the commencement of the case in time to file a timely proof of claim. In addition, because the Debtor contends that he was not required to file an estate tax return and that when he did so no tax was owed, if his position is correct and he prevails, he will not be prejudiced by the filing of the proof of claim by the IRS. Although the IRS did not file a proof of claim with respect to the Debtor's liability as a transferee of his mother's estate before the claims Bar Date, it promptly filed a proof of claim on March 15, 2017 shortly

after the Debtor filed a Form 706 on or around February 8, 2017.  The reason for the IRS's

delay in filing a proof of claim rests squarely on the Debtor.  He maintains that he was

unaware that an estate tax return had to be filed.  Having failed to file an estate tax return,

despite knowledge of a May 16, 2006 appraisal of the Hingham Property in excess of $9

million, and an unsigned Form 1041, i.e., a U.S. Income Tax Return for Estates and Trusts,

and, most importantly, his accountant's procurement of an extension to file an estate tax

return with the MDOR, the Debtor did not file an estate tax return until February 8, 2017

as a result of work performed by the accounting firm engaged by the Chapter 11 Trustee.

*See* In re Motors Liquidation Co., 829 F.3d at 160.  Finally, the Court concludes that the

record is devoid of any bad faith on the part of the IRS.   The Debtor submitted no

evidence to rebut Irick's declaration that the IRS relies upon self-reporting by an executor

and does not routinely investigate whether there is a requirement to file Forms 706 and

1041.

The Debtor simply cannot have it both ways.  He cannot have this Court treat the

IRS as a "known" creditor for purposes of disallowing its claim against him in his

capacity as executor for failing to timely file a proof of claim, while persisting in the view

that the IRS was an "unknown" creditor to him with respect to his liability as executor,

thus excusing his failure to identify the IRS as, at the very least, a contingent, disputed or

unliquidated creditor with respect to a potential estate tax claim.   In other words, the

decision does not in reality turn on whether the IRS was a known or an unknown creditor,

it turns on whether the Debtor adequately informed the IRS that it might hold a claim

against him in his capacity as executor and beneficiary and served the IRS with adequate

notice with respect to the estate tax claim, notice which might well have required notice of his late mother's social security number or the EIN number he requested.   In this regard, the Debtor had the duty to identify the IRS as the holder of a contingent claim for estate taxes as he had sufficient "contact" with the IRS to make its estate tax claim known to him, such that he was required to give it effective notice.  *See* Motors Liquidation, 829 F.3d at 156.

The Court reiterates its conclusion that the IRS has established that its failure to timely file a proof of claim for estate tax obligations was the result of excusable neglect and cause exists for an extension of the Bar Date for its estate tax claims.  The Debtor, who had ample notice that the property he was inheriting from his mother might well be subject to inheritance taxation, takes the position that the IRS was sufficiently apprised of his potential liability owing to his service of the Bar Date on SPS JFK Bldg., P.O. Box 9112, Stop 20800, Boston MA 02203, as well as his request for an EIN number, and, according to Erb, the *possible* filing of an application for an extension of time to file an estate tax return because such an application was filed with the Massachusetts Department of Revenue.  The Court concludes that the Debtor's reliance upon service on the IRS at the JFK Building and upon the issuance of an EIN number fall far short of providing "notice reasonably calculated, under all the circumstances," to apprise the IRS that it had a claim arising out of the transfer of the Hingham Property and other property following the death of his mother.  Under those circumstances, the IRS has shown ample cause under Rule 3003(c)(3) for extension of the Bar Date as to its estate tax claim, whether cause is viewed independently or as equivalent to excusable neglect.

Not only did the IRS receive inadequate notice under applicable bankruptcy procedural rules, the information the Debtor asserts should have alerted it to the need to file a proof of claim for estate taxes was information that he controlled and possessed that should have alerted him to the need to list the IRS as a contingent, unliquidated and disputed creditor with respect to the estate tax claims.  Given the significant period of time between when the estate tax return should have been filed and the commencement of the Debtor's bankruptcy case, and the policy of self-reporting established by the IRS through Irick, this Court concludes that it is both unreasonable and unwarranted for the Debtor to expect the IRS to undertake an investigation into a potential claim for estate taxes where the Debtor's petition contained no information whatsoever that would have alerted it of the existence of the claim, and the Debtor failed to provide it with the service contemplated by the bankruptcy rules.

Although the IRS did not specifically raise an equitable estoppel argument, it did reference equitable tolling.  Massachusetts and other courts apply equitable estoppel citing notions of fair dealing and good faith. *See* <u>Daly v. Testo (In re Carrozzella)</u>, 267 B.R. 656, 661 (Bankr. D. Conn. 2001) ("The doctrine of estoppel is based on equitable notions of fair dealing, good faith and justice. Its purpose and effect is 'to forbid one to speak against his own act, representation, or commitment to the injury of one to whom they were directed and who reasonably relied thereon.'" 28 Am.Jur.2d, *Estoppel and Waiver* § 28 (1966).").

> [E]stoppel is employed to prevent the inequitable assertion of rights which would otherwise exist to the detriment of an opposing party who has been misled. <u>In re Colarusso</u>, 295 B.R. 166, 177 (1st Cir. BAP 2003), citing to

43

Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 591
N.E.2d 157 (1992); In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2nd Cir.
1996); Nassau Trust Co. v. Montrose Concrete Products, 56 N.Y.2d 175, 451
N.Y.S.2d 663, 436 N.E.2d 1265 (1982). Estoppel requires that the Court find
existence of: 1) a representation or conduct amounting to a representation
intended to induce a course of conduct on the part of the person to whom
the representation is made; 2) an act or omission resulting from the
representation, whether actual or by conduct, by the person to whom
the representation is made; and 3) detriment to such person as a consequence
of the act or omission. In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003),
citing to Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531,
591 N.E.2d 157 (1992) (quoting Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722,
320 N.E.2d 919 (1974)); see also Falcone v. Pierce, 864 F.2d 226, 228 (1st
Cir.1988); Dunkin' Donuts, Inc. v. Panagakos, 5 F.Supp.2d 57 (D. Mass.
1998). "Conduct" may include spoken words, written words, positive acts,
silence, and negative omissions to do something. Id. To find estoppel, there
need not be an actual intent to defraud or mislead. The estopped party need
only have intended or expected that another would act based upon his
representations. In re DeArakie, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996).

In re Collier, 307 B.R. 20, 27-28. See also Penny v. Giuffrida, 897 F.2d 1543, 1545–46 (10th

Cir. 1990).[25]  In this case, while the Debtor may have been unaware of the need to file an

---

[25] The Tenth Circuit observed:

Historically, equitable estoppel has been used to prevent a party from
taking a legal position inconsistent with an earlier statement or action that
places his adversary at a disadvantage. See W. Keeton, D. Dobbs, R. Keeton
& D. Owen, Prosser and Keeton on the Law of Torts § 105, at 733 (5th ed. 1984).
The purpose of the doctrine of equitable estoppel is to ensure that no one
will be permitted to "take advantage of his own wrong." R.H. Stearns Co.
v. United States, 291 U.S. 54, 62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). In
private suits, the traditional elements of equitable estoppel are: (1) the party
to be estopped must know the facts; (2) the party to be estopped must
intend that his conduct will be acted upon or must so act that the party
asserting the estoppel has the right to believe that it was so intended; (3) the
party asserting the estoppel must be ignorant of the true facts; and (4) the
party asserting the estoppel must rely on the other party's  conduct to his
injury. Che–Li Shen v. INS, 749 F.2d 1469, 1473 (10th Cir. 1984).

estate tax return and/or an income tax return for his mother's estate, he knew that he
inherited the Hingham Property, as well as other property, from his mother and he knew
of the potential need to file an estate tax return as Erb filed an Application for Extension
of Time to file such a return with the Commonwealth of Massachusetts.  The Debtor
sought and obtained an EIN number and he depreciated the Hingham Property over
several years.  All that information was in his possession and is the same information that
the Debtor contends the IRS should have discovered to ascertain whether it had a claim
for estate taxes following service at a single address in Boston, Massachusetts.  One can
only ask:  If the information in the Debtor's possession did not alert him of the need to
list the IRS as the holder of a potential claim for estate taxes, why should the IRS have
been alerted of the need to file a proof of claim?  When the Debtor filed his schedules of
liabilities, omitting any reference to estate tax claims, he did so under penalty of perjury
intending creditors to rely upon their truth and accuracy.  He failed to list the IRS as the
holder of a claim with respect to the estate taxes but, nevertheless, argues that it should
have been aware of all the facts that he possessed but did not disclose.  The Debtor's
position presumes that the IRS would have undertaken a search of its data base for all
potential claims of taxpayers with the last name "Spenlinhauer," owing to the absence of
information such as W-2s, 1099s and other periodic returns which typically trigger
investigation, for a period of time well before the commencement of his case, in addition
to using his social security number to ascertain its claims against him for his *personal*

---

<u>Penny v. Giuffrida</u>, 897 F.2d 1543, 1545–46 (10th Cir. 1990).

income taxes.   The IRS did not file a proof of claim for the estate taxes until such time as the Debtor filed a Form 706 with the IRS.   Under all those circumstances, the IRS established cause for an extension as well as excusable neglect.   The Debtor is equitably estopped from contending otherwise. *See* <u>In re Collier</u>, 307 B.R. at 27-28.

## VII. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Debtor's Motion for Summary Judgment as he failed to establish entitlement to judgment as a matter of law, and granting the Cross-Motion for Partial Summary Judgment and the Motion to Permit Late Filed Tax Claim filed by the United States.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  September 8, 2017