## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT J. SPENLINHAUER,**                    Chapter 11
    Debtor                                    Case No. 13-17191-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Motion by Movant for Summary Judgment Relative to Estate Tax Claim of the Massachusetts Department of Revenue" (the "MDOR") through which Robert J. Spenlinhauer (the "Debtor") seeks an order granting summary judgment in his favor and finding that the proof of claim bar date (the "Bar Date") of May 2, 2014 prevents the filling by the MDOR of an amended or a new proof of claim asserting an estate tax claim.   In conjunction with his Motion for Summary Judgment, the Debtor filed a Concise Statement of Material Facts, an Affidavit, and a "Memorandum of Law in Support of Motion for Summary Judgment Regarding the Objection of Debtor to Estate Tax Portion of Claim Number 31 Filed by the Massachusetts Department of Revenue."[1]

---

[1] As will be discussed in more detail below, the MDOR filed Claim No. 5 on January 16, 2014, which it amended on June 25, 2014, and Claim No. 31 on March 20, 2017.  The Debtor filed an Objection to Claim Number 31 on March 22, 2017 in which he objected to the MDOR's claim for an estate tax liability in the sum of $2,154,955.65 because 1) it "is barred by the proof of claim bar date," 2) the Debtor does not believe an estate tax is due, and 3) "any personal assessment against the Debtor, individually, cannot be made until there

The MDOR filed a Response in Opposition to the Motion for Summary Judgment which included a "Response to Movant's Statement of Material Facts, Counter-Statement of Material Facts Not in Dispute, and Statement of Contested Fact [sic]," and a "Report by Attorney Regarding Registry of Deeds On-Line Search," together with the Affidavit of Kendra Ye and a Memorandum in Opposition to the Motion for Summary Judgment.

The Court heard the matter on June 13, 2017 and ordered the filing of further submissions.  On June 27, 2017, the MDOR filed a Response to Questions Raised by Court at Hearing on June 13, 2017.  The Debtor, in turn, filed a Response to the MDOR's Response.

The issue presented is whether the MDOR had adequate notice that it had a claim against the Debtor in his capacity as executor and beneficiary of his deceased mother's estate in addition to its claim for income taxes owed by the Debtor, and, if not, whether it demonstrated "cause," *see* Fed. R. Bankr. P. 3003(c)(3), or excusable neglect, *see* Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993), warranting an extension of the Bar Date for filing a proof of claim for the Debtor's personal liability as a transferee of the estate of Georgia Spenlinhauer for the estate's tax liability, or, alternatively, whether the Debtor is estopped under the circumstances of the case from claiming the benefit of the Bar Date.  For the reasons set forth below, the Court finds that the MDOR has sustained its burden of establishing both cause and excusable neglect

---

has been a final determination in the Administrative [sic] process against the Estate of Georgia Spenlinhauer."

warranting an extension of the Bar Date for claims relating to Georgia Spenlinhauer's estate.

## II. BACKGROUND

The Debtor filed a Chapter 11 petition on December 16, 2013.[2] The Bankruptcy Noticing Center, on December 21, 2013, sent a copy of the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines to the following: "MASS DEPT [sic] OF REVENUE, BANKRUPTCY UNIT, PO BOX 9564, Boston, MA 02114-9564."  The meeting of creditors did not take place as initially scheduled.  The Debtor, through counsel, on December 31, 2013, sent a Notice of Reschedule 341 Meeting of Creditors to the Internal Revenue Service (the "IRS") and other creditors but did not serve the MDOR.

On January 10, 2014, the Debtor filed, among other things, his schedules of assets and liabilities and Statement of Financial Affairs.  He did not list the MDOR as the holder of a claim.  On February 14, 2014, the Debtor filed amended Schedules A, B, C, D, E, and F and an Amended Statement of Financial Affairs.  On amended Schedule E-Creditors Holding Unsecured Priority Claims, the Debtor listed the MDOR as the holder of a priority claim for "state taxes" in the sum of $48,718.97, and, on amended Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed the MDOR as the holder of a claim for "interest and penalties" in the sum of $65,493.51.   On April 11, 2014, the Debtor filed an amended Schedule E listing the MDOR as the holder of priority claims

---

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

for 2011 income taxes in the sum of $9,940.00 and for 2012 income taxes in the sum of $6,169.00, as well as the claim for "state taxes" in the sum of $48,718.97.

The MDOR filed a timely proof of claim on January 16, 2014 for the Debtor's personal income taxes in the total sum of $114,212.48, asserting that $48,718.97 was entitled to priority under 11 U.S.C. § 507(a)(8) and that $65,493.41 was a general unsecured claim. It amended that claim on June 25, 2014 setting forth a claim in the total sum of $82,706.34, asserting that $23,699.61 was entitled to priority under 11 U.S.C. § 507(a)(8) and the balance was a general unsecured claim. Over three years later, on March 20, 2017, Kendra Ye, a "Tax Examiner II" with the MDOR's Bankruptcy Unit, filed, on behalf of the MDOR, a proof of claim in the sum of $2,154,955.65 for unpaid estate taxes owed by the estate of Georgia Spenlinhauer, for which the Debtor was the executor. The MDOR asserted a secured claim pursuant to Mass. Gen. Laws ch. 62C, § 50 in real estate, motor vehicles and "[a]ll property and rights to property" for the full amount of its claim, which it described as relating to an estate tax for the period of "02/04/2005." According to the MDOR, the tax was assessed on March 17, 2017. It indicated that the amount of the tax was $963,031.75, interest totaled $710,408.03, and penalties totaled $481,515.87.[3]

The MDOR's filing of the proof of claim on March 20, 2017 was triggered by the sale of property in Hingham, Massachusetts which the Debtor inherited from his mother,

---

[3] The Debtor attached to his Memorandum, two notices he received from the MDOR, one dated March 15, 2017 and the other dated March 17, 2017. The first notice was captioned "Notice of No Filing Requirement." The second notice was captioned "Notice of Assessment" and related to the Debtor's failure to file an estate tax return. The second notice set forth an estate tax owed of $963,031.75, penalties of $240,757.94, and interest of $1,013,088.21 for a current balance of $2,216,877.90.

Georgia Spenlinhauer, in 2005.  Approximately 20 months after the Debtor commenced his Chapter 11 case, on September 3, 2015, the Court entered an order authorizing the Debtor to sell real property located at 90-90A Industrial Park Road in Hingham, Massachusetts ("the Hingham Property").  On September 14, 2015, the sale of the Hingham Property closed, generating, according to the Debtor in a Status Report filed on September 17, 2015, net proceeds of $1,029,459.29 for the bankruptcy estate.

On December 8, 2015, the United States Trustee filed a Motion to Convert Debtor's Chapter 11 Case to Chapter 7, or, in the Alternative, to Appoint a Chapter 11 Trustee asserting numerous grounds, including the Debtor's failure to timely file his federal and state tax returns.  On December 15, 2015, this Court granted the United States Trustee's alternative Motion to Appoint a Chapter 11 Trustee in lieu of converting the Debtor's Chapter 11 case to a case under Chapter 7 and subsequently entered an order authorizing the appointment of Lynne F. Riley as Chapter 11 Trustee (the "Trustee") in this case.  Four months after her appointment, on April 12, 2016, the Trustee filed a Motion to Convert Case to Chapter 7.[4]

---

[4] In her Motion, the Trustee asserted, *Inter alia,* the following:

> The estate faces significant tax liability resulting from the Debtor's disposition of assets during these Chapter 11 proceedings. The Debtor belatedly filed income tax returns for 2013 and 2014, but the analysis of these returns by the Trustee and her accountant reveals that these returns and his 2012 return miscalculate the income taxes due from the Debtor. The Debtor has failed to fully account for the capital gain taxes on the sale of properties during this case or the taxable cancellation of debt owed to his late mother's estate (of which he was the administrator), and the Trustee believes that amended returns will need to be filed for these periods. This

The Court conducted evidentiary hearings on the Motion to Convert on May 4, 2016, July 26, 2016, and August 19, 2016.  Following the May 4, 2016 hearing, the Court directed the filing of memoranda regarding the Debtor's tax liabilities, including any potential tax liability arising from his failure to file an estate tax return in 2005 as executor of his deceased mother's estate.

On July 26, 2016, the Trustee filed a "Memorandum of Law Regarding the Debtor's Tax Liabilities in Support of the Trustee's Motion to Convert These Proceedings to Chapter 7."   In her Memorandum, the Trustee argued that "because the Hingham Property was included in Georgia Spenlinhauer's taxable estate, but the required estate tax return was not filed and the estate tax due has never been paid, Robert Spenlinhauer, as his mother's executor and beneficiary, remains liable for the estate tax due."   The Trustee estimated that the Debtor's personal liability for estate tax arising from his late mother's estate exceeds $11 million, given that the Hingham Property alone was worth between $9.48 million and $9.65 million at the time of Georgia Spenlinhauer's death in 2005.[5]  Thereafter, on August 5, 2016, the Trustee filed an Amended Motion to Convert

---

will result in further administrative and priority taxes owing, removing any notion of a solvent estate.

[5] The Debtor in his Statement averred the following:

An issue has been raised in this proceeding about the Massachusetts estate tax liability on [sic] the estate of Georgia M. Spenlinhauer.   The Massachusetts estate tax, Chapter 65C of its General Laws, includes a ten year statute for assessment of tax, running from the decedent's death.   § 14(a) of Chapter 65C reads:

Case to Chapter 7 for the purposes of incorporating "as grounds for conversion substantial new information disclosed by the Debtor and his advisors and other witnesses, in testimony and otherwise, since the filing of her Initial Motion to Convert."[6]

At the conclusion of the August 19, 2016 evidentiary hearing, and upon

---

> "Unless the tax imposed by this Chapter is sooner paid in full, it shall be a lien for ten years from the date of death upon the Massachusetts gross estate of the decedent . . . ."

Georgia Spenlinhauer died in 2005. Consequently, the statute had run out in 2015 and there was then no enforceable liability for Massachusetts estate tax on the Georgia M. Spenlinhauer estate.

[6] The Trustee represented in her amended motion the following:

> The Debtor has recently come forward with information which fundamentally changes the record of his acquisition and ownership of the real estate at 90 Industrial Park Road in Hingham, Massachusetts (the "Hingham Property"). Although the Debtor asserts that this information reduces the income tax due for calendar year 2015, this information also reveals that the Debtor is liable on a significant tax debt in connection with his ownership and sale of the Hingham Property. Information from the Debtor regarding the [sic] his acquisition of the Hingham Property has completely changed since April of 2016, when both the Initial Motion to Convert was filed with this Court and the automatic extension of the 2015 tax return deadline was filed with the tax authorities. As detailed in the Tax Memorandum, the Debtor has now substantiated that he acquired the Hingham Property as an inheritance from his late mother, Georgia Spenlinhauer; and admitted that as administrator of his mother's estate, he failed to file an estate tax return and failed to pay estate tax due in connection with the transfer to himself of taxable estate property including the Hingham Property. Since the required estate tax return has never been filed, under applicable law, the Debtor – as estate administrator and as beneficiary – remains liable to the state and federal taxing authorities for the unpaid estate tax, plus penalties and interest, with no statute of limitations.

7

consideration of the Trustee's Amended Motion to Convert, the Court directed the IRS and the MDOR to file statements with respect to the amended motion within 30 days. The MDOR filed its Statement on September 19, 2016.

Until such time as the Trustee addressed the Debtor's tax obligations as part of her fiduciary duties in 2016 following the sale of the Hingham Property and the Court conducted an evidentiary hearing with respect to her Motion to Convert, neither the MDOR nor the IRS were aware of issues relating to the Debtor's failure to file an estate tax return for his late mother's estate or any potential liability for estate taxes. Owing to that newly discovered circumstance on the part of the parties in interest, the Court itself directed the IRS and the MDOR to address the issue at the conclusion of the evidentiary hearing by filing the statements referenced above. As a result of the new information, the MDOR filed Claim No. 31 on March 20, 2017 which is the subject of the Debtor's Motion for Summary Judgment.

## III. THE PARTIES' STATEMENTS OF MATERIAL FACTS

### A. The Debtor

The Debtor states that on March 22, 2017 he filed an objection to the MDOR's proof of claim filed on March 20, 2017 which this Court deemed a contested matter. The original and amended proofs of claim filed by the MDOR in 2014 were for income taxes for tax years 2010, 2011 and 2012.

The Debtor further states that he was unaware that an estate tax return had to be filed for the estate of his mother, Georgia Spenlinhauer.

8

This Court established a Bar Date of May 2, 2014 on March 24, 2014.  The Debtor

served notice of the Bar Date on the Commonwealth of Massachusetts at the following

address:

> Department of Revenue
> Bankruptcy Unit
> P.O. Box 9564
> Boston, MA 02114

The Debtor further states that an estate tax identification number was issued by the IRS

to the Estate of Georgia Spenlinhauer on June 9, 2005.  Specifically, the IRS issued an

Employer Identification Number ("EIN") to the Debtor as executor, assigning an EIN of

**-***4015.

B. The MDOR

The MDOR does not dispute any of the facts set forth in the Debtor's Concise

Statement of Material Facts except for one, namely the Debtor's assertion that he was

unaware that an estate tax return had to be filed for the estate of Georgia Spenlinhauer.

It maintains that circumstantial evidence does not support the Debtor's assertion that he

was unaware of the need to file an estate tax return.

The MDOR contends the following facts are material and undisputed.   The

Debtor's mother, Georgia Spenlinhauer, died on February 4, 2005. The Debtor was

appointed as the executor of her estate by the Norfolk Probate and Family Court.  As

executor of her estate, the Debtor was required to file a Form M-706, a Massachusetts

estate tax return, and to pay any tax owed within nine months of her death if Georgia

Spenlinhauer's gross estate was worth $950,000 or more at the time of her death.

The Debtor has never filed an estate tax return with the MDOR for Georgia
Spenlinhauer's estate and has not paid any Massachusetts estate taxes, although David
Erb ("Erb"), on behalf of the Debtor, as executor, filed, on November 4, 2005, an
"Application for Extension of Time to File Massachusetts Estate Tax Return" in which he
requested an extension to May 4, 2006 to file a return because "ADDITIONAL TIME IS
NECESSARY TO GATHER THE INFORMATION REQUIRED TO FILE A COMPLETE AND
ACCURATE RETURN" (capitalization in original).  The Application was received by
MDOR and approved shortly after receipt.

According to the MDOR, the Debtor has never filed an affidavit "'in the
appropriate registry of deeds . . . stating that the gross estate of the decedent does not
necessitate a federal estate tax filing,' which as a matter of law would have released the
Massachusetts statutory estate tax lien that automatically attached over Georgia's
property upon her death under Mass. Gen. Laws ch. 65C, § 14(a)."

The last Massachusetts tax return of any nature filed by or on the behalf of Georgia
Spenlinhauer was her 2004 personal income tax return. The MDOR states that it has no
record of the tax identification number [EIN] [issued by the IRS on June 9, 2005]
referenced by the Debtor and attached as Exhibit C to his Concise Statement of Facts that
ends with the digits "4015," meaning there has never been any tax registration, tax return,
tax payment or other use of the tax identification number with the MDOR.

With respect to the Debtor's knowledge of the need to file an estate tax return, the
MDOR contends:

10

As the executor of his mother's estate, the Debtor engaged an experienced estate planning and probate attorney, and also an accountant, one of whom would certainly be expected to analyze whether a Massachusetts estate tax return was required to be filed, and if that professional's conclusion was the return was not required, where is that analysis? And if that conclusion was that Georgia's gross estate did not exceed the $950,000 threshold for the filing of the estate return, and then [sic] why[,] as it would be the standard practice[,] did the Debtor as executor not file any affidavit that would release the estate tax lien?

The Debtor's assertion needs but lacks substantiation.

The MDOR also submitted a Report Regarding Registry of Deeds On-Line Search.  The search was conducted by Stephen G. Murphy, Esq. ("Attorney Murphy"), counsel to the MDOR Commissioner.  Attorney Murphy stated that, on June 5, 2017, he conducted an on-line search of the records of the registries of deeds for the counties of Barnstable, Norfolk, and Plymouth (as well as the three Bristol county districts, the two Essex county districts, the two Middlesex districts and Suffolk County), for the purpose of determining whether any affidavit regarding the estate of Georgia Spenlinhauer that would serve the purposes of under M.G.L. c. 65C, § 14(a) had been filed.[7] After describing the scope of his

---

[7] Section 14(a) of Mass. Gen. Laws ch. 65C provides in pertinent part:

Unless the tax imposed by this chapter is sooner paid in full, it shall be a lien for ten years from the date of death upon the Massachusetts gross estate of the decedent, except that such part of the Massachusetts gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by the probate court having jurisdiction thereof, shall be divested of such lien. For dates on or after January 1, 1997, an affidavit of the executor, subscribed to under the pains and penalties of perjury, recorded in the appropriate registry of deeds and stating that the gross estate of the decedent does not necessitate a federal estate tax filing, shall release the gross estate of the lien imposed by this section.

11

thorough and comprehensive search, Attorney Murphy concluded: "I found nothing that was or even came close to looking like an affidavit by the executor of Georgia's Spenlinhauer estate, who was Robert Spenlinhauer, that stated that her gross estate does not necessitate a federal estate tax filing."

The MDOR also submitted the Affidavit of Kendra Ye, a tax examiner with the MDOR. She stated that she examined data bases identified as "Masstax" and "Genisys" looking for records containing an EIN number ending in "4015," the name Georgia Spenlinhauer, or a Massachusetts Estate Tax Return, Form M-706, for Georgia Spenlinhauer. She disclosed that she found no records with an EIN number ending in "4015;" that she found the most recent tax return for Georgia Spenlinhauer was for 2004 with a tax identification number ending with "5854," and that she found no Form M-706. According to Ms. Ye, she only found an "Application for Extension of Time to File Massachusetts Estate Tax Return" pursuant to which the Debtor, as executor, requested an extension of the due date of November 4, 2005 to May 4, 2006. That Application was signed by Erb on November 3, 2005. It contained the Debtor's name as "executor, administrator, or person in possession of decedent's property," and the name of the attorney for the estate, namely Robert Galvin, Esq. of Duxbury, Massachusetts. The reason stated for the extension of time until May 4, 2006, was, as noted above, "additional time is necessary to gather the information required to file a complete and accurate

---

Mass. Gen. Laws ch. 65C, § 14(a). *See also* 26 U.S.C. § 6324(a), and U.S. v. Valley Nat'l Bank (In re Decker), 199 B.R. 684 (B.A.P. 9th Cir. 1996).

return" (capitalization omitted).  The Commissioner of Revenue granted the extension on

November 10, 2005.  Ms. Ye added that, on March 17, 2017, the MDOR made a non-filer

assessment for Georgia Spenlinhauer's estate taxes and that no estate taxes were paid on

behalf of Georgia Spenlinhauer.[8]

## IV. POSITIONS OF THE PARTIES

### A. The Debtor

The Debtor only objects to the proof of claim filed by the MDOR in 2017 for estate

taxes.  He states that he "was unaware that an estate tax return had to be filed," adding

that "[b]oth he and the creditors in this case are caught unaware by the claim arising as a

result of the estate tax liability asserted in the Claim."

---

[8] The MDOR, through its attorney, also represented at the hearing conducted on June 13,
2017, the following:

> Well, the estate tax operates in a much different setting than does a -
> - the income tax, corporate excise whatever because we're dealing with
> death and we were dealing with people who were affected by that death.
> So the Legislature in Massachusetts, together with Congress, I think
> in sensitivity of those constituent concerns set up a system that is not, shall
> we say, as proactive as income tax enforcement or sales tax enforcement.
> Recognizing, too, that the estate tax effects really a minority. There's
> generally about 55,000 deaths in Massachusetts at least in that decade. I've
> not been able to find any statistics concerning DOR filings so long ago, but
> I -- the IRS does regularly issue reports and I recall seeing at least the IRS
> for 2005 reporting something in the order of -- in the 1400s for estate tax
> returns from Massachusetts.  So we are actually dealing with a small
> percentage of the deaths that occur in Massachusetts.
> ***
> So the fact that the debtor filed for an extension does not
> necessarily mean that there should have been a return.

Transcript, June 13, 2017, pp. 34-35.

The Debtor relies upon the decision in <u>In re Miller</u>, 90 B.R. 317 (Bankr. E.D. Tenn. 1988), *aff'd*, 118 B.R. 76 (E.D. Tenn. 1989), a Chapter 13 case in which the IRS filed an untimely claim against the debtor, who as an officer of a corporation, Dorothy W., Inc., was responsible for withholding and paying employment taxes and willfully failed to do so, for a 100% penalty for those unpaid employment taxes on the earnings of the corporation's employees.  While the debtor's Chapter 13 case was pending, and while the Chapter 11 corporate case of Dorothy W., Inc. also was pending, the debtor never mentioned his personal bankruptcy case when he and a revenue officer met several times during a corporate audit.  The IRS, while admitting that it received notice of the debtor's Chapter 13 case, argued that the penalty claim related back to its timely filed claims for income taxes.  The court examined the issue of the allowance of the claim under Fed. R. Civ. P. 15, relating to "Amended and Supplemental Pleadings," and concluded "that the 100% penalty claim is not based on the same conduct, transaction, or occurrence as the timely proof of claim for personal income tax."  <u>In re Miller</u>, 90 B.R. at 323.  The court observed:

> The notice of a chapter 13 case is not required to tell creditors how the debtor earns his income. Bankr. Rule 9009; Official Form 16. The notice also is not required to alert a creditor to what claims it may have. *The creditor is responsible for determining what claims it has.*
>
> Furthermore, the IRS received notice in this case that it had a potential 100% penalty claim against Mr. Miller when the debtor's attorney served it with notice of the amendment to add the potential 100% penalty claim related to another corporation. The amendment was served early in the case. The court does not see how the IRS could have ignored it except by oversight.

14

90 B.R. at 324 (emphasis supplied).[9]  Notably, the debtor in <u>Miller</u> listed his employer as

Dorothy W., Inc., and he also listed the IRS as the holder of a contingent debt for the 100%

penalty arising from his involvement with Dorothy W., Inc. as a responsible officer. 90

B.R. at 319.

Based upon the decision in <u>Miller</u> and other cases considering the relation back of

amendments to proofs of claim under Fed. R. Bankr. P. 7015, the Debtor emphasizes that

he had no obligation to alert the MDOR to a potential claim and that the claim for estate

taxes is barred by the Bar Date.  The Debtor asserts that MDOR received notice of the Bar

Date and, indeed, filed a timely claim for income taxes which it properly amended.

The Debtor also relies upon the issuance of an EIN number issued by the IRS on

June 9, 2005.  He states:

> The DOR should have been put on notice there was a probate estate and
> possibly the need for an M-706 since Mr. Spenlinhauer filed a fiduciary
> income tax return for the estate of Georgia Spenlinhauer, which Mr.
> Spenlinhauer believes was done.  Having seen an estate income tax return,
> the DOR could have noted the date for filing an M-706 return and followed
> up with Mr. Spenlinhauer regarding such a return.  Exhibit C [the IRS's
> issuance of an EIN number for Georgia Spenlinhauer's estate] clearly states
> that Form 1041 was due on April 15, 2006.  Since Mr. Spenlinhauer was
> depreciating 90 Industrial Park Road, Hingham, Massachusetts (the
> "Hingham Property") the acquisition of same from his mother, the DOR
> was on notice of the transfer of the Hingham Property to him.  In addition,
> as indicated above, a tax identification number was assigned to the Estate
> of Georgia Spenlinhauer, and to the new entity, the RJS Realty Trust with
> its separately assigned taxpayer identification number issued by the I.R.S.
> Therefore, the DOR, had notice of the possibility that an estate tax claim
> existed but apparently did not conduct an investigation to determine if

---

[9] The court in <u>Miller</u> did not discuss or even mention that in a Chapter 13 case a creditor
must file a proof of claim within ninety days of the first date set for the meeting of
creditors. *See* Fed. R. Bankr. P. 3002(c).

there was  a liability.  The DOR is barred from filing a claim for the state tax.[10]

The Debtor also challenges any reliance by the MDOR on the decision of the United States Court of Appeals for the Tenth Circuit in Grynberg v. U.S. (In re Grynberg), 986 F.2d 367 (10th Cir. 1993), *cert. denied.*  510 U.S. 812 (1993), *reh'g denied*, 510 U.S. 984 (1993), in which the Tenth Circuit determined that the IRS could collect a nondischargeable debt for gift taxes although it had not filed a proof of claim for that tax.  He maintains that that the Grynberg case is distinguishable because the debtors in that case listed, as disputed, a potential claim for gift taxes.

B. The MDOR

The MDOR asserts under the law in effect at the time of her death, the estate of Georgia Spenlinhauer, who was a resident of Massachusetts, "was subject to the de-coupled Massachusetts sponge tax. G.L. c. 65C, § 2A et seq."  It states that if Georgia Spenlinhauer's gross estate was more than $950,000 (and regardless of whether any estate tax might be owed), the Debtor as her executor was required to file a Form M-706

---

[10] As will be discussed in more detail below, the Debtor's argument is fraught with problems.  In the first place, there is nothing in the summary judgment record to suggest that the Debtor filed a fiduciary income tax return for his mother's estate either with the IRS or the MDOR; the Debtor merely filed an Application for Extension of Time to File Massachusetts Estate Tax Return.  Given the gap of over eight years between, on the one hand, the issuance of an EIN number by the IRS on June 9, 2005 and the filing of the Application for Extension of Time on November 3, 2005, and, on the other hand, the commencement of the Debtor's Chapter 11 case, the Court is unpersuaded that the Debtor's depreciation of the Hingham Property provided sufficient notice to the MDOR of the existence of a estate tax claim against the Debtor, in his capacity as executor and beneficiary of the his mother's estate.

Massachusetts estate tax return within nine months of her death and to pay any estate

tax that might be due on or before that filing deadline.[11]

Despite the Debtor's request for an extension of time to file an estate tax return,

the MDOR states that the Debtor never filed a Form M-706 and has never paid any estate

taxes.   The MDOR also observes that under Mass. Gen. Laws ch. 65C, § 14, Georgia

Spenlinhauer's death automatically created a statutory lien for ten years encumbering

her entire Massachusetts gross estate for the payment of her Massachusetts estate taxes.

The tenth anniversary of her death was February 4, 2015 at a time when the Debtor's

Chapter 11 case was pending.  According to the MDOR, the lien is imposed for all deaths,

but can be released if a decedent's estate is not required to file a return, if the executor

files an affidavit under penalties of perjury, records it in the appropriate registry of deeds,

and states in the affidavit that the gross estate of the decedent does not necessitate a

federal estate tax filing.  The MDOR emphasizes that, based upon Attorney Murphy's on-

line search, the Debtor has never filed such an affidavit.

The MDOR also observes that the issue of the estate tax liability of the Debtor arose

in the context of evidentiary hearings on the Chapter 11 Trustee's motion to convert his

Chapter 11 case to a case under Chapter 7, in particular, the hearing held on August 19,

2016.  Noting that the Debtor filed a federal estate tax return, which the IRS audited, the

---

[11] The MDOR cites "DOR Directive 03-2," adding that the equivalent federal filing
threshold at the time was $1,500,000.

MDOR states that the Debtor has still not filed a Form M-706.  The MDOR highlights

unanswered questions as well, observing the following:

> [W]e still have the unanswered Erb questions. If Erb, a CPA who was the
> account [sic] for Georgia's estate, had concluded that the value of Georgia's
> gross tax estate was less than $950,000, then The [sic] Debtor could not have
> obtained the stepped up basis in the Hingham Property that resulted in no
> income taxes for the bankruptcy estate for the year 2015. If, however, Erb
> had concluded that at least a Massachusetts estate tax return was required,
> what were the contents of that return and what happened to the return?
> The person who was required to file it, The [sic] Debtor, has never done so
> to this day.

Based upon these observations, the MDOR argues that cause exists to extend the

Bar Date, referencing materially changed circumstances that have arisen since the entry

of the order setting the May 2, 2014 Bar Date.  It avers that, prior to the Bar Date, it had

no knowledge of, and had no reason to believe or even suspect that it might have, a claim

against the Debtor for Georgia Spenlinhauer's estate taxes.  In addition, it argues that

"[a]s an interlocutory order, the Court itself has the power to rescind or revise the bar

date order *sua sponte*, at least until what constitute the final order in this case."

The MDOR further argues that the Debtor must be estopped from obtaining a

material benefit from inheriting the Hingham Property while avoiding the burden of that

inheritance. Citing, *inter alia*, <u>FCC v. Airadigm Commc'ns, Inc. (In re Airadigm</u>

<u>Commc'ns, Inc.)</u>, 616 F.3d 642, 661-662 (7th Cir. 2010), and <u>In re Collier</u>, 307 B.R. 20, 27-28

(Bankr. D. Mass. 2004), it argues:

> In 2016, the Debtor was able to satisfactorily show that the stepped up basis
> for the Hingham Property he obtained when he inherited [it] from his
> mother was sufficient to obviate any income taxes that he or the bankruptcy
> estate might otherwise have for the year of the sale of the Hingham
> Property. In order to have that effect, the Debtor's inheritance of that

property alone would have at least required that the Debtor as the executor
of his mother's estate to file a Massachusetts estate tax return, and possibly
and quite likely incur a Massachusetts estate tax. However, the Debtor
never filed the return and never paid a tax. Although the Debtor was the
only party in the case who prior to 2016 would have known the value
Georgia's estate was at least sufficient to require a return and possibly a tax,
he is now attempting to use the bar date for the filing of claims that he
sought and obtained from the Court in March 2014 in order to prevent any
claim from the transactions that he used to avoid other taxes.

The MDOR emphasizes that in using the existence of his inheritance from his

mother to avoid paying any 2015 taxes, while avoiding filing a return for and paying any

Massachusetts estate taxes based upon that inheritance, his conduct "smacks of playing

fast and loose," particularly "based upon a bar date order the Debtor sought from the

Court based upon inadequate information to the Court and creditors."

The MDOR, as noted above, seeks relief from the Bar Date for "cause" and for

"excusable neglect" citing Fed. R. Bankr. P. 9006(b)(1), the Supreme Court's decision in

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993), and the

decision in Graphic Commc'ns Int'l Union Local 12-N v. Quebecor Printing Providence,

Inc., 270 F.3d 1, 5-6 (1st Cir. 2001). The MDOR contends that it was the Debtor's initial

and continuing neglect to file Form M-706 that deprived it of even inquiry notice that it

might have a claim for estate taxes. Accordingly, it asserts that any neglect was excusable

and compelled by principles of judicial estoppel.

The MDOR, quoting 4 Alan N. Resnick and Henry J. Sommer, eds., *Collier on

Bankruptcy*, ¶ 501.01[3][d] (16th ed. 2017), also argues that "'[a]lthough failure to file a

proof of claim may preclude a creditor from receiving distributions from the estate, a

claim for a nondischargeable debt survives the bankruptcy discharge.'"  It also relies on

19

Grynberg v. U.S. (In re Grynberg), 986 F.2d 367 (10th Cir. 1993), *cert. denied.* 510 U.S. 812

(1993), *reh'g denied*, 510 U.S. 984 (1993), for the proposition that a bar order does not have

the effect of precluding it from collecting nondischargeable gift taxes outside of

bankruptcy.

## V. DISCUSSION

A. Summary Judgment Standard

According to the United States Bankruptcy Appellate Panel of the First Circuit in

Raso v. Fahey (In re Fahey), 482 B.R. 678 (B.A.P. 1st Cir. 2012),

> "In bankruptcy, summary judgment is governed in the first instance by
> Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760,
> 762 (1st Cir. 1994); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662
> F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into
> bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil
> Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); *see also* Soto–
> Rios v. Banco Popular de Puerto Rico, 662 F.3d at 115; Fed. R. Bankr. P. 7056;
> Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be
> bestowed only when no genuine issue of material fact exists and the movant
> has successfully demonstrated an entitlement to judgment as a matter of
> law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues
> on which the nonmovant has the burden of proof, the movant need do no
> more than aver an absence of evidence to support the nonmoving party's
> case." Id. at 763, n.1 (citation and internal quotations omitted). "The burden
> of production then shifts to the nonmovant, who, to avoid summary
> judgment, must establish the existence of at least one question of fact that
> is both genuine and material." Id. (citations and internal quotations
> omitted). The "mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106
> S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In re Fahey, 482 B.R. at 686–87.

Based upon the facts set forth in the parties' submissions, the Court finds that there is a dispute as to only one fact, namely the Debtor's knowledge that he was required to file an estate tax return as executor and beneficiary of his deceased mother's estate. The Debtor's lack of knowledge, however, is not determinative of whether an estate tax return was actually required and does not obviate consequences arising from the failure to file an estate tax return if required. Although the Debtor has attested to his belief that he was unaware that a Form M-706 had to be filed, the Application for Extension of Time to File Massachusetts Estate Tax Return and the request for an EIN number permit a reasonable inference that the Debtor's statement that he was unaware of the need to file an estate tax return is a fact in dispute.[12] Whether that fact is material is not determinative, however, if this Court were to find, based upon the MDOR's submissions, that the Debtor is not entitled to summary judgment *as a matter of law.*

B. Applicable Law

1. Due Process and Debtor's Duties

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Courts ask "whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice." Weigner v. City of New York, 852 F.2d 646, 649 (2d Cir. 1988). Notice is adequate if "[t]he means employed [are] such as

---

[12] The Court also notes that for purposes of this decision, determination of the amount of any claim held by the MDOR, whether that claim is secured, or whether it is nondischargeable is not material to the Debtor's Motion for Summary Judgment.

one desirous of actually informing the absentee might reasonably adopt to accomplish it." <u>Mullane</u>, 339 U.S. at 315, 70 S.Ct. 652.

<u>Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)</u>, 829 F.3d 135, 158–59 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017). Thus, notice is "a basic principle of justice." <u>City of New York v. New York, N.H & H.R. Co.</u>, 344 U.S. 293, 297 (1953). "[E]ven creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred. <u>Id.</u> In a Chapter 11 case, notice must be provided to creditors who are required to file a proof of claim, i.e., those creditors whose claims are "not scheduled or scheduled as disputed, contingent, or unliquidated." *See* Fed. R. Bankr. P. 3003(c)(2) and MLBR Official Local Form 5, Order and Notice Fixing Deadline for Filing Proof of Claim in Chapter 11 Cases. The notice provided to them must be adequate to support an order extinguishing a claim. Accordingly, in a Chapter 11 case, notice of a proof of claim bar date should be sent to a known creditor that is a governmental unit at its designated address. *See* Fed. R. Bankr. P. 2002(a)(7) and Fed. R. Bankr. P. 5003(e).

Section 521(a)(1) of the Bankruptcy Code requires a debtor to file "a list of creditors." 11 U.S.C. § 521(a)(1). As stated above, if a creditor's claim is not scheduled or is scheduled as disputed, contingent or unliquidated, Rule 3003(c)(2) requires a creditor who wishes to be paid from the bankruptcy estate to file a proof of claim before the bar date. If the creditor fails to file a proof of claim, it "shall not be treated as a creditor with

respect to such claim for the purposes of voting and distribution" subject to certain

exceptions not applicable here. Fed. R. Bankr. P. 3003(c)(2).[13]

2. Bar Dates and Applicable Law

Courts recognize the importance of bar dates in Chapter 11 cases.

> A bar date order is "an integral step in the reorganization process." In re
> Best Prods. Co., Inc., 140 B.R. 353, 357 (Bankr. S.D.N.Y. 1992). It enables
> "the parties in interest to ascertain with reasonable promptness the
> identity of those making claims against the estate and the general amount
> of the claims, a necessary step in achieving the goal of successful
> reorganization." Id. "If individual creditors were permitted to postpone
> indefinitely the effect of a bar order . . . the institutional means of ensuring
> the sound administration of the bankruptcy estate would be
> undermined." Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re
> Hooker Investments, Inc.), 937 F.2d 833, 840 (2d Cir. 1991).

In re AMR Corp., 492 B.R. 660, 663 (Bankr. S.D.N.Y. 2013).  See also Grynberg v. U.S. (In

re Grynberg), 986 F.2d 367, 370 (10th Cir. 1993), cert. denied, 510 U.S. 812 (1993), reh'g

denied, 510 U.S. 984 (1993) ("The purpose of this deadline is to 'enable a debtor and his

creditors to know, reasonably promptly, what parties are making claims against the

estate and in what general amounts.'"). "[I]f a creditor is not given reasonable notice of

the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally

discharged." In re AMR Corp., 492 B.R. at 663 (citing Grant v. U.S. Home Corp. (In re U.S.

---

[13] In In re Shefa, LLC, 524 B.R. 717, 733 (Bankr. E.D. Mich.), aff'd, 535 B.R. 165 (E.D. Mich.
2015), appeal dismissed (Apr. 15, 2016), the court observed:  "It is well established that
'[m]any rights under the Bankruptcy Code are keyed to 'allowed' claims. . . . For instance,
only holders of allowed claims receive distributions from the bankruptcy estate' and
disallowance means a claim holder is not entitled to receive any distribution." Id.
(quoting Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer), 405 B.R. 915, 920
(B.A.P. 9th Cir. 2009) (although discussing allowance and disallowance in the context of
Chapter 7, the same concepts apply in Chapter 11).

Home Corp.), 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998)).  Thus, in Chapter 11 cases, known

creditors must receive proper, adequate notice before their claims can be forever barred.

In re AMR Corp., 492 B.R. at 663 (citing Best Prods. Co., Inc., 140 B.R. at 357).  *See also* In

re Dartmoor Homes, Inc., 175 B.R. 659, 664 (Bankr. N.D. Ill. 1994) ("If a scheduled creditor

does not file a timely proof of claim when it is required to do so, that creditor is in the

worst of all worlds: it cannot participate in plan voting, will receive no distributions

under the plan, and will have its claim discharged, should the debtor receive a discharge.

Fed. R. Bankr. P. 3003(c)(2).").

   Actual knowledge of a bankruptcy case does not presume knowledge of a bar date.

Arch Wireless, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76 (1st

Cir. 2008) (citing City of New York, 344 U.S. at 299).  In Arch Wireless, the United States

Court of Appeals for the First Circuit recognized that "bankruptcy law distinguishes

between 'known creditors,' who are entitled to receive direct notice of each stage in the

reorganization proceedings, and 'unknown creditors,' for whom publication notice is

sufficient."  Id. at 80 (citing City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293,

296, 73 S.Ct. 299, 97 L.Ed. 333 (1953), and Chemetron Corp. v. Jones, 72 F.3d 341, 345–46

(3d Cir. 1995)).  The First Circuit observed:

> An "unknown creditor" is one whose "interests are either conjectural or
> future or, although they could be discovered upon investigation, do not in
> due course of business come to knowledge [of the debtor]." Mullane v.
> Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865
> (1950); *see also* In re XO Commc'ns, Inc., 301 B.R. 782, 793 (Bankr. S.D.N.Y.
> 2003) (describing an "unknown creditor" as one whose claims are "merely
> conceivable, conjectural or speculative" (internal quotation marks
> omitted)). A "known creditor," by contrast, is one whose claims and
> identity are actually known or "reasonably ascertainable" by the debtor.

Tulsa Prof'l Collection Servs. Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). A creditor is "reasonably ascertainable" if its claim can be discovered through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). These efforts generally include "a careful search of the debtor's own records." In re Crystal Oil Co., 158 F.3d 291, 297 (5th Cir. 1998). Thus, "*in order for a claim to be reasonably ascertainable, the debtor must have in his possession . . . some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable.*" Id. On the other hand, there is no requirement that the debtor have information suggesting the financial magnitude of the claim. *See* 11 U.S.C. § 101(5)(A) (defining "claim" to include both liquidated and unliquidated liabilities).

In re Arch Wireless, Inc., 534 F.3d at 80–81 (emphasis supplied).

Contingent claims are not unknown claims. If a debtor knows of a claim, the claim holder is entitled to adequate notice where the contingency is wholly within the debtor's control, regardless if the claim is concealed. Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.), 829 F.3d 135, 160 (2d Cir. 2016), *cert. denied*, __ U.S. __, 137 S.Ct. 1813 (2017). In Motors Liquidation, the Second Circuit observed: "[t]o avoid any practical and constitutional problems, courts require some minimum "contact," or "relationship," that makes identifiable the individual with whom the claim does or would rest." Id. at 156.[14]

---

[14] In Motors Liquidation, the Second Circuit noted that "Old GM" knew that an ignition switch defect existed and impacted consumers. Indeed, the ignition switch never passed its own technical specifications. Although it knew that the switch was defective, it approved the switch for millions of cars anyway. 829 F.3d at 159. An issue in the Motors Liquidation case was whether the plaintiffs who had vehicles with switch defects and who received notice by publication, received adequate notice and were entitled to more notice than what had been provided. The Second Circuit rejected the position of "New GM" that direct mail notice was not required because such contingent claims were "unknown" and notice by publication was sufficient. Id. at 160.

A request for a bar date is not a contested matter.  *See* <u>In re GST Telecom, Inc.</u>, No. 00-1082 GMS, 2002 WL 1737445, at *5 (D. Del. July 29, 2002).[15]  Accordingly, the plain language of Rule 2002(f)(3) applies.  It provides:  "Except as provided in subdivision (l) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of: . . . (3) the time allowed for filing claims pursuant to Rule 3002."[16]  Fed. R. Bankr. P. 2002(f)(3).  Rule 2002(g)(1) provides: "Notices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case."  Fed. R. Bankr. P. 2002(g)(1).  Rule 2002(g)(2) provides:  "Except as provided in § 342(f) of the Code, if a creditor or indenture trustee has not filed a request designating a mailing address under Rule 2002(g)(1) or Rule 5003(e), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later." Fed. R. Bankr. P. 2002(g)(2).  Rule 5003(e), captioned "Register of mailing addresses of federal and state governmental units and certain taxing authorities," provides:

> The United States or the state or territory in which the court is located may file a statement designating its mailing address. The United States, state, territory, or local governmental unit responsible for collecting taxes within the district in which the case is pending may also file a statement

---

[15] Were the request for a bar date considered to be a contested matter, different service requirements would have to be satisfied.  *See generally* <u>United States v. Lauglin</u>, 210 B.R. 659 (B.A.P. 1st Cir. 1997)(discussing service requirements under Rules 9014 and 7004(b)).

[16] Rule 3002(a) provides: "**(a) Necessity for Filing.** An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005." Fed. R. Bankr. P. 3002(a).

designating an address for service of requests under § 505(b) of the Code, and the designation shall describe where further information concerning additional requirements for filing such requests may be found. The clerk shall keep, in the form and manner as the Director of the Administrative Office of the United States Courts may prescribe, a register that includes the mailing addresses designated under the first sentence of this subdivision, and a separate register of the addresses designated for the service of requests under § 505(b) of the Code. The clerk is not required to include in any single register more than one mailing address for each department, agency, or instrumentality of the United States or the state or territory. If more than one address for a department, agency, or instrumentality is included in the register, the clerk shall also include information that would enable a user of the register to determine the circumstances when each address is applicable, and mailing notice to only one applicable address is sufficient to provide effective notice. The clerk shall update the register annually, effective January 2 of each year. The mailing address in the register is conclusively presumed to be a proper address for the governmental unit, but the failure to use that mailing address does not invalidate any notice that is otherwise effective under applicable law.

Fed. R. Bankr. P. 5003(e).

Massachusetts Local Bankruptcy Rule 2002-2, captioned "Notices to the United States of America and the Commonwealth of Massachusetts," provides guidance. Specifically, it provides: "The addresses for service upon federal and state governmental agencies are set forth in MLBR Appendix 4."

This Court maintains a Roster of Government Units and Tax Liability Address, which is available on the Court's website. It contains a "list of addresses for governmental units who receive notice as well as those units responsible for the collection of taxes within the District of Massachusetts pursuant to 11 U.S.C. § 505(b) and Federal Bankruptcy Rule 5003(e)." The addresses listed for the Commonwealth of Massachusetts include the following:

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114-9564

Chief Counsel, Legal Department
Department of Unemployment Assistance
Commonwealth of Massachusetts
19 Staniford Street, 1st Floor
Boston, MA 02114-2502

Office of the Attorney General
Commonwealth of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108

As noted above, notice of commencement of the Debtor's case was served on the MDOR at the first address listed above.  It addition, the Debtor served the MDOR with notice of the Bar Date at the same address.

According to the court in In re The Grand Union Co., 204 B.R. 864 (Bankr. D. Del. 1997),

> [I]nadequate notice of the claims bar date is a defect which precludes discharge of a claim in bankruptcy. *See* Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995). A claimant, who is not apprised with reasonable notice of the bar date, is not bound by the legal effects of the confirmation of the plan and should be allowed to file a late proof of claim. *See* Greyhound Lines, Inc. v. Rogers (Eagle Bus. Mfg., Inc.), 62 F.3d 730, 735 (5th Cir. 1995); Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.), 863 F.2d 832, 834–35 (11th Cir.1989). *See also* Atlantic Richfield Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 110 B.R. 205, 207–08 (Bankr.W.D.Pa.1990) (holding that courts have traditionally allowed creditors to file late proofs of claims notwithstanding their failure to timely file the claims where they were not provided with reasonable notice of bar date).
>
> Whether a creditor received adequate notice of a bar date "depends upon the facts and circumstances of a given case." *See* Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.), 863 F.2d 393, 396 (5th Cir.), *cert.*

*denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989). In general, due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In other words, the notice must be such that it would reasonably inform the interested parties that the matter is pending and would reasonably allow the parties to "choose for [themselves] whether to appear or default, acquiesce or contest." *See* Mullane, 339 U.S. at 314, 70 S.Ct. at 657.

In re The Grand Union Co., 204 B.R. at 871 (footnote omitted).

### 3. Law Applicable to Extensions of the Bar Date

Because the MDOR received notice of the Bar Date at the address set forth in the Court's Roster, as will be discussed in more detail below, the issue presented is whether its receipt of the notice of the Debtor's bankruptcy case and the Bar Date was sufficient to apprise it that it had a claim against the Debtor for estate taxes arising from his status as executor and beneficiary of his mother's estate. The MDOR relies upon Fed. R. Bankr. P. 3003(c)(3) which provides: "The court shall fix and *for cause shown* may extend the time within which proofs of claim or interest may be filed." (emphasis supplied). The "for cause" language set forth in Rule 3003(c)(3) must be interpreted in accordance with Bankruptcy Rule 9006(b), which, subject to certain exceptions not relevant here, provides:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b).  The law is unclear whether the "for cause" standard set forth

in Rule 3003(c)(3) is limited to instances of excusable neglect.  For example in <u>Agribank</u>

<u>v. Green,</u> 188 B.R. 982 (C.D. Ill. 1995), the court stated:

> In <u>Pioneer</u>, the Supreme Court explicitly held that "Rule 9006(b)(1) must be
> construed to govern the permissibility of late filings in Chapter 11
> bankruptcies." 507 U.S. at __, 113 S.Ct. at 1495 n.4. The Supreme Court
> reasoned that Rule 9006(b) expressly excepts Chapter 7 cases from the
> "excusable neglect" standard; however, it makes no such exception for
> cases falling under Rule 3003(c). Thus, those cases must be subject to the
> "excusable neglect" standard. <u>Id.</u> In other words, the Supreme Court found
> that "excusable neglect" in Rule 9006(b)(1) defines the "for cause shown"
> language in Rule 3003(c)(3).

<u>Agribank v. Green</u>, 188 B.R. at 986.[17]  *Contra* Alan N. Resnick and Henry J. Sommer, eds.,

*Collier on Bankruptcy* ¶ 3003.03[4][b] , at 3003-11 (16th ed. 2016)  (In <u>Pioneer</u>, 507 U.S. at

395, the Supreme Court "adopted the excusable neglect standard without considering

---

[17] In <u>Pioneer</u>, the Supreme Court observed:

> The time-computation and time-extension provisions of Rule 9006, like
> those of Federal Rule of Civil Procedure 6, are generally applicable to any
> time requirement found elsewhere in the rules unless expressly excepted.
> Subsections (b)(2) and (b)(3) of Rule 9006 enumerate those time
> requirements excluded from the operation of the "excusable neglect"
> standard. One of the time requirements listed as excepted in Rule 9006(b)(3)
> is that governing the filing of proofs of claim in Chapter 7 cases. Such filings
> are governed exclusively by Rule 3002(c). *See* Rule 9006(b)(3); <u>In re Coastal</u>
> <u>Alaska Lines, Inc.</u>, 920 F.2d 1428, 1432 (CA9 1990). By contrast, Rule 9006(b)
> does not make a similar exception for Rule 3003(c), which, as noted earlier,
> establishes the time requirements for proofs of claim in Chapter 11 cases.
> Consequently, Rule 9006(b)(1) must be construed to govern the
> permissibility of late filings in Chapter 11 bankruptcies. *See* Advisory
> Committee's Note accompanying Rule 9006(b)(1).

<u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. at 389, 113 S. Ct. at 1495
n.4.  Notably, Rule 3002(c) governs the time for filing proofs of claim in Chapter 7, 12 and
13 cases only.

whether Rule 3003(c)(3) provides for a test different from Rule 9006(b).").  As a consequence of the lack of clarity, courts frequently equate "cause" and "excusable neglect." In re O'Shaughnessy, 252 B.R. 722, 731 (Bankr. N.D. Ill. 2000) ("The meaning of 'cause' in Bankruptcy Rule 3003(c)(3) is elaborated in Bankruptcy Rule 9006(b)(1)."). *See also* Omni Mfg., Inc. v. Smith (In re Smith), 21 F.3d 660 (5th Cir. 1994) (intimating that the for cause standard applies to requests for extensions before the expiration of the bar date and the excusable neglect standard applies to claims filed after the deadline and stating: "Rule 3003(c)(3), read together with Rule 9006(b)(1), asks first whether the request for enlargement of time was made before the deadline expired.").

In Pioneer, the Supreme Court prefaced its decision by observing:

> First, the Rule grants a reprieve to out-of-time filings that were delayed by "neglect." The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or, closer to the point for our purposes, "to leave undone or unattended to *esp[ecially] through carelessness*." Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added). The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

Pioneer, 507 U.S. at 388, 113 S. Ct. at 1494–95.  The Supreme Court affirmed the Sixth's Circuit's decision reversing the lower courts disallowance of a late filed claim  The claim at issue was filed twenty days after the bar date imposed by the bankruptcy court.  The

Supreme Court recognized that the notice of the bar date consisted of a single, "inconspicuous" sentence in a document entitled "Notice for Meeting of Creditors." Id. at 386, 398, 113 S.Ct. 1494. The Court emphasized ambiguity in the notification, id. at 398, 113 S.Ct. 1500, and observed that it "consider[ed] significant that the notice of the bar date . . . was outside the ordinary course in bankruptcy cases," in which "ordinarily the bar date . . . should be prominently announced and accompanied by an explanation of its significance," Id. at 398, 113 S.Ct. at 1499-1500.

The Supreme Court, while noting the "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," 507 U.S. at 396, 113 S.Ct. at 1498, adopted a balancing test for determining whether excusable neglect exists under Rule 9006(b). Pertinent factors, as the IRS recognized, are: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the claimant's conduct was in good faith. See In re Gordian Med., Inc., 499 B.R. 793, 798 (Bankr. C.D. Ca. 2013) (citing ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1003 (9th Cir. 2006); Forward Progress Mgmt. Real Estate, Inc. v. The Yucca Group, LLC (In re The Yucca Group LLC), 2012 WL 2086485 (B.A.P. 9th Cir. June 8, 2012)). No single circumstance in isolation compels a particular result regardless of the other factors. In re Gordian Med., Inc., 499 B.R. at 797–98 (citing Briones v. Riviera Hotel & Casino, 116 F.3d 379, 382 n.2 (9th Cir. 1997)).

In Pioneer, the Court gave "little weight," 507 U.S. at 398, 113 S.Ct. at 1489, to the the late-claimants' attorney's excuse that he was "unaware" of the bar date because he

had left his former law firm and lacked access to necessary files. Id. at 384, 113 S.Ct. 1489.

The Court, however, emphasized that "were there any evidence of prejudice to [the

debtor] or to judicial administration in this case, or any indication at all of bad faith," it

would be unable to rule that the bankruptcy court abused its discretion in refusing to find

excusable neglect. Id. at 398, 113 S.Ct. 1489.

Some courts suggest that prejudice to the debtor is the most important factor in

determining the existence of excusable neglect. See In re Papp Int'l, Inc., 189 B.R. 939, 944

(Bankr. D. Neb.1995).  While noting that the Supreme Court in Pioneer provided little

guidance to the determination of "what prejudice actually is," the United States Court of

Appeals for the Third Circuit observed that "the determination of prejudice involved 'a

certain amount of crystal ball gazing.'" In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 126

(3d Cir. 1999) (citing In re Keene Corp., 188 B.R. 903, 912–13 (Bankr. S.D.N.Y. 1995)).  It

listed several factors to consider such as

> the size of the claim with respect to the rest of the estate; whether allowing
> the late claim would have an adverse impact on the judicial administration
> of the case; whether the plan was filed or confirmed with knowledge of the
> existence of the claim; the disruptive effect that the late filing would have
> on the plan or upon the economic model upon which the plan was based;
> and whether allowing the claim would open the floodgates to other similar
> claims.

188 F.3d at 126.

In In re Papp Int'l, Inc., the court determined that "[t]he length of delay after the

bar date is not determinative of excusable neglect, but such tardiness must be considered

in the context of the other Pioneer factors." 189 B.R. at 946.  The court added: "the length

of the delay is significant, but only if it impacts the case, was intentional or was in bad faith can it be the factor that tips the balance against a finding of excusable neglect." Id.

The Supreme Court in Pioneer determined that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect," 507 U.S. at 392, 113 S.Ct. 1496, although it recognized that excusable neglect is "a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. (footnotes omitted). In sum, excusable neglect is at least "the failure to timely perform a duty due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." Smith v. Southside Cafe, No. 09-4673A3, 2010 WL 1037978, at *2 (E.D. La. Mar. 18, 2010) (citing In re Smith, 21 F.3d at 666).

C. Analysis

The controversy between the Debtor and the MDOR is unique in that the taxing authority held two types of claims against the Debtor: priority and general unsecured claims for unpaid income taxes, and, unknown claims arising out of the Debtor's failure, as executor of his deceased mother's estate, to file an estate tax return (Form M-706) and to pay either estate tax obligations and/or income tax obligations of her estate. The Debtor listed the MDOR only as the holder of priority and unsecured claims relating to his personal income taxes but did not list the MDOR as the holder of a contingent, unliquidated, or disputed claim with respect to any estate taxes owed. Accordingly, the MDOR is in the position of being both a "known" and an "unknown" creditor from the

34

Debtor's perspective with respect to the different types of claims. The issue in this case

is whether, with respect to the "unknown claim," it received:

> Notice reasonably calculated, under all the circumstances, to apprise
> interested parties of the pendency of the action and afford them an
> opportunity to present their objections. The notice must be of such nature
> as reasonably to convey the required information, and it must afford a
> reasonable time for those interested to make their appearance.

Mullane, 339 U.S. at 314, 70 S.Ct. 652 (citations omitted).

There can be no dispute that the MDOR received notice of the May 24, 2014 Bar

Date in this case with respect to income tax claims against the Debtor. Indeed, it timely

filed a proof of claim on January 16, 2014, which it amended on June 25, 2014. Both of

those proofs of claim contain an address where notices should be sent, namely

"Massachusetts Department of Revenue, Bankruptcy Unit, P.O. Box 9564, Boston, MA

02114," which the Debtor properly used.

The MDOR was aware of the proof of claim Bar Date, but on his schedules of

liabilities, the Debtor, as noted, did not list the MDOR as the holder of a claim against

him in his capacity as executor and beneficiary of his mother's estate and, significantly,

did not include either her social security number or the EIN number that he obtained

from the IRS anywhere in his petition. This Court concludes that, as a result of this

omission, as well as the age and type of claim for estate tax, the MDOR would have had

insufficient notice of, or reason to investigate, the Debtor's potential liability as a

transferee of his mother's estate when he filed his bankruptcy petition on December 16,

2013, over eight years after Georgia Spenlinhauer passed away. In short, this Court

concludes that the MDOR's failure to timely file a proof of claim was the result of a

circumstance beyond its control which constitutes excusable neglect. *Cf.* Justice v. United States (In re Justice), 817 F.3d 738, 745 (11th Cir. 2016), *cert. denied*, __ U.S. __, 137 S.Ct. 1375 (2017) ("the IRS, as a practical matter, does not have the resources to investigate everyone's tax liability"). The failure to timely file a proof of claim for estate taxes unquestionably appears to be "due to circumstances that were beyond the reasonable control of the person whose duty it was to perform." *See* Smith v. Southside Cafe, No. 09-4673A3, 2010 WL 1037978, at *2 (E.D. La. Mar. 18, 2010). The MDOR, which had no information, other than the Debtor's Application for an Extension of Time to File Massachusetts Estate Tax Return filed approximately eight and a half years before the Bar Date, established that its failure to file a proof of claim for the estate taxes was due to circumstances beyond its control.

The Debtor, who had ample notice that the property he was inheriting from his mother might well be subject to inheritance taxation as evidenced by, among other things, the Application for Extension of Time to File Massachusetts Estate Tax Return, takes the position that the MDOR was sufficiently apprised of his potential liability owing to his service of the Bar Date, as well his request for an EIN number. The Court concludes that the Debtor did not provide the MDOR "notice reasonably calculated, under all the circumstances," to apprise it that it had a claim arising out of the transfer of the Hingham Property and other property following the death of his mother. Thus, when this Court weighs the factors enunciated by the Supreme Court in Pioneer, namely 1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable

control of the movant; and (4) whether the claimant's conduct was in good faith, the Court

concludes that those factors weigh heavily in favor of the MDOR, particularly where the

reason for the delay must attributed to the Debtor's conduct.

In the first place, any prejudice to the Debtor is the result of his own conduct in

failing to identify the estate tax claims. Moreover, there is no prejudice to the Debtor if

the debt for estate taxes is determined to be nondischargeable under 11 U.S.C. §

523(a)(1)(B), because that circumstance is independent of the filing of a proof of claim.

*See* Grynberg v. U.S. (In re Grynberg), 986 F.2d 367 (10th Cir. 1993), *cert. denied,* 510 U.S.

812 (1993), *reh'g denied*, 510 U.S. 984 (1993) (in absence of the filing of a proof of claim, the

bar order did not preclude IRS from collecting nondischargeable gift taxes outside

bankruptcy after confirmation of plan). [18]   The Court finds the Debtor's attempts to

---

[18] In Grynberg, the Tenth Circuit observed:

> Although allowing the IRS to pursue its claim after the confirmation and
> consummation of a Chapter 11 plan admittedly conflicts with the "fresh
> start" policy animating the Code's discharge provisions, "it is apparent to
> us that Congress has made the choice between collection of revenue and
> rehabilitation of the debtor by making it extremely difficult for a debtor to
> avoid payment of taxes under the Bankruptcy Code." United States v.
> Gurwich (In re Gurwich), 794 F.2d 584, 585-86 (11th Cir. 1986). This is an
> express congressional policy judgment that we are bound to follow. *See*
> United States v. Sotelo, 436 U.S. 268, 279-80, 98 S.Ct. 1795, 1802, 56 L.Ed.2d
> 275 (1978).

> Finally, plaintiffs maintain that to be excepted from discharge under § 523,
> the disputed gift tax must be a "debt." The Code defines debt as "liability
> on a claim." § 101(12). Because the IRS never filed a proof of claim for the
> gift tax, the argument goes, it does not have a debt, and without a debt there
> is nothing to be deemed nondischargeable. Although this syllogism is
> semantically creative, it disregards the broader purposes and logic of the
> Code. Plaintiffs neglected to include in their argument the definition of

distinguish <u>Grynberg</u> unpersuasive, particularly where in that case the IRS had notice of the existence of estate tax claims at the commencement of the case in time to file a timely proof of claim.  In addition, because the Debtor contends that he was not required to file an estate tax return and that when he did so no tax was owed, if his position is correct and he prevails, he will not be prejudiced by the filing of the proof of claim by the MDOR because no amount of estate tax will be owed.

Although the MDOR did not file proof of claim with respect to the Debtor's liability as a transferee of his mother's estate before the claims Bar Date, the reason for its delay in filing a proof of claim for the estate tax rests squarely on the Debtor.  He maintains that he was unaware that an estate tax return had to be filed, but his inheritance of significant assets from his mother, and the filing of an Application for an Extension of Time to file an estate tax return with the MDOR, suggests otherwise, particularly where

---

"claim," which means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). The Supreme Court has held that the language of § 101(5)(A) "reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a 'claim' giving rise to a 'debt.'" <u>Pennsylvania Dep't of Pub. Welfare v. Davenport</u>, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). Nothing in the definition of the term requires the submission of proof to establish a claim's existence. Proof is required only to ensure the creditor's participation in the reorganization. In view of this expansive definition of the term "claim," we have no difficulty characterizing the gift taxes as a disputed right to payment, thus qualifying as a "debt" that can be excepted from discharge under § 523.

<u>In re Grynberg</u>, 986 F.2d at 371.

he was represented by Erb.  Finally, the Court concludes that the record is devoid of any bad faith on the part of the MDOR.

The Debtor simply cannot have it both ways.  He cannot have this Court treat the MDOR as a "known" creditor for purposes of disallowing its claim against him in his capacity as executor for failing to timely file a proof of claim, while persisting that the MDOR was an "unknown" creditor to him with respect to his liability as executor, thus excusing his failure to identify the MDOR as, at least, a contingent, disputed and unliquidated creditor with respect to a potential estate tax claim.  In other words, the decision does not in reality turn on whether the MDOR was a known or an unknown creditor, it turns on whether the Debtor adequately informed the MDOR that it might hold a claim against him in his capacity as executor and beneficiary.

The information the Debtor asserts should have alerted the MDOR to the need to file a proof of claim for estate taxes, including his depreciation of the Hingham Property, was information that he possessed that should have alerted him of the need to list the MDOR as a contingent, unliquidated and disputed creditor with respect to the estate tax claim.  *See* In re Motors Liquidation Co., 829 F.3d at 160.  Given the significant period of time between when the estate tax return should have been filed and the commencement of the Debtor's bankruptcy case and the policy of self reporting, this Court concludes that it is both unreasonable and unwarranted for the Debtor to expect the MDOR to undertake an investigation into a potential unlisted claim for estate taxes where the Debtor's petition contained no information whatsoever that would have alerted it to the existence of the claim.

With respect to the MDOR's estoppel argument, Massachusetts and other courts

consider notions of fair dealing and good faith. *See* Daly v. Testo (In re Carrozzella), 267

B.R. 656, 661 (Bankr. D. Conn. 2001) ("The doctrine of estoppel is based on equitable

notions of fair dealing, good faith and justice. Its purpose and effect is 'to forbid one to

speak against his own act, representation, or commitment to the injury of one to whom

they were directed and who reasonably relied thereon.'" 28 Am.Jur.2d, *Estoppel and*

*Waiver* § 28 (1966).").

> [E]stoppel is employed to prevent the inequitable assertion of rights which
> would otherwise exist to the detriment of an opposing party who has been
> misled. In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003), citing to
> Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 591
> N.E.2d 157 (1992); In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2nd Cir.
> 1996); Nassau Trust Co. v. Montrose Concrete Products, 56 N.Y.2d 175, 451
> N.Y.S.2d 663, 436 N.E.2d 1265 (1982). Estoppel requires that the Court find
> existence of: 1) a representation or conduct amounting to a representation
> intended to induce a course of conduct on the part of the person to whom
> the representation is made; 2) an act or omission resulting from the
> representation, whether actual or by conduct, by the person to whom the
> representation is made; and 3) detriment to such person as a consequence
> of the act or omission. In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003),
> citing to Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531,
> 591 N.E.2d 157 (1992) (quoting Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722,
> 320 N.E.2d 919 (1974)); *see also* Falcone v. Pierce, 864 F.2d 226, 228 (1st Cir.
> 1988); Dunkin' Donuts, Inc. v. Panagakos, 5 F.Supp.2d 57 (D. Mass. 1998).
> "Conduct" may include spoken words, written words, positive acts, silence,
> and negative omissions to do something. Id. To find estoppel, there need
> not be an actual intent to defraud or mislead. The estoped party need only
> have intended or expected that another would act based upon his
> representations. In re DeArakie, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996).

In re Collier, 307 B.R. 20, 27-28. *See also* Penny v. Giuffrida, 897 F.2d 1543, 1545–46 (10th

Cir. 1990).[19]  In this case, while the Debtor may have been unaware of the need to file an

---

[19] The Tenth Circuit observed:

estate tax return and/or an income tax return for his mother's estate, he knew that he

inherited the Hingham Property, as well as other property, from his mother and he knew,

or must be deemed to have known, of the potential need to file an estate tax return as Erb

filed an Application for Extension of Time to file such a return with the Commonwealth

of Massachusetts.  The Debtor sought and obtained an EIN number and he depreciated

the Hingham Property over several years.  All that information was in his possession and

is the same information that the Debtor contends the MDOR should have used to

ascertain whether it had a claim for estate taxes.  One can only ask:  If the information in

his possession did not alert him to the need to list the MDOR as the holder of a potential

claim for estate taxes, why should the MDOR have been alerted to the need to file a proof

of claim?  When the Debtor filed his schedules of liabilities, omitting any reference to

estate tax claims, he did so under penalty of perjury intending creditors to rely upon their

---

Historically, equitable estoppel has been used to prevent a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 105, at 733 (5th ed. 1984). The purpose of the doctrine of equitable estoppel is to ensure that no one will be permitted to "take advantage of his own wrong." R.H. Stearns Co. v. United States, 291 U.S. 54, 62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). In private suits, the traditional elements of equitable estoppel are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's  conduct to his injury. Che–Li Shen v. INS, 749 F.2d 1469, 1473 (10th Cir. 1984).

Penny v. Giuffrida, 897 F.2d 1543, 1545–46 (10th Cir. 1990).

truth and accuracy.  He failed to list the MDOR as the holder of a claim with respect to the estate taxes but, nevertheless, argues that it should have been aware of all the facts that he possessed but did not disclose, presumably by using his social security number or some type of search of all taxpayers with the last name "Spenlinhauer," owing to the absence of information such as W-2s, 1099s and other periodic returns which typically trigger investigation, for a period of time well before the commencement of his case.  The MDOR conducted such a search and found no information from which it could determine the existence of a claim.  The MDOR did not file a proof of claim for the estate taxes until such time as the Debtor filed a Form 706 with the IRS.  Under all those circumstances, the MDOR's failure to do, assuming neglect, was excusable and there is ample cause to extend the Bar Date under Fed. R. Bankr. P. 3003(c)(2).  The Debtor is equitably estopped from contending otherwise. *See* In re Collier, 307 B.R. at 27-28.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Debtor's Motion for Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  September 8, 2017

42