# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT J. SPENLINHAUER,**                    Chapter 11
     Debtor                                          Case No. 13-17191-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

Three Emergency Motions are before the Court:  1) the Motion of Chapter 11 Trustee for Reconsideration of, or to Vacate the Court's Order Dismissing the Case (the "Motion to Reconsider"); 2) the Chapter 11 Trustee's Emergency Motion For Stay Pending Reconsideration or Appeal (the "Motion for Stay Pending Appeal"); and 3) the "United States' Own Emergency Motion For Stay Pending Reconsideration and/or Determination of 11 U.S.C. § 349(b) Distribution and Pending Appeal If Necessary."  As noted below, the Court granted the Chapter 11 Trustee's Motion for Stay Pending Reconsideration on March 14, 2018, but did not grant her Motion for Stay Pending Appeal, thus rendering the United States' Motion for Stay Pending Reconsideration moot.  If the Court reconsiders and vacates its order of dismissal, the Motion for Stay Pending Appeal and the United States' alternative request to enter a distribution order pursuant to 11 U.S.C. § 349(b) will be moot.

## II. BACKGROUND

The Debtor filed a Chapter 11 petition on December 16, 2013.[1]  On January 10, 2014, the Debtor filed, among other things, his schedules of assets and liabilities and Statement of Financial Affairs.  On Schedule D-Creditors Holding Secured Claims, he listed the IRS as the holder of a claim, identified as 2006-2010 Tax Lien, in the sum of $294,000 secured by property located at 13 Industrial Drive, Mashpee, Massachusetts valued at $474,000.  On February 14, 2014, the Debtor filed amended Schedules A, B, C, D, E, and F and an amended Statement of Financial Affairs, but did not list the IRS as the holder of any claims other than the one previously listed on Schedule D.  On March 27, 2014, the Debtor amended his schedules again but did not alter the way he listed the IRS's claim.  On April 11, 2014, the Debtor filed an amended Schedule E, adding the IRS as the holder of an unsecured priority claim for 2011 income taxes in the sum of $40,299.00.

Approximately 20 months after the Debtor commenced his Chapter 11 case, on September 3, 2015, the Court entered an order authorizing the Debtor to sell real property located at 90-90A Industrial Park Road in Hingham, Massachusetts (the "Hingham Property").  On September 14, 2015, the sale of the Hingham Property closed, generating,

---

[1] The Court incorporates in part the background information set forth in its decision regarding the Motion by Respondent, Robert J. Spenlinhauer (the "Debtor"), for Summary Judgment Relative to Estate Tax Claim of the United States of America. The Debtor's Motion for Summary Judgment which was precipitated by the filing of "Creditor United States of America's Motion to Determine Tax Liability Pursuant to § 505(a)." Pursuant to that motion, the United States sought a determination that the Debtor is personally liable for an estate tax obligation as a transferee of the estate of Georgia M. Spenlinhauer, the Debtor's deceased mother, as he was the executor and beneficiary of his mother's estate and did not file a Form 706 estate tax return for her estate until February 8, 2017, more than 12 years after his mother passed away.

2

according to the Debtor in a Status Report filed on September 17, 2015, net proceeds of

$1,029,459.29 for the bankruptcy estate.

On December 8, 2015, the U. S. trustee filed a Motion to Convert Debtor's Chapter

11 case to Chapter 7, or, in the Alternative, to Appoint a Chapter 11 Trustee asserting

numerous grounds, including the Debtor's failure to timely file his federal and state tax

returns.  On December 15, 2015, this Court granted the U. S. trustee's alternative Motion

to Appoint a Chapter 11 Trustee in lieu of converting the Debtor's Chapter 11 case to a

case under Chapter 7 and subsequently entered an order authorizing the appointment of

Lynne F. Riley as Chapter 11 Trustee (the "Trustee" or the "Chapter 11 Trustee") in this

case.  Four months after her appointment, on April 12, 2016, the Trustee filed a Motion to

Convert Case to Chapter 7.[2]

The Court conducted evidentiary hearings on the Motion to Convert on May 4,

2016, July 26, 2016, and August 19, 2016.  Following the May 4, 2016 hearing, the Court

directed the filing of memoranda regarding the Debtor's tax liabilities, including any

---

[2] In her Motion, the Trustee asserted, *inter alia,* the following:

> The estate faces significant tax liability resulting from the Debtor's
> disposition of assets during these Chapter 11 proceedings. The Debtor
> belatedly filed income tax returns for 2013 and 2014, but the analysis of
> these returns by the Trustee and her accountant reveals that these returns
> and his 2012 return miscalculate the income taxes due from the Debtor. The
> Debtor has failed to fully account for the capital gain taxes on the sale of
> properties during this case or the taxable cancellation of debt owed to his
> late mother's estate (of which he was the administrator), and the Trustee
> believes that amended returns will need to be filed for these periods. This
> will result in further administrative and priority taxes owing, removing any
> notion of a solvent estate.

3

potential tax liability arising from his failure to file an estate tax returns with the Internal

Revenue Service ("IRS") or the Massachusetts Department of Revenue ("MDOR") in 2005

as executor of his deceased mother's estate.

On July 26, 2016, the Trustee filed a "Memorandum of Law Regarding the Debtor's

Tax Liabilities in Support of the Trustee's Motion to Convert These Proceedings to

Chapter 7."    In her Memorandum, the Trustee argued that "because the Hingham

Property was included in Georgia Spenlinhauer's taxable estate, but the required estate

tax return was not filed and the estate tax due has never been paid, Robert Spenlinhauer,

as his mother's executor and beneficiary, remains liable for the estate tax due."    The

Trustee estimated that the Debtor's personal liability for estate tax arising from his late

mother's estate exceeds $11 million, given that the Hingham Property alone was worth

between $9.8 million and $9.65 million at the time of Georgia Spenlinhauer's death in

2005.[3]    Thereafter, on August 5, 2016, the Trustee filed an Amended Motion to Convert

---

[3] The Debtor in his Statement averred the following:

> An issue has been raised in this proceeding about the Massachusetts estate
> tax liability on the estate of Georgia M. Spenlinhauer.  The Massachusetts
> estate tax, Chapter 65C of its General Laws, includes a ten year statute for
> assessment of tax, running from the decedent's death.  § 14(a) of Chapter
> 65C reads:
>
> > "Unless the tax imposed by this Chapter is sooner paid in
> > full, it shall be a lien for ten years from the date of death
> > upon the Massachusetts gross estate of the decedent . . . ."
>
> Georgia Spenlinhauer died in 2005.  Consequently, the statute had run out
> in 2015 and there was then no enforceable liability for Massachusetts estate
> tax on the Georgia M. Spenlinhauer estate.

Case to Chapter 7 for the purposes of incorporating "as grounds for conversion substantial new information disclosed by the Debtor and his advisors and other witnesses, in testimony and otherwise, since the filing of her Initial Motion to Convert."[4]

At the conclusion of the August 19, 2016 evidentiary hearing, and upon consideration of the Trustee's Amended Motion to Convert, the Court directed the IRS and the MDOR to file statements with respect to the amended motion within 30 days.

---

[4] The Trustee represented in her amended motion the following:

> The Debtor has recently come forward with information which fundamentally changes the record of his acquisition and ownership of the real estate at 90 Industrial Park Road in Hingham, Massachusetts (the "Hingham Property"). Although the Debtor asserts that this information reduces the income tax due for calendar year 2015, this information also reveals that the Debtor is liable on a significant tax debt in connection with his ownership and sale of the Hingham Property. Information from the Debtor regarding the [sic] his acquisition of the Hingham Property has completely changed since April of 2016, when both the Initial Motion to Convert was filed with this Court and the automatic extension of the 2015 tax return deadline was filed with the tax authorities. As detailed in the Tax Memorandum, the Debtor has now substantiated that he acquired the Hingham Property as an inheritance from his late mother, Georgia Spenlinhauer; and admitted that as administrator of his mother's estate, he failed to file an estate tax return and failed to pay estate tax due in connection with the transfer to himself of taxable estate property including the Hingham Property. Since the required estate tax return has never been filed, under applicable law, the Debtor – as estate administrator and as beneficiary – remains liable to the state and federal taxing authorities for the unpaid estate tax, plus penalties and interest, with no statute of limitations.

Trustee's Amended Motion to Convert Case to Chapter 7, at p. 2.

The IRS filed its Statement on September 19, 2016 acknowledging that its proof of claim

"does not contain any estate or income tax claims related to his late mother's estate."

On October 13, 2016, the Court denied both the Trustee's Motion and Amended

Motion to Convert.

Until such time as the Trustee addressed the Debtor's tax obligations as part of her

fiduciary duties in 2016 following the sale of the Hingham Property and the Court

conducted an evidentiary hearing with respect to her Motion to Convert, neither the IRS

nor the MDOR were aware of issues relating to the Debtor's failure to file an estate tax

return for his late mother's estate or any potential liability for estate taxes.  On March 15,

2017, the United States filed a Motion to Determine Tax Liability Pursuant to § 505(a)(1)

(the "§ 505 Motion") in which it represented the following:

> Pursuant to 11 U.S.C. § 505(a)(1), the United States seeks an order from this
> Court determining the estate tax liability of the Debtor, but in the interim
> will not oppose a request by the Debtor to have this Court stay this
> contested matter so that the Debtor may pursue his examination-related
> rights and remedies with the IRS, with the following two caveats. First,
> under 26 U.S.C. § 7122, this matter has been referred to the Department of
> Justice to establish the liability and collect the tax and therefore, the IRS is
> not authorized to agree to any reduction in the amount of the Debtor's
> liability unless a duly-authorized delegate of the Attorney General
> approves of the reduction. And second, discovery shall not expire until well
> after any administrative proceedings are concluded.

Four days later, the United States also filed a Motion to Convert the Debtor's Chapter 11

case to a case under Chapter 7.  The Debtor opposed both motions, indicating, among

other things, that "the executor intends to pursue the examination-related rights and

remedies with the IRS." The Debtor also filed an objection to the amended proof of claim

filed by the IRS in which it included the Debtor's alleged personal liability as a transferee

of the probate estate of the Debtor's deceased mother, Georgia M. Spenlinhauer, for its

federal estate tax liability as the Debtor was the executor of his late mother's probate

estate. The Debtor also filed an objection to a new proof of claim filed by the MDOR in

which it also included estate tax claims. At a hearing on March 22, 2017, the Court

deemed the § 505 Motion to be a contested matter to which the Part VII of the Federal

Rules of Bankruptcy Procedure applied and consolidated determination of the § 505

Motion with the Debtor's Objection to IRS's proof of claim relating to the estate tax of his

deceased mother and his transferee liability.

On May 24, 2017, the Debtor filed a Motion for Summary Judgment Relative to

Estate Tax Claim of the United States seeking a determination that the proof of claim bar

date prevented the United States from filing a new or amended proof of claim. He filed

a similar motion with respect to the new proof of claim filed by the MDOR.

With respect to the Motion to Convert, the United States supplemented its motion

on May 15, 2017. In its supplement, it included "(1) an additional substantial income tax

liability of the Debtor, and (2) the attached pro forma tax computations, which confirm

the Trustee's recently indicated view that this is a no-surplus case with post-petition

estate income (under § 1115) insufficient to make up any shortfall in satisfying secured,

administrative, and priority claims from a plan of liquidation so as to make any other

plan feasible." The Trustee filed a response in support of conversion in which she

observed:

> In the Conversion Motion, the IRS asserts (1) that the Debtor acted in bad
> faith in asserting a value of the Hingham Property for estate tax purposes
> that is a fraction of the value he asserted for capital gain income tax

7

purposes; and (2) that the Debtor cannot confirm a Chapter 11 plan which
pays the IRS claim in full. The Court need not await discovery or determine
the precise amount of the Debtor's liability (as beneficiary or executor) for
the estate tax due from his late mother's estate in order to rule on either of
these issues. Both constitute grounds for conversion of this case to Chapter
7, supported by a factual record that is already properly before this Court.
*See* 11 U.S.C. § 1112(b)(4)(A) (absence of a reasonable likelihood of
rehabilitation).

(footnote omitted).  On May 30, 2017, the Court continued the United States' Motion to

Convert generally.

On September 8, 2017, this Court issued a Memorandum and Order denying the

Motion by Respondent, Robert J. Spenlinhauer for Summary Judgment Relative to Estate

Tax Claim of the United States of America. The Court granted the Cross-Motion for

Partial Summary Judgment filed by the IRS as well as its Motion to Permit Late-Filed Tax

Claim and indicated that it would schedule a further hearing with respect to the § 505

Motion.  *See* In re Spenlinhauer, 572 B.R. 18 (Bankr. D. Mass. 2017). The Court issued a

similar memorandum and order with respect to the Debtor's Motion for Summary

Judgment Relative to Estate Tax Claim of the MDOR.  *See* In re Spelinhauer, 573 B.R. 343

(Bankr. D. Mass. 2017).

At the time the Court issued its decisions, the Court had determined that Debtor's

Seventh Amended Plan of Reorganization had not been accepted by at least one impaired

class of claims.  On March 22, 2017, the Court continued the hearing on confirmation

generally.

On September 29, 2017, the United States filed a "Motion that the Court Revisit

Conversion before Proceeding Further in Section 505 Contested Matter" to which the

Debtor objected.  Both the United States and the Debtor moved to continue the hearing

on the United States' Motion.  On November 8, 2017, this Court issued the following

order:

> The Court shall hear both the United States of America's Motion to Convert
> Case to Chapter 7 and Motion to Determine Tax Liability Pursuant to
> Section 505(a)(1) at the same time. The Court directed that discovery with
> respect to both motions be completed within 60 days. A non-evidentiary
> hearing shall be held on January 24, 2018 at 1:00 p.m. regarding the Motion
> of the United States of America to Convert Case (Doc. #1112) and the
> Motion of the United States of America to Determine Tax Liability Pursuant
> to Section 505(a)(1) (Doc. #1098).

On January 2, 2018, the Chapter 11 Trustee filed an Expedited Motion to Secure

and Store Vehicles to Preserve Estate Property in the Face of Eviction.  Following requests

for continuances, the Court scheduled that Trustee's Expedited Motion for January 24,

2018.  At that hearing, the Court scheduled an evidentiary hearing for June 19, 2018 on

the § 505 Motion, as well as United States' Motion to Convert.  The Court issued the

following order with respect to the Trustee's Expedited Motion to Secure and Store

Vehicles:

> Upon consideration of 1) the Chapter 11 Trustee's Expedited Motion to
> Secure and Store Vehicles to Preserve Estate Property in the Face of Eviction
> (the "Motion to Secure Vehicles"); 2) the Debtor's Response to the Motion
> to Secure Vehicles; 3) the Response of Jackson Hole Classic Cars, LLC
> ("Jackson Hole") and Erik D. Josephson ("Josephson") to the Motion to
> Secure; 4) the arguments of counsel to the parties at the hearing held on
> January 24, 2018; 5) the record of proceedings in this case, the Court finds
> that, on balance, the proposal made by the Chapter 11 Trustee to secure and
> store the vehicles is preferable to the proposal by Josephson to transport the
> Debtor's vehicles and vehicles titled in the name of Jackson Hole (which are
> the subject of an avoidance and recovery action by the Trustee)
> approximately 180 miles to Parsonsfield, Maine and store them in an
> uninsured "barn." Jackson Hole, Josephson, and the Debtor did not provide
> any details on how the vehicles were going to be transported to Maine. The

9

Court finds that, although the Trustee's storage proposal is more costly than the other proposal, the vehicles are more secure in the possession of a licensed auctioneer, especially where neither the Debtor's attorney nor counsel to Jackson Hole and Josephson had any information about the Parsonsfield, Maine property other than it is in a rural area. Moreover, Josephson and Jackson Hole did not present a proposal for returning the vehicles to Massachusetts in the event the Trustee were to be authorized to take possession of the vehicles. Because the Court finds that the Trustee's proposal presents less risk of loss to the estate than the Josephson/Jackson Hole proposal, the Court grants the Motion to Secure and Store Vehicles.

On February 2, 2018, the Debtor filed an Expedited Motion to Vacate the Court's January 24, 2018 order in which he requested the Court to schedule an evidentiary hearing. The Trustee objected. Following the filing of a response from the Debtor, the Court issued an order, dated February 27, 2018, denying the Debtor's Motion to Vacate. In the Court's order, the Court observed the following:

At the January 24, 2018 hearing, counsel to the Debtor and counsel to Jackson Hole were unprepared to address the merits of the Trustee's Expedited Motion to Secure and Store Vehicles. Indeed, they were unable to answer numerous questions posed by the Court about the barn and their proposal to move the vehicles to Parsonsfield, Maine. The Debtor in his Motion to Vacate neither mentions Fed. R. Bankr. P. 9023 nor Fed. R. Bankr. P. 9024. He does not contend that this Court made a manifest error of fact or law. Moreover, the Debtor, through counsel, did not request an evidentiary hearing on January 24, 2018. In view of the Debtor's prior conduct with respect to insurance proceeds and certain vehicles, conduct that at least in part precipitated this Court's decision to appoint a Chapter 11 Trustee, this Court shares the Trustee's skepticism as to the wisdom of transporting vehicles to a remote area of Maine and storing them in a barn that will be uninsured before March 11, 2018. The Debtor's Motion to Vacate simply highlights the Debtor's use of the January 24, 2018 hearing as "dress rehearsal."

On March 6, 2018, the Trustee filed a "Status Report Regarding Implementation of the Court's Order Requiring the Debtor and Jackson Hole Classic Cars LLC to Turnover Vehicles to the Trustee" in which the Trustee noted the Debtor's failure to comply with

the Court's January 24, 2018 order.    The Court, on March 7, 2018, promptly issued the

following order to show cause:

> Upon consideration of 1) the Court's order, dated January 24, 2018, granting
> the Trustee's Expedited Motion to Secure and Store Vehicles to Preserve
> Estate Property in the Face of Eviction (Docket No. 1312); 2) the Debtor's
> Motion to Vacate Document No. 1312, Schedule Evidentiary Hearing
> Relative to Storage of Vehicles Owned by the Debtor; 3) the Court's order,
> dated February 27, 2018, denying the Debtor's Motion to Vacate; 4) the
> Chapter 11 Trustee's Status Report Regarding Implementation of the
> Court's Order Requiring the Debtor and Jackson Hole Classic Cars LLC to
> Turnover Vehicles to the Trustee, the Court orders the Debtor to show
> cause, in writing, on or before March 9, 2018 at noon why he should not be
> held in contempt for failure to obey a lawful order of the Court and why his
> Chapter 11 case should not be converted to a case under Chapter 7 or
> dismissed under 11 U.S.C. Sec. 1112(b). *Any party in interest may file a*
> *response to the order to show cause or other motion or request for relief relative to*
> *the Trustee's Status Report by March 9, 2018 at noon.* The Debtor shall appear
> at a hearing on March 12, 2018 at 10:00 am to respond to the order to show
> cause and other requests for relief.

(emphasis added).    On March 9, 2018, the United States filed a Response in which it

stated:

> The Debtor has disobeyed the Court's order regarding turnover vehicles,
> which is yet another example of why the Debtor cannot be trusted to fulfill
> his duties as a debtor in Chapter 11 bankruptcy. And as discussed below,
> conversion will moot other issues in this case, as well, and likely avoid
> various potential appeals regarding other issues. While the Debtor may of
> course appeal conversion, he could not possibly establish that conversion
> would be an abuse of discretion given the history of this case.

The United States indicated that it had filed an amended proof of claim containing an

estate tax-related secured claim in the amount of $3,570,266.62 and an estate tax-related

general unsecured claim in the amount of $414,077.38, plus penalties and interest, in

addition to federal income tax claims for years 2005 (priority under § 507(a)(8)(iii)), 2010

(secured), and 2011 and 2012 (priority under § 507(a)(8)(i)). It also indicated that it had

11

filed a Request for Payment of Administrative Tax Expense in the amount of $836,123.15,

plus interest "because, if the Court were to accept the Debtor's value of the Hingham

Property for estate tax purposes, it will mean there was a large taxable gain on the sale of

that property by the Trustee."   In addition to the foregoing claims and requests for

payment, the United States indicated that it "takes the position that it has a secured claim

with respect to at least the vehicles titled in the Debtor's name pursuant to the 'like lien'

under 26 U.S.C. § 6324(a)(2)," adding that that provisions "provides that where a

recipient of property included in the gross estate under 26 U.S.C. §§ 2034 to 2042 sells or

mortgages the property, the purchaser or mortgagee takes free of the automatic 10-year

estate tax lien under 26 U.S.C. § 6324(a)(1), but a "like lien" attaches to all property of the

recipient" and that "[t]he Hingham Property was subject to the original estate tax lien

and the Debtor mortgaged it after the death of Georgia M. Spenlinhauer, causing a 'like

lien' to attach to all of his assets in an amount equal to the amount of the mortgage (which

had to be paid when the estate sold the Hingham Property in 2015)."

The United States also argued that conversion would moot several issues in the

case, including the late-filed claim issue, and a jurisdictional issue with respect to the §

505 Motion. Moreover, the United States proposed a road map for the Court's

consideration:

> (1) grant the Chapter 11 Trustee a § 506(c) expense claim (since virtually all
> of her expenses so far have been for preservation of the estate) to whatever
> extent assets not secured by the estate tax lien are insufficient to pay her
> expenses; (2) convert the case to Chapter 7, in which event the United States
> Trustee will presumably appoint the Chapter 11 Trustee as the Chapter 7
> Trustee (and if not, the United States, which has the majority of the general
> unsecured claims, will vote for her election under § 702); (3) have the

Trustee liquidate the remaining estate assets, and (4) pay Chapter 7 administration expenses and proceed to a final distribution with a stipulation under a Trustee/IRS agreement regarding the amount of the estate tax and the assets subject to the lien that includes the right of the Chapter 7 Trustee to a tax refund (with interest) in the unlikely event that the Debtor files a Tax Court petition and prevails to such an extent that the sum of all the taxes ends up being less than the liquidation distribution to the IRS. As an alternative to part (4) of this roadmap, the Chapter 7 Trustee could defer final distribution until the conclusion of any Tax Court case (including appeals).

The Debtor filed a Response to the order to show cause in which he stated that "[c]onversion of this case to Chapter 7 is not warranted or necessary and there has been no notice of the request to convert to Chapter 7 as required by Federal Rule of Bankruptcy Procedure 2002(a)(4)." He recognized that the only remaining issues in the case were the disputed tax claims of the United States and the Commonwealth of Massachusetts. He also represented that "[a]ll vehicles are safe" and that "[a]ny issues regarding Mr. Spenlinhauer's alleged untruthfulness which gave rise to the appointment of the Chapter 11 Trustee were addressed at the evidentiary hearings conducted by this Court in the Motion of the Chapter 11 Trustee for Conversion to Chapter 7" and that "[c]onversion of this case to Chapter 7 is not in the best interest of creditors or the estate as required by 11 U.S.C. 1112(b)." He concluded by consenting to dismissal of his Chapter 11 case.

Neither the U.S. trustee nor the Chapter 11 Trustee filed a Response to the Order to Show Cause.

On March 9, 2018, the Court dismissed the Debtor's Chapter 11 case, citing the absence of responses or requests for relief from Chapter 11 Trustee, the U.S. trustee, the MDOR, or any other creditor or party in interest, as well as the entire record of

proceedings in this Chapter 11 case.  In addition, the Court canceled the hearing scheduled for March 12, 2018 on the order to show cause.

The Court's dismissal order prompted the filing of an appeal by the Chapter 11 Trustee as well as numerous motions, including the Trustee's Motion for Reconsideration and Motion for Stay Pending Appeal.  On March 14, 2018, the Court ordered "the Debtor, the United States of America, and the Massachusetts Department of Revenue to file a statement in support of, or in opposition to, the Motion of Chapter 11 Trustee for Reconsideration of, or to Vacate the Court's Order Dismissing the Case no later than March 19, 2018 at 4:30 pm," adding "[o]ther parties in interest must file responses no later than March 19, 2018 at 4:30 pm if they wish their position to be considered."  In addition, the Court granted the Trustee's Motion for Stay Pending Reconsideration, stating "The Court 1) stays the effectiveness of the dismissal order; 2) orders the re-vesting of the Debtor's property in the Estate; and (3) orders that the existing injunctions in the Adversary Proceedings (Adv. P. No. 16-1064, Adv. P. No. 16-[1138]) remain in effect."

The Chapter 11 Trustee, the United States, the MDOR, and the Debtor filed responses to the Court's order.   The United States filed its own "Motion for Reconsideration of Order Dismissing Case, or, in the Alternative, an Order Determining that Cause Exists under Section 349(b) for a Distribution Order." The Trustee and the U.S. trustee filed Replies to the Debtor's Response.   The Debtor, in turn, filed replies to responses filed by the United States, the MDOR, and the Trustee, highlighting legal deficiencies with respect to a proposal advanced by the Debtor pursuant to which he would make available approximately 50% of the monies held by the Trustee to the

14

payment of his unsecured creditors. *See* Czyzewski v. Jevic Holding Corp., __ U.S. __, 137 S. Ct. 973 (2017). The Court scheduled a hearing on March 26, 2018 to determine the merits of the Motion to Reconsider, and the United States filed a Reply to the MDOR's Response, challenging its support of dismissal (a position it repudiated at the hearing on March 26, 2018).

On March 26, 2018, the Court conducted a hearing on the Trustee' Motion to Reconsider and directed the parties to supplement their submissions to address the issue of whether dismissal or conversion was in the best interests of creditors. At the hearing, the parties also addressed the Debtor's decision, in his capacity as executor of the probate estate of Georgia Spenlinhauer, to file a petition with the United States Tax Court in response to the IRS's Notice of Deficiency issued to the Estate of Georgia Spenlinhauer on January 25, 2018, as well as the  United States' Notice of Jeopardy Assessment, and the Debtor's Application for Abatement filed with the MDOR pursuant to which the Debtor seeks an abatement of taxes assessed on March 17, 2017.  Both the Trustee and the United States emphasize that conversion, rather than dismissal, is in the best interests of creditors.

In particular, the Trustee, referencing pro forma analyses of distributions in the case under Chapter 11 and Chapter 7 used two differing assumptions about the pending dispute over whether the Debtor is liable for probate estate tax from the estate of his late mother, Georgia Spenlinhauer, who died in 2005, with the "key variable" to a determination of the amount of probate estate tax being the value of the Hingham

Property sold during this case in 2015.[5]  While assuming that the Debtor will be liable for

probate estate taxes, she contends that the two pending adversary proceeding avoidance

actions to be unencumbered,[6] although she assumes (subject to a reservation of rights)

that the IRS has a lien on all other property of the bankruptcy estate.  She adds:

> The Trustee has not produced a pro forma of what creditors could receive
> in a Dismissal, but notes that any proceeds from the pending adversary
> proceedings would be available in a Chapter 11 or Chapter 7, but not in case
> of Dismissal. And, for comparison, the Trustee points to the Debtor's recent
> proposal (whether or not a structured dismissal) to provide a pot of
> $500,000 for all priority and unsecured creditors. Either the Chapter 11 or
> Chapter 7 envisioned by the Trustee would be better for all creditors than
> the Debtor's treatment of them upon Dismissal.

---

[5] According to the Trustee, "Scenario A reflects the Debtor as liable for probate estate tax
in the amounts set forth in the proofs of claim filed by the tax authorities, and no 2015
fiduciary income tax. Scenario B reflects the bankruptcy estate as liable for the 2015
fiduciary income tax set forth in claims and requests for payment of administrative
priority tax filed by the tax authorities, and no probate estate tax liability."  She opines
that Scenario A is more likely.

[6] The first adversary proceedings is captioned as <u>Riley v. Erik D. Josephson, Individually
and as Trustee and Beneficiary of Winding Ray Realty Trust</u> (Adv. P. No. 16-01064).
According to the Trustee, the Debtor obtained title to the subject real property (84
Winding Way, Plymouth, MA) by deed recorded on August 17, 1998, by quitclaim deed
from his mother, Georgia Spenlinhauer, and transferred the property by deed recorded
on January 23, 2013 to Erik D. Josephson, Trustee of Winding Way Realty Trust, allegedly
for no consideration. By quitclaim deed recorded on May 13, 2016, which was after the
Trustee initiated the adversary proceeding, Josephson transferred the property via
quitclaim deed to Stephen Nicolson and Elizabeth LaMorte. The net sale proceeds are in
the approximate amount of $375,120, according to the Trustee are currently held in
escrow. The second adversary proceeding is captioned <u>Riley v. Jackson Hole Classic Cars,
LLC and Erik D. Josephson</u> (Adv. P. No. 16-01138). According to the Trustee, in January
2013, about the time of the fraudulent transfer of the real property noted above, the
Debtor transferred six vehicles, which were titled in his name, to Jackson Hole Classic
Cars, LLC ("JHCC"), allegedly for no consideration. Josephson is allegedly the sole
member and manager of JHCC. The replacement value of the vehicles for insurance
purposes is approximately $305,000.

The United States briefed several issues: whether avoidance power recoveries would be subject to its automatic 10-year estate tax lien pursuant to 26 U.S.C. § 6324(a); and whether the MDOR could intervene in the Tax Court matter and whether it would be bound by a final judgment issued by the United States Tax Court.  With respect to the first issue, the United States maintains:

> [I]n addition to having an estate tax lien under 26 U.S.C. ("IRC") § 6324(a)(1) on the proceeds of sales of real property located in Hingham and Milton, Massachusetts, it has a secured claim with respect to other property that is currently property of the bankruptcy estate pursuant to the "like lien" under IRC § 6324(a)(2), which provides that where a recipient of property included in the gross estate under IRC §§ 2034 to 2042 sells or mortgages the property, the purchaser or mortgagee takes free of the automatic 10-year estate tax lien under IRC § 6324(a)(1), but a "like lien" attaches to all property of the recipient.

Nevertheless, the United States recognizes that there is a substantial issue as to whether the "like lien" would attach to any fraudulent transfer recoveries arising out of the adversary proceedings.  The United States represents:

> Without addressing that issue for any other cases, *counsel for the United States has discussed this issue with counsel for the MDOR and represents that both taxing authorities are willing to stipulate that any recovery of property by the Trustee through either adversary proceeding is not subject to either taxing authority's automatic 10-year estate tax lien.*

(emphasis supplied).

The Debtor in his responses and memoranda rejects conversion of his Chapter 11 case to a case under Chapter 7 as a viable option.  He observes that "of course the IRS and DOR favor conversion to Chapter 7 since their disputed Estate Tax claims will be deemed allowed regardless of what occurs in U.S. Tax Court and the Massachusetts Appellate Tax Board."  He also argues that if the case is dismissed "his continuing obligation to

17

creditors is superior to a possible maximum dividend of 6.44% to 3.81% at some uncertain time in the future."   The Debtor also contends that he will be irreparably harmed by conversion based upon either of the Trustee's scenarios because once his assets are sold, they cannot be replaced.  He maintains that his classic and prized automobiles cannot be replaced, adding that valuable real estate in Mashpee and Sandwich, Massachusetts, as well as in Maine and New Hampshire also cannot be replaced.

Finally, the Debtor reiterates his arguments that the Trustee has not established grounds for reconsideration, relying upon In re Mictchell, No. 10-20059-JNF, 2011 WL 802080 (Bankr. D. Mass. March 2, 2011).  The decision in Mitchell involved a motion to extend the deadline for filing a notice of appeal.  In that case, this Court observed:

> [T]here still must be a satisfactory explanation for the late filing. We have observed that "'[t]he four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry. . . .'" Hosp. del Maestro, 263 F.3d at 175 (quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir.2000)). This focus comports with the Pioneer Court's recognition that "*inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.*" 507 U.S. at 392, 113 S. Ct. 1489, 123 L.Ed.2d 74.

In re Mitchell, 2011 WL 802808, at *4 (citing Graphic Commc'ns Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir. 2001) (emphasis supplied).

## III. DISCUSSION

### A. Standard for Reconsideration

The Trustee seeks reconsideration or an order vacating this Court's March 9, 2018 order cancelling the March 12, 2018 hearing on the March 7, 2018 order to show cause

and dismissing the Chapter 11 case.  She asserts that the Court dismissed the case

"without an opportunity for estate officers or creditors to be heard on the proper remedy

for the Debtor's contempt of this Court."  Specifically, the Trustee states that she "seeks

reconsideration of the Dismissal, and either restoration of the Chapter 11 under her

supervision as Trustee or a new hearing on the Order to Show Cause regarding relief

under Bankruptcy Code section 1112(b) at which she would demonstrate that conversion,

rather than dismissal, is in the best interest of creditors and the estate."  The Trustee relies

upon Fed. R. Civ. P. 59 and 60, made applicable by Fed. R. Bankr. P. 9023 and 9024.

Notably, the Trustee did not reference a specific subsection of Rule 60(b), which provides

in pertinent part the following:

> On motion and just terms, the court may relieve a party or its legal
> representative from a final judgment, order or proceeding for the following
> reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not
> have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an
> earlier judgment that has been reversed or vacated; or applying it
> prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Nevertheless, at the hearing conducted on March 26, 2018, the

Trustee referenced excusable neglect under Rule 60(b)(1) for her failure to file a response

to the Court's order to show cause.

The United States Bankruptcy Appellate Panel of the First Circuit in Nieves

Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854 (B.A.P. 1st Cir. 2017),

set forth the legal framework for motions for reconsideration.  The panel observed, in

pertinent part the following:

> As a starting point, motions for reconsideration are not recognized by the
> Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy
> Procedure.  In re Ortiz Arroyo, 544 B.R. 751, 756 (Bankr. D. P.R. 2015)
> (citation omitted).  Bankruptcy courts usually treat a motion for
> reconsideration as either a motion to alter or amend a judgment under Rule
> 59(e), made applicable in bankruptcy by Bankruptcy Rule 9023, or as a
> motion for relief from judgment under Rule 60(b), made applicable in
> bankruptcy by Bankruptcy Rule 9024. *See* Surita Acosta v. Reparto Saman
> Inc. (In re Surita Acosta), 497 B.R. 25, 31 (Bankr. D. P.R. 2013) (citations
> omitted) (noting motion for reconsideration implicates either Rule 59(e) or
> 60(b)).  "'These two rules are distinct; they serve different purposes and
> produce different consequences.'"  In re Ortiz Arroyo, 544 B.R. at 756
> (quoting Lopez Jimenez v. Pabon Rodriguez (In re Pabon Rodriguez), 233
> B.R. 212, 219 (Bankr. D.P.R. 1999), *aff'd,* 17 Fed. Appx. 5 (1st Cir.  2001)).
>
> . . . [E]ven where the movant designates a particular rule, "[t]he substance
> of the motion, not the nomenclature used or labels placed on motions, is
> controlling." In re Lozada Rivera, 470 B.R. 109, 113 (Bankr. D. P.R.  2012).
> Under either rule, "the granting of a motion for reconsideration is 'an
> extraordinary remedy which should be used sparingly.'"  Palmer v.
> Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citations omitted); *see also*
> In re Lozada Rivera, 470 B.R. at 112. . . .
>
> Rule 59(e) does not state the grounds on which relief may be granted, and
> courts have "considerable discretion" in deciding whether to grant or
> deny a motion under the rule. ACA Fin. Guar. Corp. v. Advest, Inc., 512
> F.3d 46, 55 (1st Cir. 2008). It is well settled in the First Circuit that to meet
> the threshold requirements of Rule 59(e), the motion "must demonstrate
> the 'reason why the court should reconsider its prior decision' and 'must

set forth facts or law of a strongly convincing nature' to induce the court to reverse its earlier decision." In re Arroyo, 544 B.R. at 756–57 (quoting In re Pabon Rodriguez, 233 B.R. at 219). The movant must either clearly establish a manifest error of law or fact or must present newly discovered evidence that could not have been discovered during the case. See Banco Bilbao Vizcaya Argentaria P.R. v. Santiago Vázquez (In re Santiago Vázquez), 471 B.R. 752, 760 (1st Cir. B.A.P. 2012) (citing Aybar v. Crispin–Reyes, 118 F.3d 10, 16 (1st Cir. 1997)); see also Marie, 402 F.3d at 7 n.2 (citations omitted). "A motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (citations omitted) (internal quotations omitted). "In practice, [Rule] 59(e) motions are typically denied because of the narrow purposes for which they are intended." In re Arroyo, 544 B.R. at 757 (citation omitted).

Rule 60(b) "seeks to balance the importance of finality against the desirability of resolving disputes on the merits." Farm Credit Bank of Baltimore v. Ferrera–Goitia, 316 F.3d 62, 66 (1st Cir. 2003) (citation omitted). In contrast to Rule 59(e), it sets forth the grounds for relief. . . .

In re Nieves Guzman, 567 B.R. at 862–64.

B. Analysis

The Court concludes that the Trustee has demonstrated excusable neglect under Fed. R. Bankr. P. 9024 and Fed R. Civ. P. 60(b)(1). Consistent with the observation of this Court in Mitchell, the Trustee provides a satisfactory explanation for failing to respond to the Court's order to show cause. The Court's March 7, 2018 order to show cause was directed to the Debtor "to show cause, in writing, on or before March 9, 2018 at noon why he should not be held in contempt for failure to obey a lawful order of the Court and why his Chapter 11 case should not be converted to a case under Chapter 7 or dismissed under 11 U.S.C. Sec. 1112(b)." The Court's order further provided that "Any party in interest may file a response to the order to show cause or other motion or request for relief relative

to the Trustee's Status Report by March 9, 2018 at noon." (emphasis supplied). The Trustee, as an officer of the Court, represented that she intended to appear at the March 12, 2018 hearing, which the Court canceled when it enforced its order to show cause and dismissed the case. The Court observes that the language it employed did not mandate that the Trustee file a response to the order to show cause. In view of the Trustee's own motion to convert the Debtor's case to a case under Chapter 7 as well as her consistent support for the motion to convert filed by the United States, the Court concludes that the Trustee's neglect in failing to oppose dismissal was excusable, particularly where the deadline for filing a response was short and compliance with the Court's order to show cause was not directed to the Trustee and did not mandate a response.

In In re Balser, No. 10-17292-JNF, 2013 WL 4409187 (Bankr. D. Mass. July 23, 2013), and RBSF, LLC v. Franklin (In re Franklin), 445 B.R. 34 (Bankr. D. Mass. 2011), this Court observed:

> According to the United States Court of Appeals for the First Circuit, in the context of a motion to vacate a default judgment, Rule 60(b)(6), "is a catch-all provision" and "[t]he decision to grant or deny such relief is inherently equitable in nature." Ungar v. The Palestine Liberation Organization, 599 F.3d 79, 83 (1st Cir. 2010) (citing United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25–26 & n. 10 (1st Cir. 2006); and Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc., 953 F.2d 17, 19–20 (1st Cir.1992)). According to the First Circuit, however, "it is the invariable rule, and thus, the rule in this circuit, that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." Teamsters, 953 F.2d at 20. Additionally,
>
> > A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of

> defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. Id. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may-or may not-justify the extraordinary remedy of vacatur.
>
> Ungar, 599 F.3d at 83–84 (footnote omitted, citations omitted). Thus, the contours of a motion for reconsideration, determination of which is reviewed for abuse of discretion, is "peculiarly malleable" and "hard-and-fast rules generally are not compatible with Rule 60(b)(6) determinations." Id. at 84 (citations omitted).

Balser, 2013 WL 4409187, at *8 (quoting Franklin, 445 B.R. at 46).

This Court concludes that the factors identified in Ungar weigh heavily in favor of the Trustee. The Debtor was not prejudiced by an absence of a response from the Trustee because the United States argued for conversion. The Trustee, however, was prejudiced by the Court's decision to dismiss the case prior to the scheduled hearing, particularly where she has amassed cogent and compelling arguments that dismissal is not in the best interests of the estate. While reconsideration is an extraordinary remedy, it is compelled here. As an equitable remedy, it is justified under the circumstances of this case.

In addition, the Court finds that the Trustee presented evidence that dismissal would not be in the best interests of creditors, by emphasizing the potential avoidance power recoveries to which the liens of the United States and the MDOR, by agreement, will not attach.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Trustee's Motion to Reconsider and vacating its order dismissing the Debtor's Chapter 11 case. The

motions for stay pending appeal are moot, as is the request of the United States for an

order of distribution under 11 U.S.C. § 349(b).

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  April 5, 2018