UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT J. SPENLINHAUER,**  Chapter 11
    Debtor  Case No. 13-17191-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

**I. INTRODUCTION**

The matter before the Court is the Motion of Robert J. Spenlinhauer (the "Debtor") for Stay Pending Appeal (the "Stay Motion") of this Court's order dated February 27, 2018, denying his "Motion of Debtor to Vacate Document No. 1312, Schedule Evidentiary Hearing Relative to Storage of Vehicles Owned by the Debtor and Jackson Hole Classic Cars, LLC and Request for Expedited Consideration" (the "Motion to Vacate"). Specifically, through his Stay Motion, the Debtor seeks a stay of this Court's order refusing to vacate the allowance of the Chapter 11 Trustee's "Expedited Motion to Secure and Store Vehicles to Preserve Estate Property in the Face of Eviction" (the "Motion to Secure Vehicles") which required him and Jackson Hole Classic Cars, LLC ("Jackson Hole")[1] to turn over vehicles to the Trustee for storage. The Chapter 11 Trustee opposes the Debtor's Stay Motion.

---

[1] Jackson Hole Classic Cars, LLC and Erik Josephson ("Josephson"), its manager and sole member, are defendants in an adversary proceeding brought by the Trustee which is pending before this Court as Adv. P. No. 16-1138.

1

## II. BACKGROUND

On January 2, 2018, the Chapter 11 Trustee filed her Motion to Secure Vehicles, seeking the following:

> an Order (i) pursuant to 11 U.S.C. § 542 requiring the Debtor . . . to turn over to the custody and control of the Trustee all of the Debtor's non-exempt vehicles, boats, recreational vehicles and related equipment ("Vehicles"), and (ii) authorizing the Trustee to secure and store vehicles (the "JHCC Vehicles") owned by Jackson Hole Classic Cars, LLC ("Jackson Hole") because the Debtor and Jackson Hole's principal face imminent eviction from the property at which these vehicles are stored, placing this valuable estate property at risk.

(footnote omitted). Alternatively, the Trustee sought "an order requiring the Debtor and Jackson Hole to submit detailed plans to properly transport and store the Vehicles and the JHCC Vehicles and to carry out such plans ahead of any eviction."

The Debtor and Jackson Hole filed responses to the Motion to Secure Vehicles and the Court heard the matter on January 24, 2018. At the conclusion of the hearing, the Court found that "on balance, the proposal made by the Chapter 11 Trustee to secure and store the vehicles is preferable to the proposal by Josephson to transport the Debtor's vehicles and vehicles titled in the name of Jackson Hole (which are the subject of an avoidance and recovery action by the Trustee) approximately 180 miles to Parsonsfield, Maine and store them in an uninsured 'barn.'" The Court added:

> Jackson Hole, Josephson, and the Debtor did not provide any details on how the vehicles were going to be transported to Maine. The Court finds that, although the Trustee's storage proposal is more costly than the other proposal, the vehicles are more secure in the possession of a licensed auctioneer, especially where neither the Debtor's attorney nor counsel to Jackson Hole and Josephson had any information about the Parsonsfield, Maine property other than it is in a rural area. Moreover, Josephson and Jackson Hole did not present a proposal for returning the vehicles to

> Massachusetts in the event the Trustee were to be authorized to take possession of the vehicles. Because the Court finds that the Trustee's proposal presents less risk of loss to the estate than the Josephson/Jackson Hole proposal, the Court grants the Motion to Secure and Store Vehicles.

On February 6, 2018, the Debtor filed the Motion to Vacate the Court's order of January 24, 2018 and requested an evidentiary hearing for the first time.  The Trustee filed a response and on February 27, 2018, the Court denied the Motion to Vacate, treating it, in essence, as a motion for reconsideration.  While noting the Debtor's arguments about security at the barn in Parsonsfield, Maine, the Court stated:

> At the January 24, 2018 hearing, counsel to the Debtor and counsel to Jackson Hole were unprepared to address the merits of the Trustee's Expedited Motion to Secure and Store Vehicles. Indeed, they were unable to answer numerous questions posed by the Court about the barn and their proposal to move the vehicles to Parsonsfield, Maine. The Debtor in his Motion to Vacate neither mentions Fed. R. Bankr. P. 9023 nor Fed. R. Bankr. P. 9024. He does not contend that this Court made a manifest error of fact or law. Moreover, the Debtor, through counsel, did not request an evidentiary hearing on January 24, 2018. In view of the Debtor's prior conduct with respect to insurance proceeds and certain vehicles, conduct that at least in part precipitated this Court's decision to appoint a Chapter 11 Trustee, this Court shares the Trustee's skepticism as to the wisdom of transporting vehicles to a remote area of Maine and storing them in a barn that will be uninsured before March 11, 2018. The Debtor's Motion to Vacate simply highlights the Debtor's use of the January 24, 2018 hearing as [a] "dress rehearsal."

The Debtor filed a Notice of Appeal with respect to the Court's February 27, 2018 order on March 9, 2018, the same day this Court entered an order dismissing the Debtor's Chapter 11 case.  The Court subsequently vacated the order dismissing the Debtor's case on April 5, 2018, *see* In re Spenlinhauer, Case No. 13-17191, 2018 WL 1684294 (Bankr. D. Mass. April 5, 2018), and, eight days later, the Debtor filed his Stay Motion.

**III. POSITIONS OF THE PARTIES**

The Debtor maintains that he has a strong and substantial likelihood of success on the merits of his appeal.  In so doing, he relies on information that was not presented to the Court at the time of the original hearing on January 24, 2018.  Specifically, he represents that the barn is a two-story facility with "a vast, elaborate structural post and beam interior framework," equipped with 300 amp electric service, smoke detectors, "an alarm system installed with ADT," and a "Central Maine Power Alert System."  In addition, he represents that he and Josephson are "in the process of installing a state of the art alarm surveillance system that will allow new infrared cameras to visibly record any activity on the property or the driveway" and enable communication with any unauthorized person on the premises.  The Debtor also represents that he and Josephson are on the premises full time to monitor the safety and care of the vehicles.  The Debtor contends that it is unnecessary for the estate to expend funds for storage and towing, especially until the disputed estate tax claims of the United States and the Massachusetts Department of Revenue are resolved.

The Debtor argues that he will be irreparably harmed if his vehicles are damaged during the towing and storage process, that the balance of harms favors him, and the public interest is advanced by enabling an individual Chapter 11 debtor to be allowed to maintain his vehicles in a safe and secure location, "not subject to possible damage at a location where public auction sales are held."

The Trustee rejects the Debtor's assertion of a likelihood of success on the merits pointing to the Court's reasoning and "dress rehearsal" observation in its February 27,

2018 order and noting that "to support that assertion, he makes new factual allegations as to why he should be allowed to keep and use the estate property at issue, rather than turn the vehicles over to the Trustee per the Court's [January 24, 2018] Turnover Order. In so doing, he undermines, rather than supports, the appeal of the [February 27, 2018] Order Denying the Motion to Vacate." The Trustee also points out that the Debtor ignores the legal basis for this Court's denial of the Motion to Vacate.

The Trustee also points out that Jackson Hole did not file a Notice of Appeal so that this Court's order of January 24, 2018 must be enforced as to it, and the Debtor should not be in control of Jackson Hole vehicles. In other words, were this Court to grant the Debtor's Stay Motion, any stay should only extend to vehicles titled in the Debtor's name. The Trustee contends that the Parsonsfield property is not adequately supervised or attended, observing that it is unclear who is living in the structure and that the property should be insured regardless of whether vehicles are stored there or not. The Trustee reiterates her contentions that 1) the remote monitoring and alarm systems are inadequate; and 2) storing the vehicles in a remote area diminishes the likelihood of a successful sale of the vehicles if the Court were to authorize a sale, particularly where there has been no commitment to return the vehicles to Massachusetts. Finally, the Trustee states:

> [T]he Debtor has identified seven other locations where at least 15 of the vehicles have been moved. *See* doc. 1321, 1322 (Trustee's Status Report and Exhibits). None of the proffered "safeguards" for the Parsonsfield Property apply to these locations, and no other information about the propriety of these storage and custody arrangements has been provided. The Trustee opposes the transfer of estate property to these locations.

5

**IV. STANDARD FOR DETERMINING MOTIONS FOR STAY PENDING APPEAL**

"The standard for determining whether to grant a motion for stay pending appeal is similar to that for obtaining an injunction." In re Corbett, No. 11-13667-JNF, 2018 WL 1229717, at *3 (Bankr. D. Mass. Mar. 8, 2018) (citing Elias v. Sumski (In re Elias), 182 F. App'x. 3, 2006 WL 1514314 (1st Cir. 2006)). The four-part standard applicable to preliminary injunctions applies to determining motions for stay pending appeal. Thus, the court must determine "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies[.]" In re Elias, 182 F. App'x. at 4 (quoting Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16, n.3 (1st Cir. 2002)). *See also* In re Miraj and Sons, Inc., 201 B.R. 23, 26 (Bankr. D. Mass. 1996). "'The sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits. In essence, the issuance of a stay depends on whether the harm caused movant without the stay, in light of the movant's likelihood of eventual success on the merits, outweighs the harm the stay will cause the non-moving party.'" Acevedo–Garcia v. Vera–Monroig, 296 F.3d at 16–17 (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)). "'What matters . . . is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits,'" In re Elias, 182 F. App'x. at 4 (citations omitted).

> "To establish irreparable harm, the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate. Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15

(1st Cir. 1996)). "If the [movant] suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel.'" Id. at 19.

In re Catholic School Employees Pension Trust, No. 18–00108 (ESL), 2018 WL 1577704, at *2 (Bankr. D. P.R. March 28, 2018).

## V. DISCUSSION

As Jackson Hole did not file a Notice of Appeal of this Court's order dated January 24, 2018 and did not file its own motion to vacate, it is bound by this Court's order of January 24, 2018. The Debtor's Stay Motion is inapplicable to it.

The Debtor appeals this Court's order dated February 27, 2018, denying what was in essence a motion to reconsider the allowance of the Chapter 11 Trustee's Motion to Secure Vehicles. Thus, to establish a likelihood of success on the merits, the Debtor was required to show that this Court erred in applying the principles set forth in In re Wedgestone Fin., 142 B.R. 7 (Bankr. D. Mass. 1992), to determine the Motion to Vacate, particularly where the Debtor admitted at the January 24, 2018 hearing that "neither Counsel to Jackson Holes [sic] Classic Cars, LLC nor Counsel to the Debtor had been supplied information relative to the barn in Parsonfield [sic], Maine, where the vehicles are proposed to be stored." (footnote omitted).

In its February 27, 2018 order, the Court concluded that the Debtor had failed to establish in his Motion to Vacate that this Court made a manifest error of law or fact in its January 24, 2018 ruling. Accordingly, it was incumbent upon the Debtor in his Stay Motion to establish that this Court wrongly decided the Motion to Vacate in order to sustain his burden with respect to a likelihood of success on the merits of his appeal from

7

the February 27, 2018 order. As this Court noted in its February 27, 2018 ruling, the Debtor did not request an evidentiary hearing on January 24, 2018, which was conducted three weeks after the Trustee filed her Motion to Secure Vehicles. The Debtor and Jackson Hole had more than sufficient time to gather information about the Parsonsfield, Maine property so as to properly address the numerous issues raised by the Chapter 11 Trustee, as well as the questions posed by Court to Debtor's counsel at the January 24, 2018 hearing that were unanswered. Moreover, even were this Court to reconsider the safety of the storage location in Parsonsfield, Maine, the undisputed facts remain that the barn itself is not insured (only the vehicles) and Parsonsfield is a remote location such that, if the Court were to authorize the sale of the vehicles, the location would likely jeopardize obtaining the maximum price for the vehicles.

With respect to the Debtor's argument that he will be irreparably harmed if the vehicles were damaged when towed to and stored at the storage facility of Paul E. Saperstein Co., whom the Trustee's contemplates engaging to recover and store the vehicles, the Court concludes that the Debtor's argument is speculative at best. Paul E. Saperstein Co. is an experienced liquidator, is licensed, bonded and insured, and has the professional capabilities to move and store the vehicles. In any event, were the vehicles to be damaged, the Debtor's estate could be compensated with money damages. In re Catholic School Employees Pension Trust, No. 18–00108 (ESL), 2018 WL 1577704, at *2 (Bankr. D. P.R. March 28, 2018).

With respect to the remaining factors, the Court is not persuaded that the Debtor has satisfied those prongs. The balancing of harm does not weigh in the Debtor's favor and the public interest is not implicated.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Debtor's Motion for Stay Pending Appeal.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 24, 2018